UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RONALD D. KASSOVER, CHRIS JONES :
STEPHEN M. MITTMAN, RONALD E. : No.   08-cv-02753 (LMM) (KNF)
KLOKKE, JAN SCHNEIDER, MARJORIE :
ELLIOTT, RITA TUBIS and HELENA TUBIS :
on behalf of themselves and all others similarly :
situated, : ECF CASE
 :
               Plaintiff, :
 :
          v. :
 :
UBS AG and UBS FINANCIAL SERVICES, INC., :
 :
               Defendants. :
-------------------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY

| | |
|---|---|
| **SCHOENGOLD SPORN LAITMAN & LOMETTI , P.C** | **FINKELSTEIN THOMPSON, LLP** |
|    Samuel P. Sporn (SPS-4444) |    Burton H. Finkelstein, Esq. |
|    Joel P. Laitman (JL-8177) |    Donald J. Enright, Esq. |
|    Frank R. Schirripa (FS-1960) |    Michael G. McLellen, Esq. |
| 19 Fulton Street, Suite 406 |    Elizabeth K. Tripodi, Esq. |
| New York, New York 10038 | 1050 30th Street, N.W. |
| Telephone: (212) 964-0046 | Washington, D.C. 20007 |
| Facsimile (212) 267-8137 | Telephone: (202) 337-8000 |
|  | Facsimile: (202) 337-8090 |
| *Attorneys for Plaintiff and* | *Attorneys for Plaintiffs Rita Tubis* |
| *Proposed Interim Class Counsel* | *and Helena Tubis* |

**TABLE OF CONTENTS**

                                                            **Page**

I.      INTRODUCTION ……………………………………..……………………………1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY……………………… 3

       A.     Plaintiffs' Discovery Request Required No Further
              Conferences Prior to Service on May 27, 2008 ......................................................3

       B.     The Exchange Act Cases Do Not Assert the Claims
              Asserted In The *Kassover* Action..............................................................................3

III.    THERE ARE NO GROUNDS TO STAY PRODUCTION OF PREVIOUSLY
       PRODUCED DOCUMENTS ............................................................................................ 5

       A.     Discovery Is Appropriate For Non PSLRA Claims ............................................... 5

              1.     Discovery of IAA and State Law Claims
                    Are Not Automatically Stayed …............................................................... 5

              2.     Courts Have Permitted Discovery of Concurrent
                    Non-PSLRA Claims ...................................................................................... 6

       B.     Defendants Have Not Met Their Burden To Stay Discovery
              Pending Motion To Dismiss ....................................................................................9

              1.     Plaintiffs' Claims Are Meritorious ........................................................... 10

              2.     Plaintiffs' Discovery Request is Particularized
                    and Not Overly Burdensome ....................................................................12

              3.     Plaintiffs Are Certainly Prejudiced By a Stay of Discovery .....................12

       C.     Delaying the Inevitable Production of These Documents Until A Decision
              On Consolidation and the MDL Only Serves To Prejudice Plaintiffs…...............12

IV.    CONCLUSION ................................................................................................................14

## TABLE OF AUTHORITIES

## CASES

*Barr v. McGraw-Hill, Inc.,*
    710 F. Supp. 95 (S.D.N.Y. 1998) ……………………………………….…....………. 4

*City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.,*
    No. 1:04-CV-0380, 2005 WL 280345 (S.D. Ind. Feb. 2, 2005) …......………...…............6

*Cromer Finance Ltd. v. Berger,*
    No. 00-cv-2284 (DLC), 2001 U.S. Dist. LEXIS 14744
    (S.D.N.Y. Sept. 20, 2001)……................................................................................…...11

*G.I. Home Dev. Corp. v. Town of Brookhaven,*
    2008 U.S. Dist. LEXIS 26173 (E.D.N.Y. Apr. 1, 2008) ………..............…......………….9

*In re Enron Sec. Derivative & ERISA Litig.,*
    No. MDL 1446, 2002, WL 31845114 (S.D. Tex. Aug. 16, 2002) …....……...................8, 9

*In re FirstEnergy S'holder Derivative Litig.,*
    219 F.R.D. 584 (N.D. Ohio 2004) …………………….............………..……………7, 8

*In re LaBranche Secs. Litig.,*
    333 F. Supp. 2d 178 (S.D.N.Y. 2004) ……………………………..........…………8, 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.,*
    No. 02 MD 1335, 2003 WL 23830479 (D.N.H. Jan. 29, 2003) ...............................*passim*

*In re WorldCom, Inc. Sec. Litig.,*
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ……………………………..........................8, 9

*Liberty Mutual Ins. Co. v. Blessinger,*
    No. 06-391 (NGG) (ARL), 2006 U.S. Dist. LEXIS 46976
    (E.D.N.Y. July 12, 2006) …..................................................................................10

*Osan Limited v. Accenture LLP,*
    CV 05-5048 (SJ)(MDG), 2006 WL 1662612 (E.D.N.Y. June 13, 2006) ........................9

*Port Dock and Stone Corp. v. Oldcastle North East, Inc.,*
    No. CV 05-4294 (DRH),2006 WL 897996 (E.D.N.Y. March 31, 2006) ........................9

*Seippel v. Sidley Austin Brown & Wood LLP,*
    No. 03-cv-6942 (SAS), 2005 U.S. Dist. LEXIS 2388
    (S.D.N.Y. Feb. 17, 2005) ..................................................................................6, 7, 9, 12

*Singer v. Nicor, Inc.*,
 No. 02 Civ. 5168, 2003 U.S. Dist. LEXIS 26189 (N.D. Ill. Apr. 23, 2003) ……….............8

*Tobias Holdings, Inc. v. Bank United Corp.*,
 177 F. Supp. 2d 162 (S.D.N.Y. 2001) ……………………………………....…………6, 8

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
 341 F. Supp. 2d 258 (S.D.N.Y. 2004) ………………………………………....……………11

*Zeller v. Bogue Elec. Mfg. Corp.*,
 476 F.2d 795 (2d. Cir. 1973) ……………………………..…………………………………….4

**STATUTES**

15 U.S.C. § 78j ........................................................................................................................4, 5, 8, 10

15 U.S.C. § 78u-4(b)(3)(B) …………………………………………………………………....1, 5

15 U.S.C. § 78u-4(b)(3)(D) …………………………………………………………………….6

15 U.S.C. § 78bb ……………………………………………………………………...................11

15 U.S.C. § 80b-1, *et seq*. …………………………………..…………..………………………..4

15 U.S.C. § 80b-2 ……………………………………………………...…..……………………10

Investment Company Act of 1940 …………………………………………………………….....5

New York Gen. Bus. L. § 349 ……………...................…………………..………………4, 11

Martin Act NY Gen. Bus. L. § 352-c ........................................................…………………10, 11

Securities Litigation Uniform Standards Act of 1998 …………………………………………….6, 11

**RULES**

Fed. R. Civ. P. 26 …………………………….………………………………….................1, 9

Plaintiffs Ronald D. Kassover, Chris Jones, Stephen M. Mittman, Ronald Klokke, Jan Schneider, Marjorie Elliott, Rita Tubis and Helena Tubis (collectively "Plaintiffs") respectfully submit the following memorandum of law in opposition to Defendants' Motion for a Protective Order Staying Discovery ("Def. Br.").

**I.     INTRODUCTION**

This action was the first filed action against defendants UBS AG and UBS Financial Services, Inc. (collectively "UBS" or "Defendants") by clients who have been frozen out of funds held in auction rate securities ("ARS"). There is urgency to this matter in that Plaintiffs' economic condition worsens each day they are unable to access these assets – assets Defendant UBS portrayed as the equivalent of cash. On March 14, 2008 the initial complaint in this action was filed. On May 27, 2008 Plaintiffs filed an Amended Complaint and First Request for the Production of Documents (the "document request").[1] The document request, which is the subject of this motion, is composed of a single request: that UBS produce the documents already produced by Defendants to governmental agencies in connection with ARS. Despite the narrowness of this request, that it seeks clearly discoverable material under Fed. R. Civ. P. 26 and cannot possibly be said to impose the slightest burden or prejudice on Defendants (since the material has already been segregated, copied and produced), Defendants argue discovery must be enjoined. Defendants argue the discovery cannot be had because it circumvents the stay of discovery contained in the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(b)(3)(B) (*i.e.*, the "Private Securities Litigation Reform Act of 1995" or "PSLRA").

---

[1] The *Kassover* action was filed on March 14, 2008. Thereafter, four cases alleging violations of the Exchange Act (the "Exchange Act cases") were filed: *Chandler v. UBS AG*, No. 1:08-cv-2967 (S.D.N.Y. filed Mar 21, 2008) (LLM); *Sanchez v. UBS AG*, No. 1:080-cv-3082 (S.D.N.Y. filed Mar. 26, 2008) (LMM); *Bonnist v. UBS AG*, No. 1:08-cv-4352 (S.D.N.Y. filed May 8, 2008) and *Streit v. UBS AG*, No. 1:08-cv-5251 (S.D.N.Y. filed June 9, 2008).

Recognizing, however, that Plaintiffs have asserted no Exchange Act claims Defendants argue that the claims asserted herein under IAA and state statutory and common law constitute merely "artful pleading" designed to circumvent the PSLRA.  This argument fails because the claims asserted here, purposefully differ from Exchange Act claims, in that they do not require a showing of market efficiency which may well be found to be a significant hurdle, where the market itself has been "frozen."  Further,  the kind of damages suffered by Plaintiffs include substantial consequential damages incurred as a result of not having access to their funds – not damages typically falling within the scope of damages under the Exchange Act where damage is generally circumscribed by loss causation.

Defendants also argue that the discovery sought  is prejudicial to Defendants before dismissal is ruled upon (Def. Br. at 13); and a stay should be imposed pending consolidation and the motion for coordination filed with the Judicial Panel on Multidistrict Litigation ("MDL") (*id.* at 14).  These arguments fail as well.  Defendants cannot be prejudiced by producing documents already produced to other parties – some of which has already been released publicly by those third parties.  As reported in the New York Times on June 29, 2008, the Massachusetts Attorney General has already received and incorporated the subpoenaed documents in its June 26, 2008 complaint against UBS.  The Massachusetts' Attorney General's complaint annexes emails between UBS executives that demonstrate, *inter alia*, the conflicts of interest alleged in the *Kassover* action, namely that, in the months and weeks preceding the ARS market collapse, UBS instructed brokers to "unload" its inventory of ARS onto Plaintiffs and the Class knowing the collapse was eminent.  *See* NY Times June 29, 2008 article, attached as Exhibit A to the Declaration of Frank R. Schirripa ("Schirripa Decl.").

Further, courts have long recognized a plaintiff's right to obtain discovery in a separate

2

non-PSLRA matter that is being litigated separately, yet concurrently with a federal securities class action specifically governed by the PSLRA. Since there is no bona fide reason for the delay UBS seeks and since Plaintiffs are clearly prejudiced by the delay, Plaintiffs respectfully request that UBS's motion for the protective order should be denied in all respects and defendants should be directed to produce Defendants' previous production of the particularized documents forthwith.

II.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    A.     **Plaintiffs' Discovery Request Required No Further Conferences Prior to Service on May 27, 2008**

On May 27, 2008, Plaintiffs served on Defendants its First Request for the Production of Documents, at issue herein. Defendants argue that Plaintiffs discovery request did not comply with the Federal Rules of Civil Procedure because Plaintiffs did not first confer with Defendants. (Def. Br. at 6). However, Defendants assertion is flatly false. The parties have now had two conferences with this Court on April 10, 2008 and May 6, 2008 where Plaintiffs specifically requested that they be able to obtain the discovery already produced by Defendants to governmental authorities in connection with UBS's activities relating to auction rate securities. At the last conference, this Court indicated that it would rule on that request once the discovery was served and a protective order motion was lodged. Any further conference, as Defendants request, would only serve to advance their goal of delaying discovery in this action.

    B.     **The Exchange Act Cases Do Not Assert the Claims Asserted In The *Kassover* Action**

The *Kassover* action, the first filed action against the UBS Defendants on March 14, 2008, preceded the filing of all of the Exchange Act cases, seeks to represent all UBS clients who have had their auction rate securities frozen as a result of UBS' alleged misconduct. While

3

asserting claims under the Investment Adviser Act of 1940 ("IAA"), 15 U.S.C. § 80b-1, *et seq.*, New York General Business Law ("GBL") § 349 and the common law, counsel in the *Kassover* action ***made a reasoned decision not*** to assert any Exchange Act claims, primarily because the injury suffered is largely consequential – incurred as a result of not being able to access their cash. This type of injury is generally not recoverable under Section 10(b) of the Exchange Act or Rule 10b-5, promulgated there under. *See Barr v. McGraw-Hill, Inc.*, 710 F. Supp. 95, 98 (S.D.N.Y. 1998) ("Section 28(a) of the Securities Exchange Act of 1934 …limits a plaintiff's recovery to actual damages. Under the Securities Exchange Act, actual damages are measured by out-of-pocket losses.") (citing *Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 801-02 (2d. Cir. 1973)). In addition, Exchange Act claims require proof of elements of market efficiency and loss causation. The freezing of the ARS market suggests there was likely no such efficient market. Likewise, inherent in an Exchange Act claim is the alleged artificially inflation in the value of the security at issue, followed by a subsequent price decrease on the disclosure of previously undisclosed material facts – that factual scenario is also not present here.

    Plaintiffs' Amended Complaint alleges independent of the specific misstatements and omissions made by Defendants to ARS purchasers – the gravamen of the Exchange Act cases – that Defendants, as Plaintiffs' Financial Advisors, owed Plaintiffs and the Class duties not to take affirmative steps to undermine its clients' financial interests or advance UBS's financial interests at the expense of its clients, and that in breach of the duties owed to Plaintiffs, Defendants ceased all ARS auction participation. (Am. Complaint ("¶") ¶¶ 4, 39). UBS's actions ensured that the liquidity of their clients' ARS holdings was wiped out, causing Plaintiffs' ARS holdings to become frozen. Plaintiffs also allege violations of New York General Business Law § 349 and negligent misrepresentation on behalf of a sub-class of all

4

holders of ARS not filed or registered under the Investment Company Act of 1940. Finally, on behalf of the entire Class, Plaintiffs allege claims for breach of fiduciary duty against UBS, aiding and abetting breach of fiduciary duty against UBS AG, breach of the implied covenants of good faith and fair dealing and negligence against UBS arising *exclusively* from the breach of duty allegations (*e.g.*, ¶¶ 4, 39). Conversely, the Exchange Act cases sole ground for recovery is based on a violation of Rule 10b-5.[2]

### III. THERE ARE NO GROUNDS TO STAY PRODUCTION OF PREVIOUSLY PRODUCED DOCUMENTS

#### A. Discovery Is Appropriate For Non-PSLRA Claims

##### 1. Discovery of IAA and State Law Claims Are Not Automatically Stayed

Defendants argue that Plaintiffs "artfully pled" IAA and state law claims purposefully to avoid the PSLRA discovery stay and therefore should be subject to the stay. (Def. Br. 7-8). As noted above there are bona fide reasons not to subject these claims to the elements of proof required under the Exchange Act.

On its face, the relevant provision of the PSLRA applies only to actions brought under Chapter 2B ("Securities Exchanges") of Title 15, U.S. Code. Specifically, 15 U.S.C. § 78u-4(b)(3)(B) of the PSLRA provides:

> In any private action arising ***under this chapter***, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless

---

[2] Latecomer plaintiffs in the *Streit* action lifted from the much earlier filed *Kassover* action and Exchange Act actions and filed a complaint, filed on June 9, 2008 – approximately one month after the Court ordered consolidation of all Exchange Act cases on May 16 – that mixed an IAA claim with a 10b-5 claim. The *Streit* action "combo" complaint directly conflicts with Plaintiffs reasoned decision not to pursue a claim under the Exchange Act – perhaps styled in an effort to circumvent the PSLRA stay provision. The *Streit* action prejudices the IAA claim, which the *Kassover* plaintiffs believe is the pre-eminent and more appropriate claim, forcing upon the IAA claim strictures that Congress never intended.

5

> the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

(Emphasis added). Although Defendants argue that the force of this provision will be eviscerated if it is not also applied to parallel actions, Congress, which doubtless was aware of the possibility of such actions, used language that only applies to federal securities actions. *Id*. Indeed, when, a few years later, Congress passed additional legislation to prevent "end-runs" around the PSLRA in the form of certain state law actions, *see* the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), it made no attempt to broaden the above-quoted provision to apply automatically to bona fide actions brought under state law, but simply gave a federal court discretionary authority to stay state action discovery if necessary "in aid of its jurisdiction." 15 U.S.C. § 78u-4(b)(3)(D).

### 2. Courts Have Permitted Discovery of Concurrent Non-PSLRA Claims

Defendants argue that discovery should be stayed until it can be coordinated with the Exchange Act case. (Def. Br. at 9-10). However, Defendants' argument serves only to prejudice Plaintiffs. State claims and federal claims have long run concurrently without federal courts issuing discovery stays. *See e.g.*, *Seippel v. Sidley Austin Brown & Wood LLP,* No. 03-cv-6942 (SAS), 2005 U.S. Dist. LEXIS 2388, at *6 (S.D.N.Y. Feb. 17, 2005) (holding that PSLRA discovery stay did not apply to state law claims which had an independent basis for jurisdiction not arising from the Exchange Act); *City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.,* No. 1:04-CV-0380, 2005 WL 280345, at *6 (S.D. Ind. Feb. 2, 2005) ("It is not at all unusual for securities fraud and related shareholder derivative cases to proceed along parallel tracks, without interfering with one another."); *Tobias Holdings, Inc. v. Bank United Corp.,* 177 F. Supp. 2d 162, 169 (S.D.N.Y. 2001) (Scheindlin, J.) (holding that a federal stay of non-fraud state claims is not necessary because "the non-fraud claims would not interfere with the jurisdiction of the

6

federal court or threaten its judgments in any way"). *See also In re FirstEnergy S'holder Derivative Litig.*, 219 F.R.D. 584, 586-87 (N.D. Ohio 2004) (refused to stay discovery in derivative actions brought independently of parallel securities fraud class actions); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. 02 MD 1335, 2003 WL 23830479, *3 (D.N.H. Jan. 29, 2003) (holding that the PSLRA discovery stay did not apply to the ERISA and Derivative actions being litigated separately from, but simultaneously with an Exchange Act action.)[3]

As in *Seippel*, "clearly, this is not a case in which plaintiffs are alleging state law claims in hopes of circumventing the PSLRA stay and discovering facts to support a securities fraud claim." *Seippel*, 2005 U.S. Dist. LEXIS 2388, at *11. Based on the factual predicate currently before this Court, Plaintiffs have repeatedly distinguished their theory of liability from the Exchange Act cases and have represented to the Court on at least two occasions that Plaintiffs have no intention of pursuing a 10b-5 claim against Defendants. Indeed, in *Tyco Int'l*, a case upon which Defendants rely (Def. Br. at 8), the court rejected this very same argument, finding that the non-Exchange Act actions were not filed as an attempt to circumvent the stay provision. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 2003 WL 23830479, *3. Specifically, the court noted that:

> The ERISA and Derivative Actions were filed as separate lawsuits by different counsel on behalf of different plaintiffs. The claims asserted in those actions are not frivolous and defendants do not claim that plaintiffs' counsel are working together to thwart the stay provision. ***Absent evidence of collusion, I will not stay discovery in the ERISA and Derivative Actions merely because they have***

---

[3] Defendants' reliance on *In re Crompton Corp. Sec. Litig.*, No. 05-cv-1293 (EBB), 2005 WL 3797695, at 2-3 (D. Conn. July 22, 2005), is factually and procedurally inapposite. (Def. Br. 7-9). First, the two competing actions in *Crompton* were pending in different courts and subject to potentially conflicting opinions. Here, all of the UBS ARS cases have been assigned to this Court thereby minimizing, if not completely eliminating, the possibility of conflicting opinions. Second, plaintiff in state court action, arguably not subject to the PSLRA discovery stay, was represented by the same counsel that was litigating the Exchange Act claims in federal court – raising "the likelihood that federal plaintiffs [would] obtain state plaintiffs discovery." *Crompton*, 2005 WL 3797695, *2.

*been consolidated with the Securities Actions for pretrial purposes*.

*Id*. (emphasis added). Further, in *Tyco Int'l*, the court permitted discovery holding that "*any interest that the defendants have in delaying discovery does not override the legitimate interest that plaintiffs in the ERISA and Derivative Actions have in obtaining an expeditious resolution of their claims.*" *Tyco Int'l.*, 2003 WL 23830479, *3 (emphasis added). Similarly in *Tobias Holdings*, the court found discovery would not represent an impermissible "end run" around the PSLRA "where plaintiff did not simply append state law securities fraud or common law fraud claims to its complaint in order to bypass the stay" and "plaintiff's state law claims are substantive claims which … include separate and distinct breach of contract and tortious interference claims." *Tobias Holdings*, 177 F. Supp. 2d at 167.

Here, Plaintiffs have independently investigated and pleaded Defendants' alleged violations of the IAA and state common law. Defendants do not – and cannot – argue that Plaintiffs are working together with Exchange Act plaintiffs to frustrate the PSLRA's stay provision. Accordingly, Plaintiffs' legitimate interests in obtaining an expeditious resolution of their claims should not take second seat to Defendants' interest in delaying discovery.[4]

---

[4] Even in PSLRA cases courts permitted the limited discovery sought here. Courts "have modified the discovery stay in [cases] involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA." *See In re LaBranche Secs. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (citing *In re Firstenergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004); *Singer v. Nicor, Inc.,* 2003 U.S. Dist. LEXIS 26189, No. 02 Civ. 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003); *In re Enron Sec. Derivative & ERISA Litig.*, No. MDL 1446, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002)). In such cases, courts have lifted the stay as to documents which have already been produced to the government, on the ground that the cost of such discovery to defendants is minimal, as the documents have already been compiled for production, while plaintiffs would suffer severe prejudice if discovery in their case is delayed while government investigations and other lawsuits proceed ahead of them. *See, e.g., In re LaBranche Secs. Litig.*, 333 F. Supp. 2d at 183 (finding that there will be no costs to defendants in producing the requested materials, while "if the stay remains in place, Lead Plaintiffs will be the only ones without access to those documents and will be prejudiced by their

### B. Defendants Have Not Met Their Burden To Stay Discovery Pending Motion to Dismiss

The law is clear in this court that there is no automatic stay of discovery pending the determination of a motion to dismiss. *See G.I. Home Dev. Corp. v. Town of Brookhaven*, 2008 U.S. Dist. LEXIS 26173 (E.D.N.Y. Apr. 1, 2008) (citing *Osan Limited v. Accenture LLP,* CV 05-5048 (SJ)(MDG), 2006 WL 1662612, *1 (E.D.N.Y. June 13, 2006)). Rather, Federal Rule of Civil Procedure 26(c) permits a district court to stay discovery during the pendency of a motion to dismiss for "good cause shown." Fed. R. Civ. P. 26(c); *see also Port Dock and Stone Corp. v. Oldcastle North East, Inc.,* No. CV 05-4294 (DRH), 2006 WL 897996 (E.D.N.Y. March 31, 2006). The party seeking a stay of discovery bears the burden of showing good cause. *Osan,* 2006 WL 1662612, at *1. The "good cause" requirement is not satisfied simply by filing a dispositive motion. *Port Dock,* 2006 WL 897966, at *1 ("It is, of course, black letter law that the mere filing of a motion to dismiss the complaint does not constitute "good cause" for the issuance of a discovery stay."). Rather, in deciding whether to grant a discovery stay, a court "must look to the particular circumstances and posture of each case." *Osan,* 2006 WL 1662612, at *1. In determining whether a stay of discovery is warranted, courts generally consider the following factors: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Port Dock*, 2006 WL 897996, at *1.

---

inability to make informed decisions about their litigation strategy in this rapidly shifting landscape."). These courts reason that such discovery is "particularized" because it is limited to the discovery of documents that have already been produced to others and it prevents "undue prejudice" by placing all potential claimants on an equal footing with respect to discovery. *See Tyco Int'l*, 2003 WL 23830479, at *4 (citing *WorldCom*, 234 F. Supp. 2d at 306 and *Enron*, 2002 WL 31845114, at *1-2). *See Seippel v. Sidley Austin Brown & Wood LLP,* No. 03-cv-6942 (SAS), 2005 U.S. Dist. LEXIS 2388, at *6 (S.D.N.Y. Feb. 17, 2005) (holding that stay should be modified to permit discovery of documents already produced to the government).

### 1.     Plaintiffs' Claims Are Meritorious

Defendants have not met its high burden of providing a "strong showing" that Plaintiffs' claims will not be sustained after Defendants moved for dismissal. *Liberty Mutual Ins. Co. v. Blessinger*, No. 06-391 (NGG) (ARL), 2006 U.S. Dist. LEXIS 46976, at *5 (E.D.N.Y. July 12, 2006) (denying request for stay of discovery pending decision on motion for dismissal finding that "while defendants may achieve some level of success with the filing of their motion, it is doubtful that [the] instant action will be dismissed"). First, Defendants' argument that Plaintiffs' IAA claim should be dismissed because the Complaint does not allege the existence of an investment advisory contract is wholly without merit. (Def. Br. at 12). The absence of an investment advisory contract is not dispositive. In determining the existence of an advisory relationship, the IAA specifically recognizes as an Investment Adviser, subject to the provisions of the IAA, any broker or dealer that received "special compensation" other than commissions:

> **Investment Advisor means any person who, for compensation, engages in the business of advising others.**...as to the value of securities or as to the advisability of investing in, purchasing, or selling securities...**but does not include**... (C) **any broker or dealer** whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and **who receives no special compensation therefor**.

15 U.S.C. § 80b-2 (emphasis added). The Complaint alleges that, in addition to the customary brokerage fees UBS charged its clients in connection with their purchase or sale of ARS, UBS collected substantial fees in connection with running the auctions that re-set the weekly or monthly interest rates on the ARS. (¶ 33).

Second, Defendants' argument that the Martin Act[5] pre-empts a private right of

---

[5] See, e.g., *id*. § 352-c. ("It shall be illegal . . . to use or employ any of the following acts or practices . . . [involving fraud, deception, etc.] . . . where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities. . . .").

10

action for the common law claims asserted in the Complaint is also without merit. Despite Defendants' repeated attempts re-categorize Plaintiffs' allegations as a "mirrored" Rule 10b-5 claim, the Complaint does not allege fraud in connection with the purchase or sale of a security. "There is nothing in . . . the New York Court of Appeals cases or in the text of the Martin Act itself to indicate an intention to abrogate common law causes of action." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004) (Scheindlin, J.) (sustaining breach of implied covenant of good faith and fair dealing and breach of fiduciary duty claims and holding that breach of fiduciary duty claim not precluded by Martin Act) (quoting *Cromer Finance Ltd. v. Berger*, No. 00-cv-2284 (DLC), 2001 U.S. Dist. LEXIS 14744, at *15, 18 (S.D.N.Y. Sept. 20, 2001) (holding that negligence and aiding and abetting breach of fiduciary duty claims not precluded by Martin Act)).

Third, Defendants argue that Plaintiffs' state law claims involve ARS securities that were "covered securities" and should be dismissed under SLUSA. (Def. Br. at 13). This argument fails since SLUSA requires that the claim allege: (1) misrepresentations and omissions in connection with (2) *a purchase or sale* of a (3) *"covered security." See* 15 U.S.C. § 78bb. SLUSA defines "covered securities" as securities listed on a national securities exchange or issued by an investment company registered with the SEC. *Id.* However, the state law claims premised upon Defendants' alleged misrepresentations and omissions (*i.e.*, GBL §349 and negligent misrepresentation) have been limited to apply to the sub-class of persons who could not sell ARS that were issued by entities that were *not* registered as an "investment company" with the SEC. (¶¶ 6, 14-16, 65-76). Therefore, Defendants anticipated motion for dismissal should be dismissed and should not serve a basis for this Court to stay discovery.

### 2. Plaintiffs' Discovery Request Is Particularized and Not Overly Burdensome

As set forth above, *see* pp. 9-10, Fn. 4, *supra*, numerous courts have repeatedly found that discovery requests, such as the one at issue, for documents already produced in connection with a governmental investigation to be sufficiently particularized and not overly burdensome. *See e.g., Sieppel*, 2005 U.S. Dist. LEXIS 2388, at *4 ("cost of such discovery to defendants is minimal, as the documents have already been compiled for production").

### 3. Plaintiffs Are Certainly Prejudiced By a Stay of Discovery

Also, as set forth above, *see* pp. 9-10, Fn. 4, *supra*, numerous courts have recognized that "plaintiffs would suffer sever prejudice if discovery in their case is delayed while government investigations and other lawsuits proceed ahead of them." S*ee, e.g.*, *Sieppel*, 2005 U.S. Dist. LEXIS 2388, at *5. If this Court decides Defendants' favor, Plaintiffs "will be the only ones without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in this rapid shifting landscape." *In re LaBranche Secs. Litig.*, 333 F. Supp.2d at 183. Accordingly, to avoid further prejudice to Plaintiffs, Defendants motion should be denied and the requested documents should be produced forthwith.

### C. Delaying the Inevitable Production of These Documents Until A Decision On Consolidation and the MDL Only Serves To Prejudice Plaintiffs

Defendants argue that the Court stay discovery until resolution of the Streit movants' pending motion for consolidation of the Kassover action with the Exchange Act cases, so that the Exchange Act plaintiffs would not benefit from Plaintiffs discovery. (Def. Br. at 14). However, in *Tyco Int'l*, discussed above, the Court permitted discovery in the ERISA and Derivative actions even though they were consolidated with the Exchange Act action for pre-trial

12

purposes. *Tyco Int'l,* 2003 WL 23839479, *3 ("Absent evidence of collusion, I will not stay discovery in the ERISA and Derivative Actions merely because they have been consolidated with the Securities Actions for pretrial purposes"). Indeed, the *Tyco Int'l* decision further supports Plaintiffs position that the IAA and state law claims, even if consolidated with the Exchange Act, should remain under the direction of separate counsel – Schoengold Sporn Laitman & Lometti, P.C.[6]

In a final attempt to delay discovery, Defendants argue that discovery should be stayed pending resolution of the motion to the MDL to transfer for coordination every ARS-related action currently pending against over a dozen financial services institutions in court around the country. (Def. Br. at 5, 14). Plaintiffs anticipate filing a response in opposition to MDL coordination, namely, that the prosecution of ARS cases should proceed independently. Nevertheless, in light of the fact that the requested documents have already been produced to governmental entities, and will likely be requested and produced in other actions for the same reasons set forth herein, to postpone the production of these particularized documents only further prejudices Plaintiffs.

**IV.  CONCLUSION**

---

[6] On July 3, 2007, the *Kassover* Plaintiffs moved this Court to appoint its selection of counsel, Schoengold Sporn Laitman & Lometti, P.C., as interim class counsel with respect to the IAA and state law claims.

13

For the foregoing reason, Defendants' motion for a protective order to stay discovery should be denied in its entirety, and Defendants should be ordered to produce the requested documents forthwith.

DATED:  New York, New York                    Respectfully submitted,
          July 7, 2008

                                                    **SCHOENGOLD SPORN LAITMAN & LOMETTI , P.C.**

                                                    ____/s/ Joel P. Laitman____
                                                      Samuel P. Sporn (SPS-4444)
                                                      Joel P. Laitman (JL-8177)
                                                      Frank R. Schirripa (FS-1960)
                                                  19 Fulton Street, Suite 406
                                                  New York, New York 10038
                                                  Telephone: (212) 964-0046
                                                  Facsimile (212) 267-8137

                                                  *Attorneys for Plaintiff and*
                                                  *Lead Counsel for the Proposed Class*

Of Counsel:

**FINKELSTEIN THOMPSON, LLP**
    Burton H. Finkelstein, Esq.
    Donald J. Enright, Esq.
    Michael G. McLellen, Esq.
    Elizabeth K. Tripodi, Esq.
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*Attorneys for Plaintiffs Rita Tubis
and Helena Tubis*

14

**CERTIFICATE OF SERVICE**

I, Frank R. Schirripa, Esq., one of the counsel for Plaintiffs in the above-referenced action, do hereby certify that on July 7, 2008, a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion for Protective Order Staying Discovery was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

                                                          /s/ Frank R. Schirripa
                                                             Frank R. Schirripa