Keith W. Miller
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

James D. Wareham
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

William F. Sullivan
Howard M. Privette
John S. Durrant
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Los Angeles, California 90071
(213) 683-6000

Attorneys for Defendants UBS AG and
UBS Financial Services, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD D. KASSOVER, *et al.* on behalf of themselves and all others similarly situated, <br><br>            Plaintiffs, <br><br>     v. <br><br> UBS AG and UBS FINANCIAL SERVICES, INC., <br><br>            Defendants. | Case No: 08-CV-02753 (LMM) (KNF) <br> ECF Case <br><br><br> **DECLARATION OF WILLIAM F. SULLIVAN RE DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY** |

## DECLARATION OF WILLIAM F. SULLIVAN

I, William F. Sullivan, hereby declare as follows:

1.       I am an attorney at law, licensed to practice before the Courts of the State of California and admitted to appear and participate *pro hac vice* in the above-captioned action.  I am a partner in the law firm of Paul, Hastings, Janofsky & Walker LLP, counsel of record for UBS AG and UBS Financial Services Inc. (collectively, the "Defendants") in this action.  I make this declaration in support of the Defendants' Reply In Support Of Motion for Protective Order Staying Discovery.  If called upon to do so, I could and would testify competently to the matters set forth herein.

2.       Attached hereto as Exhibit A is a true and correct copy of Defendants' Memorandum of Law In Support of the Motion to Dismiss Amended Class Action Complaint, filed with the Court on July 30, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.  This declaration is executed on July 31, 2008, at Los Angeles, California.

_____
s/

WILLIAM F. SULLIVAN

## <u>CERTIFICATE OF SERVICE</u>

I, William F. Sullivan, do hereby certify that on July 31, 2008, a true and correct copy of the foregoing Declaration of William F. Sullivan In Support Of Defendants' Motion to Dismiss the Amended Class Action Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing.  Parties may access this filing through the Court's CM/ECF System.


WILLIAM F. SULLIVAN

LEGAL_US_E # 80317588.1

DECLARATION OF WILLIAM F. SULLIVAN RE DEFENDANTS' REPLY
IN SUPPORT OF MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY

# EXHIBIT _A_

Keith W. Miller
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

James D. Wareham
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

William F. Sullivan
Howard M. Privette
John S. Durrant
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Los Angeles, California 90071
(213) 683-6000

Attorneys for Defendants UBS AG and
UBS Financial Services, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD D. KASSOVER, *et al.* on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UBS AG and UBS FINANCIAL SERVICES, INC.,<br><br>                    Defendants. | Case No: 08-CV-02753 (LMM) (KNF)<br>ECF Case<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

**Page**

I.　　INTRODUCTION ................................................................................................ 1

II.　　SUMMARY OF ALLEGATIONS ................................................................... 3

　　A.　　Alleged Wrongdoing.................................................................................. 3

　　B.　　Plaintiffs' Claims in the Instant Case and the Claims of Plaintiffs in Other Complaints ................................................................................... 3

　　C.　　Plaintiffs' ARS Investments ..................................................................... 4

III.　　THE APPLICABLE PLEADING STANDARD SUPPORTS DISMISSAL ................. 5

IV.　　PLAINTIFFS' INVESTMENT ADVISERS ACT CLAIM (COUNT 1) FAILS ............ 5

　　A.　　Because UBS FS Was Plaintiffs' Broker, and Not Plaintiffs' Investment Adviser, the IAA Is Irrelevant ................................................ 5

　　　　1.　　Plaintiffs Do Not Allege an Investment Advisory Agreement with UBS FS ............................................................................... 5

　　　　2.　　The IAA Does Not Apply Because UBS FS Was Not Acting as an Investment Adviser ........................................................... 7

　　　　　　a.　　Plaintiffs Do Not Allege Facts that UBS FS Provided Investment Advice Regarding ARS............................... 8

　　　　　　b.　　The Services Provided to Plaintiffs Were Solely Incidental to the Conduct of UBS FS's Business as a Broker ................ 9

　　B.　　Plaintiffs Seek Remedies Barred by the IAA ...................................... 11

　　　　1.　　Plaintiffs Cannot Seek Declaratory Relief to Void ARS Transactions.... 11

　　　　2.　　Plaintiffs Cannot Seek Disgorgement................................... 12

V.　　THE MARTIN ACT PREEMPTS ALL OF PLAINTIFFS' STATE LAW CLAIMS (COUNTS 2-7) ............................................................................... 12

　　A.　　The Martin Act Provides that Plaintiffs' State Law Claims Cannot be Brought by a Private Litigant.......................................................... 12

　　B.　　Plaintiffs' Attempt to Circumvent the Martin Act Is Unavailing ...... 13

VI.　　SLUSA PRECLUDES ALL OF PLAINTIFFS' STATE LAW CLAIMS (COUNTS 2-7)................................................................................................ 14

VII.　　PLAINTIFFS' CLAIM UNDER SECTION 349 OF NEW YORK GEN. BUS. LAW (COUNT 2) FAILS............................................................................... 16

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS
(continued)

Page

VIII.  PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM (COUNT 3)
FAILS ........................................................................................................ 17

    A.  The Economic Loss Rule Bars Negligent Misrepresentation Claims.................. 17

    B.  Plaintiffs Cannot Recover for Negligent Misrepresentation Because UBS
FS Did Not Owe a Fiduciary Duty ........................................................ 18

IX.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM (COUNT 4) FAILS ......... 18

X.  PLAINTIFFS' AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
CLAIM (COUNT 5) FAILS ........................................................................ 19

XI.  PLAINTIFFS' BREACH OF THE COVENANT OF GOOD FAITH AND FAIR
DEALING CLAIM (COUNT 6) FAILS ........................................................ 21

XII.  PLAINTIFFS' NEGLIGENCE CLAIM (COUNT 7) FAILS ........................................ 21

XIII.  CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

**Page**

## CASES

Abrahamson v. Fleschner,
   568 F.2d 862 (2d Cir. 1977)..................................................................... 5

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007)..................................................................... 6

Berger v. E*Trade Group, Inc.,
   No. 600721/99, 2000 WL 360092 (N.Y. Sup. Ct. Mar. 28, 2000) ............ 16

Bildstein v. MasterCard Int'l Inc.,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004)................................................ 16, 17

Bissell v. Merrill Lynch & Co.,
   937 F. Supp. 237 (S.D.N.Y. 1996)........................................................ 18

Bogart v. Shearson Lehman Bros., Inc.,
   No. 91 Civ. 1036 (LBS), 1993 WL 33643 (S.D.N.Y. Feb. 3, 1993) ........ 5

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,
   98 F.3d 13 (2d Cir. 1996) ..................................................................... 18

Broder v. Cablevision Sys. Corp.,
   418 F.3d 187 (2d Cir. 2005).................................................................... 6

Castellano v. Young & Rubicam, Inc.,
   257 F.3d 171 (2d Cir. 2001)................................................................. 12

Ciccone v. Hersh,
   530 F. Supp. 2d 574 (S.D.N.Y. 2008)................................................... 22

Clark v. Nevis Capital Mgmt., LLC,
   No. 04 Civ.2702(RWS), 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) .......... 6, 7, 11

County of Suffolk v. Long Island Lighting Co.,
   728 F.2d 52 (2d Cir. 1984)................................................................... 17

CPC Int'l Inc. v. McKesson Corp.,
   70 N.Y.2d 268, 514 N.E.2d 116, 519 N.Y.S.2d 804 (1987)................. 12

Dalton v. Educ. Testing Serv.,
   87 N.Y.2d 384, 663 N.E.2d 289, 639 N.Y.S.2d 977 (1995)................. 21

De Kwiatkowski v. Bear, Stearns & Co.,
   306 F.3d 1293 (2d Cir. 2002) .......................................................... 18, 22

Dooner v. Keefe, Bruyette & Woods, Inc.,
   157 F. Supp. 2d 265 (S.D.N.Y. 2001)................................................... 21

Dujardin v. Liberty Media Corp.,
   359 F. Supp. 2d 337 (S.D.N.Y. 2005)................................................... 12

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
   375 F.3d 168 (2d Cir. 2004) ................................................................. 18

Europacific Asset Mgmt. Corp. v. Tradescape Corp.,
   No. 03Civ.4556PKL, 2005 WL 497787 (S.D.N.Y. Mar. 2, 2005).......... 18, 21

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
**(continued)**

                                                                                    **Page**

Fin. Planning Ass'n v. S.E.C.,
   482 F.3d 481 (D.C. Cir. 2007)...................................................................... 9

Frota v. Prudential-Bache Sec., Inc.,
   639 F. Supp. 1186 (S.D.N.Y. 1986)....................................................... 5, 19, 22

GMA Accessories, Inc. v. ePartners Inc.,
   No. 07 Civ. 8414(LAK), 2008 WL 781188  (S.D.N.Y. Mar. 19, 2008)............................ 17

Goldin Assocs., L.L.C. ex rel. SmarTalk Teleservices, Inc. v. Donaldson, Lufkin &
Jenrette Sec. Corp.,
   No. 00 Civ. 8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) ...................... 20

Gordon Partners v. Blumenthal,
   No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007).......................... 14

Granite Partners, L.P. v. Bear, Stearns & Co.,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998)............................................................... 12

Gray v. Seaboard Sec., Inc.,
   14 A.D.3d at 852 (2005) ......................................................................... 17

Gurfein v. Ameritrade, Inc.,
   No. 04 Civ. 9526 (LLS), 2007 WL 2049771 (S.D.N.Y. July 17, 2007)............................ 22

Hall v. Paine, Webber, Jackson & Curtis, Inc.,
   No. 82 Civ. 2840 (DNE), 1984 WL 812 (S.D.N.Y. Aug. 27, 1984) ...................................... 6

Horattas v. Citigroup Fin. Mkts., Inc.,
   532 F. Supp. 2d 891 (W.D. Mich. 2007) .......................................................... 15

In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig.,
   583 F. Supp. 1388 (E.D. Pa. 1984).................................................................. 9

In re RSL COM PRIMECALL, Inc.,
   No. 01 Civ. 11457 (ALG), 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003).............. 20

In re Sharp Int'l Corp.,
   403 F.3d 43 (2d. Cir. 2005)....................................................................... 20

Integrated Tech. & Dev., Inc. v. Rosenfield,
   103 F. Supp. 2d 574 (E.D.N.Y. 2000) ............................................................. 8

Kaufman v. Cohen,
   307 A.D.2d 113, 760 N.Y.S.2d 157 (N.Y. App. Div. 2003) ................................. 20

Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   464 F. Supp. 528 (D. Md. 1978)................................................................... 9

Kircher v. Putnam Funds Trust,
   547 U.S. 633 (2006).............................................................................. 14

Kolbeck v. LIT Am., Inc.,
   939 F. Supp. 240 (S.D.N.Y. 1996)............................................................... 20

Kramer v. Time Warner Inc.,
   937 F.2d 767 (2d Cir. 1991)..................................................................... 6

## TABLE OF AUTHORITIES
### (continued)

**Page**

Lerner v. Fleet Bank, N.A.,
459 F.3d 273 (2d Cir. 2006) ........................................................................... 19

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,
244 F.R.D. 204 (S.D.N.Y. 2007) ..................................................................... 17

Marcus v. Frome,
329 F. Supp. 2d 464 (S.D.N.Y. 2004) ............................................................. 13

Morin v. Trupin,
823 F. Supp. 201 (S.D.N.Y. 1993) .................................................................... 8

Muller-Paisner v. TIAA,
446 F. Supp. 2d 221 (S.D.N.Y. 2006) ............................................................. 18

Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,
No. 02 Civ. 0767(LBS), 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ........ 12

Neely v. Bar Harbor Bankshares,
270 F. Supp. 2d 44 (D. Me. 2003) ..................................................................... 7

Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.,
725 F. Supp. 656 (N.D.N.Y. 1989) ................................................................. 17

PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.,
No. 99 Civ. 3794 (BSJ), 2000 WL 1425093 (S.D.N.Y. Sept. 26, 2000) ........ 19

Press v. Chem. Inv. Servs. Corp.,
166 F.3d 529 (2d Cir. 1999) ...................................................................... 18, 22

Pro Bono Invs., Inc. v. Gerry,
No. 03 Civ. 4347 (JGK), 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ....... 12, 13

Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
337 F. Supp. 107 (N.D. Ala. 1971) ................................................................. 22

Rombach v. Chang,
355 F.3d 164 (2d Cir. 2004) .............................................................................. 5

S & K Sales Co. v. Nike, Inc.,
816 F.2d 843 (2d Cir. 1987) ............................................................................ 19

S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.),
534 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................................................. 12

S.E.C. v. Nat'l Executive Planners, Ltd.,
503 F. Supp. 1066 (M.D.N.C. 1980) .............................................................. 8, 9

S.E.C. v. Rauscher Pierce Refsnes, Inc.,
17 F. Supp. 2d 985 (D. Ariz. 1998) ................................................................... 8

Sofonia v. Principal Life Ins. Co.,
465 F.3d 873 (8th Cir. 2006) .......................................................................... 15

SSH Co. v. Shearson Lehman Bros. Inc.,
678 F. Supp. 1055 (S.D.N.Y. 1987) ............................................................... 22

## TABLE OF AUTHORITIES
### (continued)

                                                                                    **Page**

Starr v. Time Warner, Inc.,
  No. 07 Civ. 5871(DC), 2007 WL 4144627 (S.D.N.Y. Nov. 21, 2007) ................. 22

Stewart v. J.P. Morgan Chase & Co.,
  No. 02 Civ.1936MHD, 2004 WL 1823902 (S.D.N.Y. Aug. 16, 2004) ................. 18

Stewart v. Jackson & Nash,
  976 F.2d 86 (2d Cir. 1992) ........................................................................... 18

Suthers v. Amgen Inc.,
  441 F. Supp. 2d 478 (S.D.N.Y. 2006) ........................................................... 21

Swartz v. Deutsche Bank,
  No. C03-1252MJP, 2008 WL 1968948 (W.D. Wash. May 2, 2008) ...................... 9

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
  127 S. Ct. 2499 (2007) ................................................................................... 6

Transamerica Mortgage Advisors, Inc. v. Lewis,
  444 U.S. 11 (1979) ................................................................................ 11, 12

Triple U Enters., Inc. v. N.H. Ins. Co.,
  576 F. Supp. 798 (D.S.D. 1983) ..................................................................... 18

Washington v. Baenziger,
  656 F. Supp. 1176 (N.D. Cal. 1987) ............................................................... 11

Wellington Int'l Commerce Corp. v. Retelny,
  727 F. Supp. 843 (S.D.N.Y. 1989) ................................................................. 12

Wolff v. Rare Medium, Inc.,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002) ............................................................... 6

Yung v. Lee,
  432 F.3d 142 (2d Cir. 2005) ........................................................................... 6

### STATUTES

15 U.S.C. § 77p ......................................................................................... 2

15 U.S.C. § 77p(b) ..................................................................................... 14

15 U.S.C. § 77p(f)(3) ................................................................................. 15

15 U.S.C. § 77r(b) ..................................................................................... 15

15 U.S.C. § 77z-1 ....................................................................................... 4

15 U.S.C. § 78bb(f) ..................................................................................... 2

15 U.S.C. § 78bb(f)(5)(B) ........................................................................... 15

15 U.S.C. § 78bb(f)(5)(E) ........................................................................... 15

15 U.S.C. § 78u-4 ....................................................................................... 4

15 U.S.C. § 80b-15 ..................................................................................... 11

15 U.S.C. § 80b-15(b) ................................................................................. 11

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## TABLE OF AUTHORITIES
### (continued)

**Page**

15 U.S.C. § 80b-2(11) ............................................................................................ 8, 9, 10

15 U.S.C. §§ 80b-1 ...................................................................................................... 1

N.Y. Gen. Bus. Law § 349 .................................................................................... 16, 17

N.Y. Gen. Bus. Law §§ 352 to 359-h ........................................................................ 2

## OTHER AUTHORITIES

Certain Broker-Dealers Deemed Not To Be Investment Advisers, Release Nos. 34-
    51523, IA-2376 (April 15, 2005) ........................................................................ 9

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 6

Fed. R. Civ. P. 9(b) ..................................................................................................... 5

Fed.R. Civ. P. 8(a)(2) .................................................................................................. 5

## REGULATIONS

17 C.F.R. § 275.202(a)(11)-1(a) .............................................................................. 10

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## MEMORANDUM OF LAW

## I.     INTRODUCTION

For more than two decades, auction rate securities ("ARS") could be bought and sold through auctions occurring as often as every week. ARS presented an attractive investment vehicle for issuers and investors alike, because while the underlying security is a long-term instrument (a bond or preferred stock), the auction feature allowed for both liquidity and returns consistent with short-term rates. ARS could be purchased through virtually every major broker-dealer in the United States, including defendant UBS Financial Services Inc. ("UBS FS"), and developed into a $300 billion segment of the U.S. credit markets. Because minimum ARS denominations are usually $25,000, ARS investors often included corporations and other wealthy, sophisticated investors.

In early 2008, as a global liquidity and credit crisis reached historic proportions, there were fewer buyers than sellers participating in ARS auctions, and auctions failed. As a result, many ARS investors could not liquidate their ARS holdings at auction. In response to this crisis, UBS has been at the forefront of efforts to ameliorate the impact of the failed auctions on investors. For example, UBS FS arranged lending solutions for its customers most in need of immediate liquidity after the failed auctions. In cooperation with government agencies, issuers, and investors, UBS is working to develop systemic solutions to the illiquidity of ARS, including assisting issuers in redeeming billions of dollars of ARS at par value.

The disruption of the ARS sector has also drawn the attention of batteries of lawyers. This lawsuit, for example, is but one of several putative class actions now pending before the Court in relation to ARS purchased through UBS FS. Plaintiffs'[1] Amended Class Action Complaint ("Complaint") purports to state a single federal claim under the Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. §§ 80b-1 (Count 1), as well as six state law claims (Counts 2-7). The gravamen of Plaintiffs' Complaint is that UBS FS and UBS AG[2] (collectively, "Defendants") induced Plaintiffs to

---

[1] "Plaintiffs" refers collectively to Ronald Kassover ("Kassover"), Chris Jones ("Jones"), Stephen M. Mittman ("Mittman"), Ronald E. Klokke ("Klokke"), Jan Schneider ("Schneider"), Marjorie Elliot ("Elliot"), Rita Tubis ("R. Tubis"), and Helena Tubis ("H. Tubis").

[2] Plaintiffs do not allege that UBS AG had any contractual or other relationship with them. Rather, Plaintiffs only allege that UBS AG (a parent company of UBS FS) "aided and abetted" a breach of

(continued...)

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

invest in ARS by misrepresenting the liquidity of ARS, and failed to *guarantee* the liquidity and value of ARS by supporting ARS auctions. All of these claims suffer from incurable defects and the Court should dismiss the Complaint.

Plaintiffs' purported IAA claim against Defendant UBS FS ignores a well-developed legal distinction between investment advisers and securities brokers. The IAA governs the conduct of investment advisers, placing special duties on such persons. The IAA does *not* govern the conduct of securities brokers. Plaintiffs all had brokerage accounts, and held ARS in such accounts. Plaintiffs all signed agreements specifying that UBS FS was their broker, not their adviser. Plaintiffs all paid only for brokerage services. In short, UBS FS served solely as Plaintiffs' securities broker, not their investment adviser, and the IAA claim must fail as a matter of law.

Plaintiffs' six state law claims against UBS FS and UBS AG fare no better. New York's Martin Act (N.Y. Gen. Bus. Law §§ 352 to 359-h) preempts each of these claims, and does not permit a private right of action for such claims.

Although the IAA and Martin Act, standing alone, dispose of Plaintiffs' claims, there are further fatal infirmities in the Complaint. The federal Securities Litigation Uniform Standards Act of 1998 ("SLUSA")[3] precludes the six state law claims. Through SLUSA, Congress mandated that all class action claims involving alleged misrepresentations in connection with the purchase and sale of securities can be brought only under the federal securities laws. All six state law claims therefore must be dismissed.

Finally, the state law claims each suffer from further problems, because Plaintiffs are unable to plead all of the requisite elements of those claims. Accordingly, the claims in Plaintiffs' Complaint contain multiple deficiencies that require dismissal with prejudice.

It also bears mention that Plaintiffs each agreed to arbitrate disputes under the auspices of the Financial Industry Regulatory Authority ("FINRA") (or its predecessors).[4] Although the claims

---

(...continued)
fiduciary duty by UBS FS. (Id. ¶¶ 81-86.)

[3] Pub. L. No. 105-353, 112 Stat. 3227 (1998) (see 15 U.S.C. §§ 77p & 78bb(f)).

[4] (See, e.g., Declaration of William F. Sullivan in Support of Defendants' Motion to Dismiss the
(continued...)

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

in the Complaint are as deficient as the pending Exchange Act complaints and although class treatment of such claims would be inappropriate given the inherently individual nature of the issues raised, individual Plaintiffs would nevertheless have the FINRA forum in which to pursue any cognizable individual disputes with UBS FS.

## II.     SUMMARY OF ALLEGATIONS

### A.     Alleged Wrongdoing

Plaintiffs' Complaint alleges that Defendants engaged in "a systematic advisory campaign" to induce Plaintiffs to invest in ARS in order to procure "auction related annual fees" through two categories of misrepresentations. (Compl. ¶¶ 3, 34.) First, Plaintiffs allege that UBS FS failed to disclose the "potential absence of liquidity" of ARS to investors prior to their purchase of ARS. (See id. ¶¶ 3, 34, 62, 71-73.) Second, Plaintiffs allege that UBS FS failed to disclose "fundamental conflicts of interest between . . . ARS holdings and the activities of UBS as a principal ARS auction participant." (See id. ¶¶ 3, 35, 62, 67, 78, 83, 89, 94.) Plaintiffs allege that, because Defendants could participate in ARS auctions, Defendants should have *guaranteed* the liquidity and value of ARS by always placing sufficient bids under whatever conditions as would be necessary to ensure the liquidity and value of ARS investments for customers. (Id.) However, Plaintiffs have not and cannot allege that Defendants had any contractual or any other obligation to so support the ARS auctions. (Id., passim.) Indeed, UBS FS did *not* participate in any auctions. Such activity is the province of an investment bank, not a broker-dealer like UBS FS.

### B.     Plaintiffs' Claims in the Instant Case and the Claims of Plaintiffs in Other Complaints

There are several putative class actions now pending before the Court in relation to ARS purchased through UBS FS. Other class action lawsuits have been consolidated by the Court as In re UBS Auction Rate Securities Litigation (S.D.N.Y., Case No. 08-cv-02967). The other complaints focus on claims under Sections 10(b) and 20(a) the Securities and Exchange Act of 1934.

---

(...continued)
Amended Class Action Complaint ("Sullivan Decl."), Ex. A at 1 (Kassover Account Application and Agreement), filed concurrently herewith.)

In an apparent attempt to avoid (1) the pleading requirements and discovery limitations of the Private Securities Litigation Reform Act of 1995 (the "Reform Act"),[5] and (2) consolidation with claims brought under the federal securities laws, Plaintiffs chose not to bring claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Instead, Plaintiffs try to bring claims under the IAA and New York state law. As Plaintiffs claimed recently in another filing, they deliberately elected not to bring Exchange Act claims because they believe that such claims are fundamentally flawed and cannot succeed in the ARS context.[6] While Defendants concur with Plaintiffs' skeptical assessment of the Exchange Act claims, Plaintiffs' approach, for the reasons set forth below, fares no better.

**C.    Plaintiffs' ARS Investments**

The eight named Plaintiffs invested in a variety of ARS. (Compl. ¶¶ 12-19.) According to the Complaint and judicially noticeable facts, Plaintiffs' ARS investments included the following ARS that were (1) issued by companies registered under the Investment Advisers Act; and, (2) equal in seniority or senior to securities of the same issuer that traded on a national exchange:

- DNP Select Income Fund Inc. M7 Auction Preferred 3.853%;
- DNP Select Income Fund Inc. T7 Auction Preferred 3.880%;
- Eaton Vance Ltd. Duration Income Fund;
- Kayne Anderson MLP Investment W7 Series B Auction Preferred CUSIP 48660P302;
- Nicholas Applegate Convertible and Income Fund II (Tuesday) 7-date Series B Auction Rate Preferred 3.543%;
- Nicholas Applegate Convertible and Income Fund II; and

---

[5] Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified at 15 U.S.C. §§ 77z-1 & 78u-4).

[6] (See Kassover Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for a Protective Order Staying Discovery at 4 ("[C]ounsel in the Kassover action *made a reasoned decision not to* assert any Exchange Act claims, primarily because the injury suffered is largely consequential – incurred not as a result of not being able to access their cash. This type of injury is generally not recoverable under Section 10(b) of the Exchange Act or Rule 10b-5, promulgated there under [sic]. In addition, Exchange Act claims require proof of elements of market efficiency and loss causation. The freezing of the ARS market suggests there was no such efficient market. Likewise, inherent in an Exchange Act claim is the alleged artificially [sic] inflation in the value of the security at issue, followed by a subsequent price decrease on the disclosure of previously undisclosed material facts – that factual scenario is also not present here." (emphasis in original, citations omitted).)

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

- Scudder Reef Real Estate Fund II Inc. (t) Series B Auction Preferred 4.862%.

(Id. ¶¶ 12, 18, 19; Sullivan Decl., Ex. I at 1, 3-4, Ex. J. at 1-3, Ex. K at 1-3, Ex. L. at 1, 3, Ex. M. at 1, 3-4, Ex. N at 1, 4-6.)

## III.    THE APPLICABLE PLEADING STANDARD SUPPORTS DISMISSAL

While the Complaint fails under either the Rule 8(a)(2) or Rule 9(b) pleading standard, the Rule 9(b) pleading standard governs this case. Allegations of fraud and misrepresentation pervade all of the causes of action, including the IAA claim. Rule 9(b) requires the particular pleading of allegations based in fraud. Although not denominated as fraud causes of action, Rule 9(b) applies to each of the causes of action in the Complaint, because "the wording and imputations of the complaint are classically associated with fraud." Rombach v. Chang, 355 F.3d 164, 171-72 (2d Cir. 2004) (dismissing non-fraud claim under Rule 9(b) and noting that "[b]y its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud." (citation omitted)); Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) (dismissing breach of fiduciary duty claim under Rule 9(b).) As discussed in this Motion, Plaintiffs' allegations center on allegations of misrepresentations, omissions, and "false and deceptive" statements, which typify claims of fraud. Id.

## IV.    PLAINTIFFS' INVESTMENT ADVISERS ACT CLAIM (COUNT 1) FAILS

Plaintiffs' IAA claim against UBS FS fails for at least two basic reasons: (1) UBS FS acted as a broker, and not an "investment adviser," and made no contracts with Plaintiffs that are governed by the IAA; and, (2) Plaintiffs seek unauthorized remedies (including recovery of investment losses).

### A.    Because UBS FS Was Plaintiffs' Broker, and Not Plaintiffs' Investment Adviser, the IAA Is Irrelevant

#### 1.    Plaintiffs Do Not Allege an Investment Advisory Agreement with UBS FS

The IAA establishes rules *only* for investment advisers who enter into investment advisory agreements with their clients. It does *not* govern securities brokers. See Abrahamson v. Fleschner, 568 F.2d 862, 870 (2d Cir. 1977). In order to bring an IAA claim, therefore, Plaintiffs must allege that they had an investment advisory contract with UBS FS. See Bogart v. Shearson Lehman

-5-

Bros., Inc., No. 91 Civ. 1036 (LBS), 1993 WL 33643, at *3 (S.D.N.Y. Feb. 3, 1993) (dismissing IAA claim for failure to allege advisory agreement); see also Clark v. Nevis Capital Mgmt., LLC, No. 04 Civ.2702(RWS), 2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005) ("Only parties to an investment advisory contract may sue for rescission under section 215.") Here, Plaintiffs have not and cannot overcome this threshold requirement.

Plaintiffs admit that UBS FS's "usual business" is the business of a "brokerage." (Compl. ¶ 60.) While Plaintiffs only state a *conclusion* that UBS FS was "at all relevant times an investment adviser under the [IAA]," judicially noticeable *facts*, including the account agreements for each of the Plaintiffs reveal that they each had standard, non-discretionary brokerage accounts. [7] (See, e.g., Sullivan Decl., Exs. A at 1-2, 26; Ex. B at 1, 5; Ex. C at 1, 5; Ex. D. at 1, 5; Ex. E at 1, 5; Ex. F at 1-5, 8; Ex. G at 1-2, 15; Ex. H at 1-5, 16.) See Hall v. Paine, Webber, Jackson & Curtis, Inc., No. 82 Civ. 2840 (DNE), 1984 WL 812, at *2 (S.D.N.Y. Aug. 27, 1984) ("Plaintiffs must establish by more than conclusory allegations that the defendant was an investment adviser."); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98-99 (2d Cir. 2007) (a plaintiff cannot rely on mere *conclusions*); Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002) ("The Court is not obligated to accept pleadings stated as legal conclusions, even on a Rule 12(b)(6) motion."). For example, information accompanying Plaintiff Kassover's IRA brokerage account agreement specified that it was "*not an advisory account.*" (Sullivan Decl., Ex. A at 26 (emphasis in original).) Plaintiffs' account agreements also stated that "the primary services [UBS's clients] pay for are trading and execution [transactions], and the advice [UBS] provides is incidental." (See, e.g., Ex. B at 15; Ex. Ex. C at 18;

---

[7] Plaintiffs' brokerage contracts may be considered by the district court because they are referenced in the Complaint. (See e.g., Compl. ¶ 59 (UBS "entered into contracts with Plaintiffs and other members of the class to provide investment advice"); see also id. ¶ 88; see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007) (district court must consider the allegations in the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); see also Yung v. Lee, 432 F.3d 142, 146-47 (2d Cir. 2005); Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005) (contract referenced in the complaint may be considered by district court for purposes of a Rule 12(b)(6) motion to dismiss). Additionally, filings with the Securities and Exchange Commission ("SEC") are properly before the Court because they are the subject of judicial notice. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with SEC).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

accord Ex. E at 26 (emphasis added).)  Information accompanying Kassover's account agreement specified that it was "*not an advisory account.*"  (Id., Ex. A at 26 (emphasis in original).)

Similarly, Plaintiff Mittman's contract expressly notes that it is a "Brokerage" account, and Mittman certified:

> I have reviewed the section entitled Conducting Business with UBS
> Guide to Investment Advisory and Broker Dealer Services.  I understand
> the material distinctions between advisory and broker dealer services and
> acknowledge that the Master Account Agreement found in the Important
> Account Information and Disclosures booklet *establishes a brokerage*
> *account and* UBS obligations as it pertains to that account will be that of
> a broker dealer as described in the disclosure section and in the
> brokerage agreement.

(Sullivan Decl., Ex. C at 5 (emphasis added).)  Furthermore, the disclosures provided by UBS FS described at length UBS FS's duties and legal obligations as a broker-dealer.  For example, UBS FS informed Plaintiffs: "In our capacity as broker-dealer, we do not make investment decisions for clients or manage their accounts on a discretionary basis.  We will only buy or sell securities for brokerage clients based on specific directions from you."  (Id., Ex. O at 5.)  The disclosures also highlight the legal obligations UBS would have as a broker-dealer.

> It is important to note that when we act as your broker-dealer, we do not
> enter into a fiduciary relationship with you. . . .  Absent special
> circumstances, we are not held to the same legal standards that apply
> when we have a fiduciary relationship with you, as we do when
> providing investment advisory services.

(Id., Ex. O at 6 (emphasis in original).)  Because an investment advisory contract was not and cannot be properly pled (because no such contract exists), Plaintiffs fail to state a claim under the IAA.  See Neely v. Bar Harbor Bankshares, 270 F. Supp. 2d 44, 49 (D. Me. 2003) (observing that "there is no right of action under the Act unless there is first an investment adviser contract between the parties"); Clark, 2005 WL 488641, at *14 (same).

### 2.    The IAA Does Not Apply Because UBS FS Was Not Acting as an Investment Adviser

Plaintiffs also fail to allege facts establishing that UBS FS acted as "investment adviser" as defined by the IAA.  The absence of such facts is fatal to Plaintiffs' IAA claim.

### a.    Plaintiffs Do Not Allege Facts that UBS FS Provided Investment Advice Regarding ARS

The law makes a clear distinction between investment advice and brokerage services. In order to claim that UBS FS acted as an adviser, Plaintiffs must allege that UBS FS "engage[d] in the business of advising [Plaintiffs] . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(11). Plaintiffs fail to link any specific advice with their purchase of ARS. See S.E.C. v. Nat'l Executive Planners, Ltd., 503 F. Supp. 1066, 1074 (M.D.N.C. 1980) (dismissing IAA claim against registered investment adviser because "he was not an investment adviser with respect to" the transaction at issue). The Complaint here does not describe a single instance of UBS FS providing investment advice to one of the Plaintiffs.[8]

Instead of describing advice, Plaintiffs provide only general statements that fail to identify particular Plaintiffs or financial advisers, or describe conversations. (See Compl. ¶ 34.) In lieu of describing such statements or conversations, Plaintiffs rely upon irrelevant portions of the UBS FS's general marketing materials regarding advisory services to clients, even though Plaintiffs purchased different, brokerage services. (Compl. ¶ 31.)

In other words, Plaintiffs rely on the fact that UBS FS is a registered investment adviser that provides investment advice to *some* customers. (Compl. ¶¶ 1, 59.) However, this simplistic approach does not carry the day. The pertinent issue is whether *these* Plaintiffs signed investment advisory agreements or received investment advice from UBS FS. See S.E.C. v. Rauscher Pierce Refsnes, Inc., 17 F. Supp. 2d 985, 1002 (D. Ariz. 1998) ("Defendants . . . are correct in stating that registration as an investment adviser under the Act does not alone bring all of a broker-dealer's actions within the scope of the Act."); Nat'l Executive Planners, Ltd., 503 F. Supp. at 1074. As established above, they did not.

---

[8] See Integrated Tech. & Dev., Inc. v. Rosenfield, 103 F. Supp. 2d 574, 578 (E.D.N.Y. 2000) (a plaintiff must "specify the statements that the plaintiff contends were fraudulent, identify the maker of those statements, allege where and when the statements were made, and explain why the statements were fraudulent"); Morin v. Trupin, 823 F. Supp. 201, 205 (S.D.N.Y. 1993) ("The Plaintiffs must state precisely what material misstatements were made, the speaker, the content, the manner in which the statement was misleading, and what the defendants 'obtained' as a result of the fraud.").

Plaintiffs also contend that because UBS FS calls its brokers "financial advisors," they must be "investment advisers" under the IAA.  (Compl. ¶¶ 1, 21, 30.)  Case law requires a more sophisticated analysis.  Calling a broker a "financial advisor" does not mean that UBS FS *acted* as a statutory "investment adviser" within the meaning of the IAA.  See, e.g., Nat'l Executive Planners, Ltd., 503 F. Supp. at 1074 (holding that defendant was not an "investment adviser" as defined by the IAA even though defendant "actively promoted its expertise in the area of financial planning and investment advice"); Swartz v. Deutsche Bank, No. C03-1252MJP, 2008 WL 1968948, at *26 (W.D. Wash. May 2, 2008) (dismissing IAA claim because plaintiff failed to plead investment advisory contract, and instead referred to defendant as financial adviser); see also 15 U.S.C. § 80b-2(11) (defining an "investment adviser" by the person's conduct).[9]  As stated, the agreements signed by Plaintiffs all show that they had standard brokerage accounts, and that they did not receive advisory services.

**b.     The Services Provided to Plaintiffs Were Solely Incidental to the Conduct of UBS FS's Business as a Broker**

The IAA provides that the definition of an "investment adviser":

> does *not* include . . . (C) any broker or dealer whose performance of such services is *solely incidental* to the conduct of his business as a broker or dealer and who receives *no special compensation* therefor . . . .

15 U.S.C. § 80b-2(11) (emphasis added).  At most, Plaintiffs in this case allege services that were incidental to a broker relationship, and that therefore do not fall within the IAA.  See In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig., 583 F. Supp. 1388, 1419 (E.D. Pa. 1984) (holding that plaintiff failed to state an IAA claim because complaint did not contain allegations that the defendant's "advice was anything other than incidental to his brokerage functions"); Kaufman v. Merrill Lynch, Pierce,

---

[9] Additionally, the SEC stated that "[t]he terms *'financial advisor' and 'financial consultant,' for example, are descriptive of such services provided by broker-dealers*. . . . Indeed, terms such as 'financial advisor' and 'financial consultant' are among the many generic terms that describe what various persons in the financial services do, including banks, trust companies, insurance companies, and commodity professionals."  Certain Broker-Dealers Deemed Not To Be Investment Advisers, Release Nos. 34-51523, IA-2376, at 59 (April 15, 2005) (emphasis added).  But see Fin. Planning Ass'n v. S.E.C., 482 F.3d 481 (D.C. Cir. 2007) (holding that the SEC's final rule regarding broker-dealers invalid based on other grounds regarding special compensation).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Fenner & Smith, Inc., 464 F. Supp. 528, 537-38 (D. Md. 1978) (same).

Moreover, although Plaintiffs allege that "[t]he provision of an auction market is not incidental to the conduct of [UBS's] usual brokerage business . . . ." (Compl. ¶ 60), this is nothing more than a misleading attempt to conflate the language of the IAA with a Plaintiffs' conclusory allegation that UBS FS was required to support auctions and thereby guarantee the liquidity and returns of ARS investments. This alleged requirement has no basis in law. Advisory services arise under an investment advisory contract and involve "advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities . . . ." 15 U.S.C. § 80b-2(11). The "provision of an auction market" has nothing to do with being either a broker or an advisor. Even if UBS FS offered such an extraordinary "investment guarantee service," it would not come within the purview of the IAA.

Finally, the SEC's interpretation of what constitutes "advice that is not solely incidental to the conduct of its business as a broker or dealer" is instructive. The SEC's interpretive rule states that services are not solely incidental if the broker-dealer charges a separate fee for advisory services *or* exercises investment discretion over the account. See SEC Interpretive Rule Under the Advisers Act Affecting Broker-Dealers, 17 C.F.R. § 275.202(a)(11)-1(a) (adopted Sept. 19, 2007). In this case, none of the Plaintiffs held discretionary accounts with UBS. (See, e.g., Sullivan Decl., Exs. A at 1-2, 26; Ex. B at 1, 5; Ex. C at 1, 5; Ex. D. at 1, 5; Ex. E at 1, 5; Ex. F at 1-5, 8; Ex. G at 1-2, 15; Ex. H at 1-5, 16 (setting forth that each Plaintiff had brokerage accounts); id., Ex. O at 5 ("In our capacity as broker-dealer, we do not make investment decisions for clients or manage their accounts on a discretionary basis.").) It is indisputable that UBS FS did not charge Plaintiffs a separate fee for any advisory services. (Id., Ex. O at 5 ("We also make recommendations to our brokerage clients about whether to buy, sell or hold securities. We consider these recommendations to be part of our brokerage services and do not charge a separate fee for this advice.").) Therefore, the SEC's interpretive rule supports UBS FS's exempt broker-dealer status.[10]

---

[10] Plaintiffs have argued elsewhere that the fees Defendants allegedly yielded for "running the auctions" are fees for providing "advice." (See e.g., Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for a Protective Order Staying Discovery at 10.) There is absolutely no support in
(continued...)

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**B.    Plaintiffs Seek Remedies Barred by the IAA**

Not only do Plaintiffs fail to allege facts establishing that UBS FS acted as an "investment adviser," they also seek unavailable remedies. (Compl. ¶ 64.) Section 215 of the IAA provides for an extremely narrow private right of action. Private plaintiffs suing investments advisers under the IAA may only seek rescission of their investment advisory contract. See 15 U.S.C. § 80b-15(b); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 24 (1979) (holding that "there exists a limited private remedy under the [IAA] to void an investment advisers contract, but . . . the Act confers *no other private causes of action, legal or equitable*" (emphasis added)).

**1.    Plaintiffs Cannot Seek Declaratory Relief to Void ARS Transactions**

Plaintiffs first seek "a declaratory judgment that the ARS transactions with Plaintiffs and the Class are void." (Compl. ¶ 64.) There is simply no authority for such relief. By seeking a "declaration" to void their ARS purchases, Plaintiffs actually seek the return of the money they invested, i.e., full restitution for their investment losses. But under the IAA "[r]estitution does not include compensation for *any* losses from an investment alleged to have been made as a result of an investment adviser's conduct." Washington v. Baenziger, 656 F. Supp. 1176, 1178 (N.D. Cal. 1987) (emphasis added); Transamerica, 444 U.S. at 25 n.14 (relief under the IAA does not "include compensation for any diminution in the value of the rescinding party's investment alleged to have resulted from the adviser's action or inaction"); Clark, 2005 WL 488641, at *13. Even if investment advisory contracts were formed between Plaintiffs and UBS FS, voiding the investment advisory contracts would not void the transactions in which Plaintiffs purchased ARS from participants in the ARS market. See 15 U.S.C. § 80b-15 (providing remedy to void investment advisers contract).

---

(...continued)

the law for this argument. Even if UBS FS administered auctions (which it did not), such services would have involved the functioning of transactions in auctions and have nothing to do with payment for *advice* to particular investors regarding particular ARS investments. Accordingly, Plaintiffs' attempt to circumvent the requirement of a payment for *advisory* services fails to withstand even minimal scrutiny.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### 2.    Plaintiffs Cannot Seek Disgorgement

Plaintiffs also cannot recover "disgorgement of any and all monies Defendants realized from ARS transactions and auctions." (Compl. ¶ 64.) As explained above, the IAA "only provides a private cause of action for rescission of the contract and recovery of the consideration paid" to the investment adviser. Wellington Int'l Commerce Corp. v. Retelny, 727 F. Supp. 843, 845 (S.D.N.Y. 1989). The IAA confers "no other private causes of action, legal or equitable." Transamerica, 444 U.S. at 24. Thus, Plaintiffs cannot seek disgorgement.

## V.    THE MARTIN ACT PREEMPTS ALL OF PLAINTIFFS' STATE LAW CLAIMS (COUNTS 2-7)

### A.    The Martin Act Provides that Plaintiffs' State Law Claims Cannot be Brought by a Private Litigant

The Martin Act preempts all of Plaintiffs' state law claims. Under the Martin Act, only the New York Attorney General can bring claims concerning misrepresentations or omissions in connection with the sale of securities in New York that do not require proof of scienter. Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 291 (S.D.N.Y. 1998). The Martin Act provides that there is no private right of action to enforce the Act's provisions. See CPC Int'l Inc. v. McKesson Corp., 70 N.Y.2d 268, 275-77, 514 N.E.2d 116, 118-19, 519 N.Y.S.2d 804, 806-07 (1987). Consequently, both the state and federal courts hold that because claims under the Martin Act do not require proof of intent to defraud or scienter, plaintiffs can only bring securities claims that require proof of scienter. Id. A contrary rule "would effectively permit a private action under the Martin Act, which the New York Court of Appeals has already determined would be impermissible." Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 355 (S.D.N.Y. 2005).[11]

---

[11] See also Granite Partners, L.P., 17 F. Supp. 2d at 291 ("claims for breach of fiduciary duty and negligent and innocent misrepresentation, for example, which do not require a plaintiff to plead and prove intentional deceit, are covered by the Martin Act and cannot be asserted by private litigants"); Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190-91 (2d Cir. 2001) (same); S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.), 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007) ("The vast majority of state and federal courts have found that 'causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act, in contrast to a claim requiring intent, such as a claim for common law fraud.'"); Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 0767(LBS), 2003 WL 22052894, at *3 (S.D.N.Y. Sept. 2, 2003) (collecting cases); Pro Bono Invs., Inc. v. Gerry, No. 03 Civ.
(continued...)

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Here, Plaintiffs' second through seventh claims allege misrepresentations and omissions regarding securities that do not require proof of scienter. First, Plaintiffs contend that Defendants misrepresented the liquidity of ARS. (See Compl. ¶ 67; ¶¶ 71-75.) Second, Plaintiffs assert that Defendants failed to support ARS auctions by not purchasing sufficient ARS securities to preserve the liquidity and value of Plaintiffs' ARS. (See id. ¶ 67 (alleging that "failing to support auctions" breach obligations that arise because UBS FS "falsely represented to Plaintiffs . . . that they were bound by duties as Investment Advisers and Financial Advisers."); id. ¶¶ 62, 35, 67, 71-75, 78, 83, 89, 94.) Accordingly, because Plaintiffs' second through seventh claims concern alleged misstatements and omissions in connection with securities, the Martin Act preempts each of those claims. See Pro Bono Invs., 2005 WL 2429787, at *12 n.11, 16.

**B.      Plaintiffs' Attempt to Circumvent the Martin Act Is Unavailing**

In an attempt to avoid the Martin Act, Plaintiffs assert that Defendants' alleged failure to support ARS auctions arises not from any misrepresentation or omission, but from a supposed duty to support the auctions. (See, e.g., id. ¶¶ 4, 77, 81, 87, 92; see also id. ¶ 6 (describing attempt to separate allegations).) These assertions appear only in some claims and are contradicted by Plaintiffs' allegations that: (1) Defendants engaged in a "systematic *advisory* campaign" to induce investment in ARS (id. ¶¶ 3, 34); and (2) Defendants failed to disclose alleged conflicts of interest, i.e., an alleged omission of material fact (See, e.g., id. ¶ 62 ("UBS . . . failed to disclose the conflicts of interest inherent in the ARS investments and that the liquidity of the ARS investment depended on UBS Financial acting for the benefit of their clients as opposed to those of UBS Financial."); id. ¶¶ 35, 67 (same); id. ¶ 3.)[12]

_____

(...continued)

4347 (JGK), 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (dismissing breach of fiduciary duty, unjust enrichment, negligence, gross negligence and negligent misrepresentation claims covered by the Martin Act and citing numerous cases that did likewise); Marcus v. Frome, 329 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2004).

[12] If Plaintiffs' claims regarding an alleged obligation to support ARS auctions do not arise from a misrepresentation or omission, then it begs the question as to how such an obligation could possibly arise. There is no free-standing common law or statutory duty compelling Defendants to support ARS auctions perpetually, just as there is no basis for requiring a broker to ensure the value or liquidity of a

(continued...)

In addition, while Plaintiffs attempt to disclaim misrepresentation or omission claims, such attempts incorporate and rely upon Paragraphs 4 and 39 of the Complaint. (See, e.g., id. ¶¶ 4, 77, 81, 87, 92.) Paragraph 39, in turn, incorporates Paragraphs 53-57 of the Complaint, which include express claims of misstatements by Defendants. (See, e.g., id. ¶ 55 ("The *false and deceptive marketing of ARS as 'Cash Alternatives' was clearly 'unsuitable.'*" (emphasis added).) So, even when Plaintiffs assert that they are not alleging misrepresentations and omissions, they allege misrepresentations and omissions.

## VI.    SLUSA PRECLUDES ALL OF PLAINTIFFS' STATE LAW CLAIMS (COUNTS 2-7)

Through SLUSA, Congress amended Section 28 of the Securities Exchange Act of 1934, by adding, inter alia, paragraph (f)(1):

> *No covered class action* based upon the statutory or common law of any State or subdivision thereof *may be maintained in any State or Federal court by any private party* alleging – (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1) (emphasis added); see also 15 U.S.C. § 77p(b). SLUSA therefore makes purported state-law securities class actions "nonactionable" in any state or federal court. See Kircher v. Putnam Funds Trust, 547 U.S. 633, 637 n.1 (2006).

Under the statute, four conditions trigger preclusion under SLUSA: "(1) the underlying suit must be a 'covered class action'; (2) the action must be based on state or local law; (3) the action must concern a 'covered security'; and (4) the defendant must have misrepresented or omitted a material fact or employed a manipulative device or contrivance 'in connection with the purchase or sale' of that security." Gordon Partners v. Blumenthal, No. 02 Civ. 7377(LAK)(AJP), 2007 WL 431864, at *16 (S.D.N.Y. Feb. 9, 2007). Counts 2-7 satisfy each of these conditions:

---

(...continued)

security purchased by a customer. Any such duties would necessarily arise from the terms of the parties' contractual agreements. Of course, the contracts here provide no such duties. (See, e.g., Exs. A-H.)

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

1.    Plaintiffs' suit is a "covered class action" because it purportedly seeks damages on behalf of more than 50 class members.  See 15 U.S.C. § 78bb(f)(5)(B); (Compl. ¶ 23 ("Plaintiffs reasonably believe that there are thousands of members in the proposed Class.").)

2.    Counts 2-7 are all based on state law.  (See Compl. ¶¶ 65-97.)

3.    Plaintiffs' claims concern ARS which include "covered securities" within the meaning of 15 U.S.C. § 78bb(f)(5)(E).  Under SLUSA, a "covered security" includes any security that, "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred," is:  (i) nationally traded, listed or authorized for listing on the New York Stock Exchange, the American Stock Exchange, or the NASDAQ Stock Market; or, (ii) a security of the same issuer that is equal in seniority or that is a senior security to a security listed or authorized for listing on the national securities exchanges; or, (iii) issued by an investment company that is registered, or that has filed a registration statement, under the IAA.  15 U.S.C. §§ 77r(b), 77p(f)(3), 78bb(f)(5)(E).

Many of the ARS that are the subject of Plaintiffs' Complaint are "covered" for purposes of SLUSA in two ways.  First, many of the funds that issued the ARS are registered under the IAA.  (See Compl. ¶¶ 12, 18-19; Sullivan Decl., Exs I-N) (registration statements).)  See also Horattas v. Citigroup Fin. Mkts. Inc., 532 F. Supp. 2d 891, 898-99 (W.D. Mich. 2007).  Second, the preferred shares issued by many of the funds are senior to the funds' registered and traded common shares.  (Id.)

Plaintiffs attempt to avoid SLUSA preclusion by mixing named Plaintiffs who allegedly did not purchase covered securities (e.g., Mittman, Klocke, and Elliot (Id. ¶¶ 14, 15, 16)), along with other Plaintiffs who purchased covered securities (e.g., Kassover, H. Tubis, and R. Tubis (Compl. ¶¶ 12, 18-19)), and by purporting to bring some causes of action only on behalf of those who allegedly did not purchase covered securities.  Courts consistently hold that such a strategy does not avoid SLUSA preclusion.  See e.g., Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 879 n.4 (8th Cir. 2006) (plaintiffs "cannot avoid SLUSA's application by including some nonpurchasers or nonsellers of covered securities.").

4.    Plaintiffs allege misrepresentations and omissions in connection with the purchase and sale of these "covered securities" and/or that Defendants used or employed a

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

manipulative or deceptive device or contrivance in connection with the purchase or sale of the securities.[13]  For example, Plaintiffs allege that:

- "UBS Financial Advisors *recommended* ARS . . . UBS Financial Advisors *failed to advise* Plaintiffs and the Class . . . Plaintiffs and members of the applicable classes herein were thus *induced* to give their consent . . . *without being advised* . . ." (Compl. ¶ 3 (emphasis added).)

- "Defendants engaged in a *systematic advisory campaign* . . .. Plaintiffs and the Class were . . . *induced* to give their consent . . . Plaintiffs and the Class *were not shown or directed to read* . . . Plaintiffs and the Class *were told* . . . UBS Financial Advisors *stated* . . . As a result of these *materially false and misleading* statements, as well as in *reliance* . . ." (Id. ¶ 34 (emphasis added).)

- "Defendants, acting as Plaintiffs' Financial Advisors, also *failed to disclose* . . ." (Id. ¶ 35 (emphasis added).)

- "The *false and deceptive* marketing of ARS . . ." (Id. ¶ 55 (emphasis added).)

Accordingly, because Plaintiffs allege misrepresentations in connection with the sale of covered securities, Plaintiffs' claims under New York law (Counts 2-7) satisfy all four elements for preclusion under SLUSA and must be dismissed.

## VII.  PLAINTIFFS' CLAIM UNDER SECTION 349 OF NEW YORK GEN. BUS. LAW (COUNT 2) FAILS[14]

A claim under Section 349 requires pleading and proof of:  (1) a "consumer oriented" act or practice; (2) that was materially misleading; and (3) that resulted in an injury.  Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004); see N.Y. Gen. Bus. Law § 349 (McKinney 2004).  Plaintiffs have not and cannot plead any of these elements.

First, the complained of conduct is not "consumer oriented," because it involves the sale of securities, which are not "consumer goods" under the law.  Berger v. E*Trade Group, Inc., No. 600721/99, 2000 WL 360092, at *4 (N.Y. Sup. Ct. Mar. 28, 2000) (holding that brokerage

---

[13] As noted, the allegations in the Complaint contradict Plaintiffs' claim that some allegations do not arise from misrepresentations and omissions.  (See Compl. ¶¶ 3, 34-35, 53-57, 62, 67, 71-75, 78, 83, 89, 94.)  Moreover, Plaintiffs point to no other basis for the supposed obligation of Defendants to support ARS auctions.

[14] As set forth above, the Martin Act preempts and SLUSA precludes all of Plaintiffs' claims under New York law (Counts 2-7).  In this section, and remaining sections, Defendants set forth additional reasons each of the claims fail.

accounts and securities purchases are "outside the scope" of Section 349). Indeed, "[t]he vast majority of courts which have considered the issue have found General Business Law § 349 inapplicable to securities transactions," both because they are "highly regulated" and because they are not "consumer products." Gray v. Seaboard Sec., Inc., 14 A.D.3d at 852, 853 (2005). Accordingly, Plaintiffs' claims do not involve consumer-oriented conduct.

Second, Plaintiffs' Section 349 claim has not sufficiently alleged a material misstatement. Plaintiffs' claim arises from the alleged failure of UBS FS to "provide bids and otherwise participate in regularly scheduled ARS auctions" to ensure the liquidity of Plaintiffs' investments. (Compl. ¶ 67.) Not surprisingly, there is no allegation of any document or statement with such a guarantee. (Compl., passim.)

Finally, to survive a motion to dismiss "[t]he burden is on plaintiffs to show [that] they relied to their detriment" on alleged wrongful conduct by Defendants. Bildstein, 329 F. Supp. 2d at 414 (citation omitted). In this case, Plaintiffs have alleged no facts regarding their reliance. For all of these reasons, the Section 349 claim fails.

## VIII.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM (COUNT 3) FAILS

Plaintiffs' negligent misrepresentation claim fails because (1) the economic loss rule bars the claim; and (2) UBS FS does not owe Plaintiffs a fiduciary duty.

### A.    The Economic Loss Rule Bars Negligent Misrepresentation Claims

The longstanding rule in New York is that economic loss is not recoverable under a negligent misrepresentation theory. GMA Accessories, Inc. v. ePartners Inc., No. 07 Civ. 8414(LAK), 2008 WL 781188, at *2 (S.D.N.Y. Mar. 19, 2008) (dismissing negligent misrepresentation claim based on economic loss rule); Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (same). Plaintiffs allege that they suffered economic losses, not personal or property damage. (See Compl. ¶ 97; see e.g., County of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 62-63 (2d Cir. 1984) (finding loss to be economic where no injury to person or property alleged); Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 725 F. Supp. 656, 665 (N.D.N.Y. 1989) (the term "economic loss" in this context refers to damage other than for physical damage to

person or property resulting from an accidental cause).) Plaintiffs claim that they lost money, because UBS FS did not support auctions. (Compl. ¶ 94.) Such investment losses are "strictly economic losses." Triple U Enters., Inc. v. N.H. Ins. Co., 576 F. Supp. 798, 806 (D.S.D. 1983). Thus, Plaintiffs' negligent misrepresentation claim is barred.

### B. Plaintiffs Cannot Recover for Negligent Misrepresentation Because UBS FS Did Not Owe a Fiduciary Duty

"[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty." Stewart v. Jackson & Nash, 976 F.2d 86, 90 (2d Cir. 1992); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004) (same). As set forth below, Plaintiffs have failed to sufficiently allege that UBS FS owed a fiduciary duty to Plaintiffs. Plaintiffs' claim for negligent misrepresentation therefore fails.

## IX.     PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM (COUNT 4) FAILS

A breach of fiduciary duty claim requires, first and foremost, the existence of a fiduciary relationship between the plaintiff and defendant. See Muller-Paisner v. TIAA, 446 F. Supp. 2d 221, 229 (S.D.N.Y. 2006). To establish the existence of a fiduciary relationship, Plaintiffs must plead facts demonstrating that UBS FS "'occupied a position of trust or special confidence . . . that imposed obligations beyond the express agreements' in the contract." Europacific Asset Mgmt. Corp. v. Tradescape Corp., No. 03Civ.4556PKL, 2005 WL 497787, at *9 (S.D.N.Y. Mar. 2, 2005) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

The existence of broker-client relationship – as with UBS FS and Plaintiffs – is insufficient to establish a fiduciary relationship. "In the absence of discretionary trading authority delegated by the customer to the broker . . . a broker does not owe a general fiduciary duty to his client." Bissell v. Merrill Lynch & Co., 937 F. Supp. 237, 246 (S.D.N.Y. 1996), aff'd, 157 F.3d 138 (2d Cir. 1998); accord De Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1302 (2d Cir. 2002); Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 536 (2d Cir. 1999) (broker's duty is limited to the "narrow task of consummating the transaction requested"). Instead, broker-dealers ordinarily have "no legal responsibilities beyond the prompt and accurate carrying out of any transaction directed by" their clients. Stewart v. J.P. Morgan Chase & Co., No. 02 Civ.1936MHD, 2004 WL 1823902, at *12

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

(S.D.N.Y. Aug. 16, 2004). Plaintiffs cannot establish that UBS FS owed them a fiduciary duty

because Plaintiffs do not, and cannot, allege facts showing that that their alleged claims involve

anything other than ordinary, non-discretionary brokerage accounts. Therefore, the breach of fiduciary

duty claim fails. (Compl. ¶¶ 77-80.)[15]

## X.  PLAINTIFFS' AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM (COUNT 5) FAILS

Under New York law, "'[a] claim for aiding and abetting a breach of fiduciary duty

requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly

induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach.'"

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006). Plaintiffs fail to plead the elements of

aiding and abetting breach of fiduciary duty, which is the only claim against UBS AG. (Compl. ¶¶ 81-

86.)

First, for the reasons set forth above, Plaintiffs' aiding and abetting claim fails because

Plaintiffs fail to plead a viable breach of fiduciary duty claim against UBS FS. See PPI Enters. (U.S.),

Inc. v. Del Monte Foods Co., No. 99 Civ. 3794 (BSJ), 2000 WL 1425093, at *10 (S.D.N.Y. Sept. 26,

2000) (dismissing an aiding and abetting breach of fiduciary duty claim because no underlying

fiduciary duty existed).

Second, Plaintiffs' aiding and abetting claim fails because the Complaint lacks

particularized allegations that UBS AG (i) had actual knowledge of the purported underlying breach,

and (ii) substantially assisted the breach. See, e.g., S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 848

(2d Cir. 1987) ("[T]he gravamen of the claim of participation in a breach of fiduciary duty is the

'knowing participation' of the third party in the fiduciary's breach of trust." (citation omitted)). Courts

consistently hold that corporate affiliates are not automatically liable for aiding and abetting and,

absent sufficient allegations that the affiliate knew of and substantially assisted in the breach of

---

[15] As with the IAA claim, Plaintiffs rely on the allegation that UBS FS held itself "out as a financial advisor[] to Plaintiff . . . ." (Compl. ¶ 78.) This allegation does not state a triable claim. See Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1190, 1193 (S.D.N.Y. 1986) (dismissing breach of fiduciary duty claim based on alleged misrepresentations that the defendant was "not only plaintiffs' broker, but their 'friend, confidant and financial advisor'").

fiduciary duty by its affiliate, have dismissed claims for aiding and abetting.  See, e.g., In re RSL COM

PRIMECALL, Inc., No. 01 Civ. 11457 (ALG), 2003 WL 22989669, at *14 (Bankr. S.D.N.Y. Dec. 11,

2003) (no claim for aiding and abetting breach of fiduciary duty against directors of holding companies

where plaintiffs pled no facts demonstrating knowing participation in allegedly wrongful guarantee by

subsidiary's directors); Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 248 (S.D.N.Y. 1996).

   Plaintiffs' unsupported conclusory assertion that UBS AG "knew of . . . the fiduciary

breaches by its affiliated subsidiary brokerage" (Compl. ¶ 83) fails to adequately allege UBS AG had

actual knowledge of anything that might be considered a breach of fiduciary duty.  See Goldin Assocs.,

L.L.C. ex rel. SmarTalk Teleservices, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 00 Civ.

8688 (WHP), 2003 WL 22218643, at *8 (S.D.N.Y. Sept. 25, 2003) (dismissing aiding and abetting

claims because "a plaintiff must allege that the defendant had actual knowledge of the primary

violator's status as a fiduciary and actual knowledge that the primary violator's conduct contravened a

fiduciary duty"); see also Kaufman v. Cohen, 307 A.D.2d 113, 125-26, 760 N.Y.S.2d 157, 169-70

(N.Y. App. Div. 2003) (dismissing claim based solely on the "conclusory allegation" that defendants

knew of the relationship between the plaintiff and the primary wrongdoer).

   Plaintiffs plead no facts showing (or even suggesting) that UBS AG had actual

knowledge of (1) the purported fiduciary relationship between Plaintiffs and UBS FS; (2) any specific

acts supposedly constituting breaches of fiduciary duty; and, (3) the allegedly wrongful nature of these

alleged acts.  Allegations of generalized knowledge concerning UBS AG's conduct are inadequate.

Rather, Plaintiffs must allege sufficient facts to demonstrate the plausibility of their assertion that UBS

AG actually knew that UBS FS breached a fiduciary duty to Plaintiffs.  They have not done so.

   Plaintiffs also fail to allege facts demonstrating UBS AG's "substantial assistance" to

UBS FS.  "Substantial assistance may only be found where the alleged aider and abettor 'affirmatively

assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'"  In

re Sharp Int'l Corp., 403 F.3d 43, 50 (2d. Cir. 2005) (citation omitted).  Plaintiffs' unsupported and

vague assertion that UBS AG "orchestrat[ed] and direct[ed]" UBS AG (Compl. ¶ 83), fails to establish

that UBS AG "affirmatively assist[ed]" UBS FS's alleged breach.  Sharp Int'l, 403 F.3d at 50.

## XI.    PLAINTIFFS' BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM (COUNT 6) FAILS

Plaintiffs also seek to allege a Breach of the Implied Covenant of Good Faith and Fair Dealing. (Compl. ¶¶ 87-91.) Although New York law implies a covenant of good faith and fair dealing in the course of contract performance, "[t]he duty . . . is not without limits, and no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291-92, 639 N.Y.S.2d 977, 979-80 (1995) (citation omitted). In this case, there is no written or oral contract establishing UBS FS's obligation to guarantee the liquidity and value of ARS – indeed the contractual language is to the contrary.

The brokerage agreements governing the relationships between Plaintiffs and UBS FS make no mention of a promise to support ARS auctions. (Sullivan Decl., Exs. A-H.) In addition, disclosures provided to Plaintiffs clearly describe the possibility of auction failure, a *non sequitor* if UBS FS had an obligation to ensure auctions cleared. (Id., Ex. O at 36.) Accordingly, Plaintiffs' breach of the covenant claim is inconsistent with the terms of the agreements between Plaintiffs and UBS FS, and must fail. See Dalton, 87 N.Y.2d at 389; Europacific Asset Mgmt. Corp. v. Tradescape Corp., 2005 WL 497787, at *13-14 (dismissing claim for breach of the implied covenant where defendant acted in accordance with customer agreement).[16]

## XII.    PLAINTIFFS' NEGLIGENCE CLAIM (COUNT 7) FAILS

Plaintiffs allege that UBS FS negligently failed to participate in and support regularly scheduled ARS auctions. (Compl. ¶ 94.) Plaintiffs' claim fails because (1) the economic loss rule bars the claim; and (2) UBS FS had no duty to support the auctions.

The economic loss rule bars Plaintiffs' negligence claim, just as it bars Plaintiffs' negligent misrepresentation claim. See Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d

---

[16] In any case, the implied covenant would not prohibit UBS FS from engaging in conduct permitted by contract in a manner favorable to them. See Suthers v. Amgen Inc., 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) (dismissing claim for breach of implied covenant because "Plaintiffs [had] no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract"). There is absolutely no legal requirement for UBS FS to purchase billions of dollars of ARS at auctions for the benefit of Plaintiffs. Accordingly, the breach of the covenant claim fails.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

265, 285 (S.D.N.Y. 2001) (dismissing negligence claim where plaintiff alleged only economic harm in the form of lost profits).

      In addition, as stated above, a broker's duties are limited to "diligence and competence in executing the client's trade orders, and [the broker] is obliged to give honest and complete information when recommending a purchase or sale." De Kwiatkowski, 306 F.3d at 1302; see also Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 337 F. Supp. 107, 111 (N.D. Ala. 1971) ("The relationship of agent and principal only existed between [broker and nondiscretionary customer] when an order to buy or sell was placed, and terminated when the transaction was complete."); Press, 166 F.3d at 536. Plaintiffs do not allege that UBS FS failed to execute any trades properly or failed to give them honest and complete information regarding trades. (See Compl. ¶ 92.) Rather, the basis of the negligence claim is that UBS FS allegedly breached its duty of care by "failing to continue to support . . . and otherwise participate in regularly scheduled ARS auctions" to ensure the liquidity of Plaintiffs' holdings. (Id. ¶ 94.) As a matter of law, UBS FS had no such duty. See Ciccone v. Hersh, 530 F. Supp. 2d 574, 576-79 (S.D.N.Y. 2008) (dismissing breach of fiduciary duty claim against "investment and financial advisor" because, as a broker, financial adviser had no duty "to provide advice and protect Plaintiffs from further losses"). Therefore, Plaintiffs have failed to properly state a claim of negligence. See Starr v. Time Warner, Inc., No. 07 Civ. 5871(DC), 2007 WL 4144627, at *6 (S.D.N.Y. Nov. 21, 2007) (dismissing negligence claim under New York law for failing to establish a duty of care).[17]

---

[17] Plaintiffs also seem to allege that Defendants owed Plaintiffs duties based on NYSE and NASD rules and regulations. (See Compl. ¶ 53.) Even if Plaintiffs alleged that Defendants adopted the specific regulations alleged to be violated, which they do not (see id. ¶¶ 53-57), "[n]o one injured by a failure to comply with those regulations can sue a broker-dealer for failing to follow the rule." Gurfein v. Ameritrade, Inc., No. 04 Civ. 9526 (LLS), 2007 WL 2049771, at *3 (S.D.N.Y. July 17, 2007) (citing SSH Co. v. Shearson Lehman Bros. Inc., 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987); Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1190 (S.D.N.Y. 1986). Therefore, NYSE and NASD rules and regulations do not impose any duty upon Defendants.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## XIII.  CONCLUSION

For each of the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: Los Angeles, California       PAUL, HASTINGS, JANOFSKY & WALKER LLP

July 30, 2008

By:_____ s/ _____

WILLIAM F. SULLIVAN

williamsullivan@paulhastings.com
Howard M. Privette
howardprivette@paulhastings.com
John S. Durrant
johndurrant@paulhastings.com
515 South Flower Street
Los Angeles, California 90071
(213) 683-6000

Keith W. Miller
keithmiller@paulhastings.com
75 East 55th Street
New York, New York 10022
(212) 318-6000

James D. Wareham
jameswareham@paulhastings.com
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

Attorneys for Defendants

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I, William F. Sullivan, do hereby certify that on July 30, 2008, a true and correct copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

_____
s/
WILLIAM F. SULLIVAN

LEGAL_US_E # 80365347.1