UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

RONALD D. KASSOVER, CHRIS JONES : 
STEPHEN M. MITTMAN, RONALD E. :    No.    08-cv-02753 (LMM)
KLOKKE, JAN SCHNEIDER, MARJORIE :
ELLIOTT, MARK THEISSMAN, RITA TUBIS :
and HELENA TUBIS on behalf of themselves :
and all others similarly situated, :    ECF CASE
 :
        Plaintiff, :
 :
    v. :
 :
UBS AG and UBS FINANCIAL SERVICES, INC., :
 :
    Defendants. :

-------------------------------------------------------------x

 

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
<u>THE AMENDED CLASS ACTION COMPLAINT</u>**

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF DEFENDANTS' ARGUMENTS ..................1

II.     FACTUAL ALLEGATIONS ........................................................................3

III.    ARGUMENT ......................................................................................5

        A.      Legal Principles Governing Motions To Dismiss Preclude Dismissal .................5

        B.      Investment Advisors Act of 1940 Claim Is Actionable ............................5

        C.      New York's Martin Act Does Not Preempt State Law Claims ...........................9

        D.      SLUSA Does Not Preempt State Law Claims ...................................11

                1.      SLUSA Cannot Preclude Claims By Plaintiffs and
                        Subclass Purchasers of "Non-Covered Securities" ...............................11

                2.      SLUSA Is Inapplicable To Plaintiffs' Breach of Duty Claims ................11

        E.      Section 349 New York General Business Law Is Actionable ...............................13

        F.      Breach of Fiduciary Duty Claim Is Actionable  ....................................15

        G.      Negligent Misrepresentation Claim Is Actionable.................................17

        H.      Aiding and Abetting Breach of Fiduciary Duty Claim Is Actionable .................20

        I.      Breach of Contract Claim Is Actionable...............................................22

IV.     CONCLUSION................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL & STATE CASE LAW</u>

*Abrahamson v. Fleschner*,
    568 F.2d 862, 870 (2d Cir. 1977)......................................................................9

*Apfel v. Prudential-Bache Sec., Inc.*,
    183 A.D.2d 439, 583 N.Y.S.2d 386 (1st Dep't 1992) ....................................23

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007) ......................................................................................5

*Bissell v. Merrill Lynch & Co.,*
    937 F. Supp. 237 (S.D.N.Y. 1996), *aff'd*, 157 F.3d 138 (2d Cir. 1998) ..........................17

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)..............................................................................4

Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,
    98 F.3d 13 (2d Cir. 1996) ................................................................................17

*Bullmore v. Banc of Am. Sec. LLC,*
    485 F. Supp. 2d 464 (S.D.N.Y. 2007)............................................................25

*Caboara v. Babylon Cove Dev., LLC,*
    No. 2006-09372, 2008 NY Slip Op 6281,
    2008 N.Y. App. Div. LEXIS 6126 (N.Y. App. Div. 2d Dep't July 15, 2008) ..................10

*County of Suffolk v. Long Island Lighting Co.*,
    728 F.2d 52 (2d Cir. 1984) ..................................................................... 19-20

*Dalton v. Educ. Testing Servs.*,
    87 N.Y.2d 384, 663 N.E.2d 289 (1995) .................................................... 22-24

*De Kwiatkowski v. Bear, Stearns & Co.,*
    306 F.3d 1293 (2d Cir. 2002) ................................................................... 16-17

*Desia v. GE Life & Annuity Assur. Co.,*
    Civ. No. 05-1395, 2007 U.S. Dist. LEXIS 22179 (D. Conn. Mar. 26, 2007) ............15, 17

*Design Strategy, Inc. v. Davis,*
    469 F.3d 284 (2d Cir. 2006) ..........................................................................20

*Diduck v. Kaszuchi & Sons Contractors Inc.*,
    974 F.2d 270 (2d Cir. 1992) ..................................................................... 15-16

*Eastman Kodak Co. v. Camarata*,
    Civ. No. 05-6384L, 2006 U.S. Dist. LEXIS 88206 (W.D.N.Y. Dec. 6, 2006) ...............20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
    375 F.3d 168 (2d Cir. 2004) ......................................................................................19, 22

*Europacific Asset Mgmt. Corp. v. Tradescape Corp.*,
    Civ. No. 03-4556, 2005 U.S. Dist. LEXIS 3227 (S.D.N.Y. Mar. 2, 2005) ...............17, 23

*Excelsior Fund, Inc. v. J.P. Morgan Chase Bank, N.A.*,
    Civ. No. 06-5246, 2007 U.S. Dist. LEXIS 22966 (S.D.N.Y. Mar. 28, 2007) .................22

*Fezzani v. Bear Stearns Sec. Corp.*,
    384 F. Supp. 618 (S.D.N.Y. 2004) .................................................................................20

*Foman v. Davis*,
    371 U.S. 178 (1962).........................................................................................................25

*Fustok v. Conticommodity Servs., Inc.*,
    618 F. Supp. 1082 (S.D.N.Y. 1985) ..............................................................................24

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999) ......................................................................14

*Gillman v. Chase Manhattan Bank, N.A.*,
    73 N.Y.2d 1, 534 N.E.2d 824 (1988).............................................................................8-9

*Glenoit Mills, Inc. v. Miss Bobbie Originals, Inc.*,
    Civ. No. 93-5494, 1994 U.S. Dist. LEXIS 6618 (S.D.N.Y. May 18, 1994).....................25

*Gordon Partners v. Blumenthal*,
    No. 02 Civ. 7377 (LAK, AJP), 2007 WL 431864 (S.D.N.Y Feb 9, 2007) ......................12

*GMA Accessories, Inc. v. ePartners Inc.*,
    No. 07 Civ. 8414 , 2008 WL 781188 (S.D.N.Y. Mar. 19, 2008) ....................................19

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314, 774 N.E.2d 1190 (2002) .......................................................................13

*Green Hills (USA), L.L.C. v. Aaron Streit, Inc.*,
    361 F. Supp. 2d 81 (E.D.N.Y. 2005) ..............................................................................19

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) .............................................................................................22

*Henneberry v. Sumito Corp.*,
  Civ. No. 04-2128, 2007 U.S. Dist. LEXIS 50633 (S.D.N.Y. July 12, 2007) ............ 18-19

*Hughes v. SEC*,
  174 F.2d 969 (D.C. Cir. 1949) ....................................................................................7

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
  227 F.3d 8 (2d Cir. 2000) ................................................................................ 17, 19-20

*In re Deutsche Telcom AG Sec. Litig.*,
  229 F. Supp. 2d 277 (S.D.N.Y. 2002)...........................................................................11

*In re Initial Public Offering Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003) ............................................................................22

*Jaufman v. Levine*,
  Civ. No. 06-1295, 2007 U.S. Dist. LEXIS 72883 (N.D.N.Y. Sept. 28, 2007) ...........15, 24

*Jernow v. Wendy's Int'l, Inc.*,
  Civ. No. 07-3971, 2007 U.S. Dist. LEXIS 85104 (S.D.N.Y.2007) ........................... 13-14

*Jones v. Dana*,
  Civ. No. 06-0159, 2006 U.S. Dist. LEXIS 25293 (S.D.N.Y. May 3, 2006) ...................15

*Kimmell v. Schaefer*,
  89 N.Y.2d 257, N.E.2d 450, 652 N.Y.2d 715 (1996) ......................................................18

*LaSala v. UBS, AG*,
  Civ. No. 06-1736, 2007 U.S .Dist. LEXIS 60330 (S.D.N.Y. Aug. 15, 2007) .................12

*Lehman Bros. Commercial Corp. v. Minmetals Int't Non-Ferrous Metals Trading Co.*,
  179 F. Supp. 2d 118 (S.D.N.Y. 2000) ......................................................................18, 24

*Lerner v. Fleet Bank, N.A.*,
  439 F.3d 273 (2d Cir. 2006) .........................................................................................24

*Manhattan Motor Cars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) ..................................................................................19

*MDC Corp., Inc. v. John H. Harland Co.*,
  228 F. Supp. 2d 387 (S.D.N.Y. 2002) ...........................................................................23

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*,
  697 F. Supp. 1224 (D. D.C. 1988) ................................................................................25

*Moser v. Devine Real Estate (Florida)*,
    38 A.D.3d 1077, 832 N.Y.S.2d 118 (3d Dep't 2007) .................................................. 15-16

*Muller-Paisner v. TIAA*,
    446 F. Supp. 2d 221 (S.D.N.Y. 2006) ............................................................17

*Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*,
    725 F. Supp. 656 (N.D.N.Y. 1989) ..............................................................19

*Nichols v. Washington Mut. Bank*,
    Civ. No. 07-3216, 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007)....................8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20, 647 N.E.2d 741 (1995) ...................................................... 13-14

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
    478 F. Supp. 2d 496 (S.D.N.Y. 2007) ...................................................... 22-23

*Payne v. Wood*,
    No. 94-1230, 1995 U.S. App. LEXIS 22551 (6th Cir. Aug. 2, 1995) ............................2, 9

*Pelman v. McDonalds Corp.*,
    396 F.3d 508 (2d Cir. 2005) ....................................................................13

*Pelman v. McDonald's Corp.*,
    452 F. Supp. 2d  320, 324 (S.D.N.Y. 2006)......................................................15

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ...........................................8, 18, 20, 24

*Press v. Chemical Inv. Servs. Corp.*,
    988 F. Supp. 375 (S.D.N.Y. 1997) ..............................................................24

*Rabin v. MONY Life Ins. Co.*,
    Civ. No. 06-775, 2007 U.S. Dist. LEXIS 18437 (S.D.N.Y. Mar. 8, 2007) .....................15

*Rowe v. Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62, 412 N.Y.S.2d 827 (1978) .......................................................23

*S. Cherry St. LLC v. Hennessee Group LLC*,
    Civ. No. 06-1755, 2007 U.S. Dist. LEXIS 59145 (S.D.N.Y. July 21, 2007) .......................

*Salomon Bros., Inc. v. Huitong*,
    Civ. No. 94-8559, 1996 U.S. Dist. LEXIS 17358 (S.D.N.Y. Nov. 21, 1996) .................24

*Scott v. Dime Sav. Bank*,
    886 F. Supp. 1073 (S.D.N.Y. 1995) ...................................................25

*SEC v. Capital Gains Research Bureau, Inc.*,
    375 U.S. 180 (1963) .........................................................................6

*SEC v. Dibella*,
    2007 U.S. Dist. LEXIS 73850 (D. Conn. Oct. 3, 2007) ......................6

*SEC v. PIMCO Advisors Fund Mgmt., LLC*,
    341 F. Supp. 2d 454 (S.D.N.Y. 2004).................................................6

*Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    465 F. Supp. 1233 (S.D.N.Y. 1979) .................................................25

*Sofonia v. Principal Life Insurance Co.*,
    465 F. 3d 873 (8th Cir. 2006) ..........................................................11

*Solomon v. City of New York*,
    66 N.Y.2d 1026, 489 N.E.2d 1294 (1985) .......................................23

*Sommer v Fed. Signal Corp.*,
    79 N.Y.2d 540, 593 N.E.2d 1365 (1992) .........................................19

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    Civ. No. 01-3013, 2001 U.S. Dist. LEXIS 15943 (S.D.N.Y. Oct. 9, 2001) ....................12

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir. 1992) ..............................................................19

*Straigliabotti v. Franklin Res., Inc.*,
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) ...........................................12

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .......................................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007)......................................................................5

*Teller v. Bill Hayes, Ltd.*,
    213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) .......................14

*United States v. Roche*,
    425 F. Supp. 743 (D. Mass. 1977) ....................................................4

*United States v. Santoro*,
    302 F.3d 76 (2d Cir. 2002)........................................................17, 24

vi

*United States v. Skelly*,
    442 F.3d 94 (2d Cir. 2006) ........................................................... 16-17

*In re Vivendi Universal, S.A., Sec. Litig.*,
    Civ. No. 02-5571, 2004 U.S. Dist. LEXIS 7015 (S.D.N.Y. Apr. 22, 2004) ...................18

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004) ...........................................................22

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004) .............................................23

*Zackiva Commc'ns. Corp. v. Horowitz*,
    826 F. Supp. 86 (S.D.N.Y. 1993) ...................................................15

## STATUTES & RULES

15 U.S.C. § 77a *et seq.* .........................................................................11

15 U.S.C. § 78bb .............................................................................2, 12

15 U.S.C. §§ 80b-1 to 80b-21 ...............................................................1

15 U.S.C. § 80b-2(11) ...........................................................................7

15 U.S.C. § 80b-6(2) .............................................................................6

Fed. R. Civ. P. 8(a) ...............................................................13, 18, 22, 24

Fed. R. Civ. P. 9(b) ...............................................................................13

Fed. R. Civ. P. 12(b)(6) ..........................................................................5

Fed. R. Civ. P. 15(a) .............................................................................25

N.Y. Gen. Bus. Law § 349 (McKinney 2004) ...........................2, 11, 13-15

## SECONDARY AUTHORITY

Prosser, Law of Torts (1955), 534-535 .....................................................6

Restatement (Second) of Contracts § 205 cmt. (d) .....................................22

## <u>OTHER AUTHORITIES</u>

*Applicability of Investment Advisers Act to Certain Publications,*
SEC Release No. IA-563, Jan. 10, 1977, 42 FR 2953 ........................................................6

*Applicability of the Investment Advisers Act to Financial Planners, Pension*
*Consultants, and Other Persons Who Provide Investment Advisory*
*Services as a Component of Other Financial Services*,
SEC Release No. IA-1092, 17 C.F.R. § 276, 52 Fed. Reg. 38400 (Oct. 16, 1987)............8

*In re Arleen W. Hughes*,
SEC Exchange Act Release 4048, 27 SEC 629, 1948 SEC Lexis 20 (Feb. 18, 1948)........7

Plaintiffs Ronald D. Kassover, Chris Jones, Stephen M. Mittman, Ronald Klokke, Jan Schneider, Marjorie Elliott, Rita Tubis and Helena Tubis (collectively "Plaintiffs") respectfully submit the following memorandum of law in opposition to Defendants UBS AG's ("UBS AG") and UBS Financial Services, Inc.'s ("UBS FS") (collectively, "UBS's" or the "Defendants'") motion to dismiss Plaintiffs' Amended Class Action Complaint.

## I.    INTRODUCTION AND SUMMARY OF DEFENDANTS' ARGUMENTS

This action, alleging only violations of the Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. §80b-1, *et seq.*, and state statutory and common law claims, arises from UBS's fiduciary role as a sophisticated and experienced "Financial Advisor" who purported to put their clients' interests first.   As such, UBS advised and directed Plaintiff and the class to purchase billions of dollars of auction rate securities ("ARS") by falsely portraying ARS as a "cash alternative" when it was not in an effort to promote UBS's own financial interest over those of its clients, and then failed to support ARS auctions since February 2008 – auctions UBS well knew were essential for ARS liquidity. As a result of UBS's alleged misconduct, Plaintiffs and the class have suffered damages from being unable to access their own funds or being forced to sell their ARS at a loss. UBS's alleged wrongful activities have also led to investigations and settlements with the Securities and Exchange Commission ("SEC") and the Massachusetts and New York Attorneys General requiring UBS, *inter alia*, to buy-back $19 billion in ARS holdings and pay $150 million in fines.

Faced with the detailed allegations and well pled claims, Defendants advance numerous arguments for dismissal of all claims. First, Defendants argue that despite the fact that UBS sold the ARS as Plaintiffs' "Financial Advisors" and registered over 8,000 of its brokers as "investment advisors," UBS has no liability under the IAA because they acted only as *brokers*

excepted from the IAA's definition of "investment advisor." UBS also argues that Plaintiffs' brokerage agreements preclude them from ever asserting an IAA claim regardless of the nature of Defendants' misconduct. (Def. Mem. at 5-10). This argument fails since the allegations at very least gives rise to factual issues as to whether UBS actions fall within the broker exception to the investment advisor definition and the provisions in the brokerage arguments are unenforceable as unconscionable terms which cannot insulate UBS from IAA liability when UBS so clearly and egregiously acted in its own self interest and provided wrongful investment advice as "Financial Advisors." (¶¶ 29-31). Defendants also argue that the remedies sought by Plaintiffs are barred by the IAA. (Def. Mem. at 11-12). However, courts have held that a plaintiff can recover more than just rescission of contract and recovery of fees paid. *See Payne v. Wood*, No. 94-1230, 1995 U.S. App. LEXIS 22551 (6th Cir. Aug. 2, 1995).

Defendants then argue that Plaintiffs' state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb (Def. Mem. at 5-8) and New York's Martin Act, N.Y. Gen. Bus. Law §§ 352 to 359-h (McKinney 1996 & Supp. 2007) ("Martin Act") (Def. Mem. at 12-15). The SLUSA argument fails because the state claims arising from UBS's misrepresentations (*i.e.*, Counts II and III for violation of General Business Law §349 and negligent misrepresentation, ¶¶ 34-35, 65-76) are brought by Plaintiffs Mittman, Klokke and Elliott who purchased "non-covered" securities on behalf of a distinct subclass of purchasers of "non-covered securities" and thus cannot be preempted. Further, Plaintiffs' remaining state law claims (*i.e.*, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of the implied covenants of good faith and fair dealing and negligence, ¶¶ 77-97) do not involve allegations of a misrepresentation or omission of a material fact in connection with the purchase or sale of a security but rather arise solely from UBS breaching its fiduciary duties

as Financial Advisors acting to the detriment of their clients' investment.  Further, a recent Appellate Division decision has made clear that Martin Act provides no broad exemption of common law claims even where the same facts supporting a Martin Act claim also support parallel common law claims, as here.  Defendants then argue, without merit, that all of the state claims should be dismissed for specific "pleading defects."

## II.   FACTUAL ALLEGATIONS

During the Class Period, Plaintiffs each were approached by their UBS "Financial Advisor" who proposed and recommended that they be given consent to invest Plaintiffs' cash holdings in ARS.  (¶¶ 34-35).[1]  Plaintiffs' UBS Financial Advisors recommended ARS as a higher yielding "cash alternative" to other liquid investments such as money market funds.  (*Id.*).  ARS are complex long-term debt securities where the yield or interest rate is reset at periodic auctions held every week or month, at which time the instruments may also be sold.  (¶ 2).  ARS are not traded on any national exchange.  (*Id.*)  The liquidity of the ARS depended on the functioning of these auctions, and the auctions in turn depended on the continued participation of certain primary financial institutions who pledged to support them.  (*Id.*)  UBS pledged to act as a primary institution supporting the ARS auctions for Plaintiffs' ARS holdings.  (*Id.*)  This auction participation yielded UBS substantial special annual compensation (which UBS continues to receive even though, as alleged, UBS has ceased its participation in the auctions to the detriment of its clients).  (*Id.*)  Indeed, UBS's undisclosed motivation for this advisory campaign was to obtain the substantial undisclosed auction-related annual fees.  (¶¶ 2-3, 33, 50).

However, UBS Financial Advisors failed to advise Plaintiffs and the Class of either the

---

[1]      In addition to promoting itself as Plaintiffs' Financial Advisors UBS FS was a registered investment advisor, and as of March 28, 2008, UBS FS registered in excess of 8,900 employees who performed investment advisory functions. (¶ 29).  Defendant UBS Financial Services provided "investment advisory services" to of 584,000 clients, of which in excess of 75% were individual clients, during 2007.  (*Id.*)

potential absence of liquidity attendant with ARS investments or any conflicts of interest between Plaintiffs' financial interests and those of UBS in connection with the ARS. (¶¶ 34-35). Further, Defendants conducted this advisory campaign without providing Plaintiffs a copy of, or at the very least reference to, or direction that Plaintiffs review any portion of, ARS prospectuses or registration statements filed with the SEC. (¶¶ 3, 34, 45). Plaintiffs and members of the applicable classes herein were thus induced to give their consent to their UBS Financial Advisor to invest in ARS without being shown the applicable ARS's prospectuses or registration statements and without being advised of the potential absence of liquidity, the attendant risks or the fundamental conflicts interest with UBS. (¶¶ 3, 34).

On or about February 13, 2008, UBS determined that it was no longer in its own financial interest to continue participating in ARS auctions. (¶¶ 5, 40). In breach of the duties owed to Plaintiffs as Financial Advisors, Defendants ceased all ARS auction participation, thereby ensuring that the liquidity of their clients' ARS holdings was wiped out, causing Plaintiffs' ARS holdings to become frozen. (¶¶ 40-41).

Most recently, the investigation by the New York State Attorney General (¶ 48) culminated in a complaint against UBS FS and UBS Securities LLC (the "NY AG Complaint," annexed as Ex. 1 to the accompanying Declaration of Joel P. Laitman "JL Decl.")[2] which clearly describes UBS AG's knowing participating in UBS FS's breach of fiduciary duty in the form of an effort to unload ARS on UBS customers and direct assistance in that breach. As various ARS auctions began to fail, there was a dramatic rise in ARS inventory that could not conceivably have been ignored by UBS AG. In fact, UBS AG then directed the reduction of ARS inventory

---

[2]    The Complaint references the investigation by New York State Attorney General Andrew Cuomo (¶ 48)Courts have taken judicial notice of complaints by state attorneys general and their contents. *See United States v. Roche*, 425 F. Supp. 743, 745 (D. Mass. 1977) (judicially noticing complaint by Massachusetts attorney general and examining its allegations); *see also, Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

through sales to UBS clients.  For example, in an email dated August 22, 2007, UBS's **Global** Head of Municipal Securities wrote that "We have encouraged our [Wealth Management] partners to mobilize the troops internally to . . . move more product through the system. . .  this is our best and most effective way of hedging our exposure. . ." (*Id.*, at ¶ 58).  The Global Head of Municipal Securities on August 30, 2007 wrote an email stating, "As you can imagine during these stressful times, the pressure is on to move our inventory." (*Id.*, at ¶ 60; *see also* ¶¶ 62, 70).

As set forth in the NY AG Complaint, by December 19, 2007 UBS FS's problems with ARS were "elevated to the **highest levels**" at UBS AG.  (*Id.*, at ¶ 74) (emphasis supplied).

Not only did UBS AG know about the urgent problems facing UBS due to the failure of the ARS market, they specifically knew that they were going to breach their fiduciary duty.  On January 13, 2008, the Global Head of Municipal Securities emailed senior executives to discuss "breaking the moral obligation to support these markets in an orderly fashion" and allowing certain ARS to fail.  (*Id.*, at ¶ 84).

## III.    <u>ARGUMENT</u>

### A.    <u>Legal Principles Governing Motions To Dismiss Preclude Dismissal</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is governed by certain well-settled legal principles.  The court accepts as true all factual allegations in the complaint and views them in the light most favorable to the plaintiff.  *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 127 S. Ct. 2499, 2510 (2007).  Further, a claim should only be dismissed if the plaintiff's factual allegations are insufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007).

In arguing for dismissal of all claims UBS ignores these principles and that the allegations of the Complaint at very least raise factual issues which cannot be resolved on a

motion to dismiss.

### B.    Investment Advisers Act of 1940 Claim Is Actionable

As the Supreme Court noted in *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180 (1963)*,* the fundamental purpose of enacting the IAA in general was "to eliminate, or at least expose, all ***conflicts of interest which might incline an investment adviser...to render advice which was not disinterested*.**" *Id.,* at 191 (emphasis added). The IAA creates a statutory fiduciary duty designed to ensure that Investment Advisors do not engage in deceit in providing financial advice to their clients.[3]   A claim is stated under the IAA by allegations of mere negligence.[4]

The Complaint satisfies the IAA pleading requirements by alleging that UBS both falsely represented that the ARS were liquid "cash alternatives" (¶¶ 34-35) and then sought to advance UBS's own financial interest at the expense of their clients by failing to support the ARS auctions UBS knew were essential for ARS liquidity. (¶¶ 39-41).  These allegations set forth a claim that UBS breached its duties of loyalty, utmost good faith and honest dealing; the duty to disclose any and all potential or real conflicts of interest;[5] and the duty not to omit, or fail to disclose material information concerning the ARS themselves and the auction markets.  *See*

---

[3]    The IAA imposes a statutory fiduciary duty upon investment advisors towards their clients.  *See* 15 U.S.C. § 80b-6(2). Section 80b-6(2) provides, in pertinent part:

> It shall be unlawful for any investment advisor, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly…  (2) to engage in any transaction, practice, or course of business which operates as fraud or deceit upon any client or prospective client.

[4]    Proving a violation of 15 U.S.C. § 80b-6(2) simply requires proof of negligence by the primary violator. *SEC v. Dibella*, 2007 U.S. Dist. LEXIS 73850 (D. Conn. Oct. 3, 2007); *SEC v. PIMCO Advisors Fund Mgmt., LLC*, 341 F. Supp. 2d 454, 470 (S.D.N.Y. 2004).

[5]    The SEC, citing *Capital Gains Research Bureau,* 375 U.S. at 194 (quoting Prosser, *Law of Torts*, 534-35 (1955)) stated that "an investment adviser is a fiduciary who owes his clients an affirmative duty of 'utmost good faith and full and fair disclosure of all material facts.'" *See Applicability of Investment Advisers Act to Certain Publications,* SEC Release No. IA-563, 42 Fed. Reg. 2953 (Jan. 10, 1977).

*Capital Gains Research Bureau,* 375 U.S. at 198-200 ("Failure to disclose material facts must be deemed fraud or deceit" by adviser upon his clients under § 80b-6(2)); *see also, Hughes v. SEC*, 174 F.2d 969 (D.C. Cir. 1949).[6]

> Under the IAA an "investment adviser" is broadly defined to include:
>
> any person who, for compensation, engages in the business of advising others...as to the value of securities or as to the advisability of investing in, purchasing or selling securities;
>
> The only applicable limitation in the definition of "investment advisor" is that it:
>
> "does not include ... (C) any broker or dealer whose performance of such services is **solely incidental to the conduct of his business** as a broker or dealer and who receives **no special compensation therefor;** . . .

15 U.S.C. § 80b-2(11).

The Complaint specifically alleges that ARS were not client-directed trades which the broker merely executed – and thus was not merely "*incidental*" to the broker function – but rather were sold to Plaintiffs as part of a systematic advisory campaign as Plaintiffs "Financial Advisors." (¶¶ 3, 34).

Further, the Complaint alleges UBS did not merely obtain brokerage commissions from the ARS purchases, but also substantial annual compensation based on a percentage of the total ARS issue – "special compensation" UBS continued to collect despite its misconduct and completion of the ARS sales to Plaintiffs. (¶¶ 3, 6, 34-35, 50). "Special Compensation" under the

---

[6]       The SEC noted that these same principles of loyalty and paramount interest of a client as part of an investment adviser's basic duties under the Advisors Act were "a matter of general common law long before the passage of the Securities Exchange Act." *In re Arleen W. Hughes*, SEC Exchange Act Release 4048, 27 SEC 629 (Feb. 18, 1948) (SEC articulated the following principles: a registered broker-dealer also registered as an investment adviser has a "duty...to act in the best interests of clients and to make only such recommendations as will best serve such interests. Since loyalty to his trust is the first duty which a fiduciary owes to his principal, it is a general rule that a fiduciary must not put himself in a position where his own interests may come in conflict with those of his principal... The customer's knowledge that the respondent was making some profit did not constitute adequate disclosure"). (Emphasis added).

IAA need not be paid by the client.[7] The Complaint alleges UBS received "**special compensation**" beyond brokerage commissions involved with the sale of the ARS.   (¶ 33) Accordingly, it is at very least a factual issue, which cannot be resolved on a dismissal motion, whether UBS may take advantage of the broker exception to the Investment Advisor definition.

Defendants also argue that the IAA claim must be dismissed since the brokerage agreements contained provisions that state that as brokerage accounts UBS will act only as a "broker-dealer" and thus UBS cannot be liable as an Investment Advisor.  However, UBS cannot hide behind these provisions when UBS purposely clothed itself as "Financial Advisors" in order to engage in the ARS deceit.[8]  At very least these are unconscionable provisions.

An agreement is substantively unconscionable when its terms "unreasonably favor the stronger party."  *Nichols v. Washington Mut. Bank*, Civ. No. 07-3216, 2007 U.S. Dist. LEXIS 85936, at *27 (E.D.N.Y. Nov. 21, 2007).  Here, the provision effectively precluding liability under the IAA serves only UBS and thus "favors the stronger party."  The provisions are also procedurally unconscionable" *Id.* (citing *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 11, 534 N.E.2d 824 (1988).

Here, the UBS provisions purportedly stating that the accounts are brokerage accounts, and effectively precluding an advisory agreement, are substantively unconscionable because they clearly favor UBS by providing clients with absolutely no remedies (other than arbitration) for

---

[7]      The SEC has provided guidance that "special compensation" under the broker-dealer exemption need not be paid by the client or recipient of the advice.  *See* Applicability of the Investment Advisers Act to Financial Planners, Pension Consultants, and Other Persons Who Provide Investment Advisory Services as a Component of Other Financial Services, SEC Release No. IA-1092, 17 C.F.R. § 276, 52 Fed. Reg. 38400 (Oct. 16, 1987) ("[i]t is not necessary that an adviser's compensation be paid directly by the person receiving the investment advisory services, but only that...[he] receive compensation from some source for his services.")

[8]      Defendants also try to disconnect their activity in the auction market (and fees received in connection therewith) from their role as broker or advisor.  (Def. Mem. at 9-10).  However, not only were the two intertwined since Defendants promoted ARS as liquid and the only way they could be so is through continuing auctions (¶¶ 3, 5, 33, 35), the Complaint specifically alleges the Defendants received "compensation" for their service of supporting the ARS auctions. (¶¶ 33, 50, 60).

UBS's false statements regarding the actual nature of the ARS investments. Further, procedurally the provisions do not explain in terms understandable to a nonexpert in the federal securities laws the rights being forfeited.

Finally, Defendants argue that Plaintiffs seek remedies barred by the IAA, such as disgorgement and declaratory relief to void the ARS transactions. (Def. Mem. at 11-12). However, courts have held that a plaintiff can recover more than mere rescission of contract and recovery of fees paid. *See Payne v. Wood*, No. 94-1230, 1995 U.S. App. LEXIS 22551 (6th Cir. Aug. 2, 1995) (upholding award for the amount of investment and promised return).

In *Payne*, the Sixth Circuit held that "'Restitution of any consideration paid' may in some cases be the same as the amount paid in management fees," but could also include "money given to [defendant] to invest." *Id.* at *17-18. Here, as in *Payne*, the client entrusted money to the advisor with the understanding that the client would be able to "get [their] money anytime[.]" *Id.* at *2. However, that promise, as did those in *Payne*, ultimately proved false. Thus, the voiding of Plaintiffs' ARS transactions and disgorgement of monies realized by UBS as a result of the ARS transactions are appropriate remedies under the IAA.[9]

### C.   New York's Martin Act Does Not Preempt State Law Claims

Defendants argue that "[u]nder the Martin Act," Plaintiffs' common law claims are preempted by New York General Business Law §§ 352 to 359h (the "Martin Act") because there is no private right of action under the Martin Act for claims that do not require proof of scienter. (Def. Mem. at 13). UBS's argument is without basis.

---

[9]      Cases cited by Defendants in support of the proposition that Plaintiffs' IAA claim fails because there were no advisory agreements here (Def. Mem. at 5-10) are distinguishable. In none of those cases did the plaintiff allege, as alleged here, repeated representations that the defendant maintained a special relationship with plaintiffs as their "Financial Advisor." Indeed, in *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977), the court found that the defendants were investment advisors because, *inter alia*, the plaintiffs made their investment decisions in reliance on defendants' investment advice.

The Appellate Division, Second Department, has recently ruled that the Martin Act provides no broad preemption of common law claims.  Specifically, it held that the Martin Act does not preempt state law claims merely because the allegations would also support a Martin Act violation.  *Caboara v. Babylon Cove Dev., LLC*, No. 2006-09372,  2008 NY Slip Op 6281, 2008 N.Y. App. Div. LEXIS 6126, at *2-3, 5-6 (N.Y. App. Div. 2d Dep't July 15, 2008) ("[n]o case from the Court of Appeals holds that the Martin Act not only failed to provide, expressly or impliedly, for a private right of action, but also, abrogated or supplanted an ***otherwise viable private cause of action*** whenever the allegations would support a Martin Act violation.").  Thus, citing precedent from the Court of Appeals, the Appellate Division ruled that the plaintiffs' common-law fraud and breach of contract causes of action are not preempted simply because they rest upon allegations that would also support a Martin Act violation.

Here, as in *Caboara*, Plaintiffs' claims 2 through 7 are individual state law claims whose facts merely ***could*** support Martin Act claims by the Attorney General.  Further, this is not a case where Plaintiffs purposefully engaged in "artful pleading" of a Martin Act claim because it could not satisfy the pleading requirements of that statute.  (Def. Mem. at 13).  Here, taking the facts as alleged in the Complaint as true and construing all inferences in favor of Plaintiffs, as the Court must, the Complaint is sufficient to state causes of action for the state law claims alleged by Plaintiffs.  *See Caboara*, 2008 NY Slip Op 6281, at *3. [10]

---

[10]     The cases cited by Defendants in support of the proposition that state law claims are largely preempted by the Martin Act (Def. Mem. at 12-13) were substantially repudiated by the Appellate Division in *Caboara*, which found the Martin Act statute and history evidenced no such preemption intent.

**D.**  **SLUSA Does Not Preempt State Law Claims**

**1.**  **SLUSA Cannot Preclude Claims By Plaintiffs and Subclass Purchasers of "Non-Covered Securities"**

Defendants argue that SLUSA precludes plaintiffs' state-law claims.  However, this argument fails since the Complaint asserts claims on behalf of two different and distinct putative classes:  one class that purchased covered securities, and another that purchased non-covered securities.  *See* Complaint, ¶¶ 3, 6, Counts II and III.  Defendants argue that the claims being asserted on behalf of the non-covered securities class are precluded by SLUSA, despite the fact that SLUSA, by its own terms, does not apply to non-covered securities.[11]  In support of this proposition, defendants cite a single case:  *Sofonia v. Principal Life Insurance Co.*, 465 F. 3d 873 (8th Cir. 2006).  However, the *Sofonia* case does not stand for this novel proposition.

In a footnote in *Sofonia*, the Eighth Circuit rejected the contention that because the putative class included some purchasers of non-covered securities, SLUSA did not apply.  *Id.*, at 879, n. 4.  In contrast, here, Plaintiffs acknowledged that not all plaintiffs can assert the same state law claims.  Instead, the Complaint creates two distinct proposed classes of claimants:  Only those plaintiffs who did not purchase covered securities assert GBL § 349 and negligent misrepresentation claims.  *See* Complaint, Counts II and III.  The creation of subclasses is a perfectly proper methodology for delineating between different claims being asserted on behalf of different classes as part of the same overall wrongful course of conduct.  *See, e.g., In re Deutsche Telcom AG Sec. Litig.*, 229 F. Supp. 2d 277, 283 (S.D.N.Y. 2002) ("District courts have broad discretion to facilitate the 'orderly administration' of an action, which includes the ability to create subclasses pursuant to Rule 23(c)(4)(B), 'when appropriate'").

---

[11]     SLUSA defines a covered security as one that is traded on a national exchange, issued by an investment company that is registered or has filed a registration statement under the IAA, or one that is equal in seniority or senior to a security that is listed or authorized for listing on a national exchange.  *See,* 15 U.S.C. §§ 77r (b), 77p (f) (3), 78 bb (f) (5) (E).

11

### 2.    SLUSA Is Inapplicable To Plaintiffs' Breach Of Duty Claims

Counts IV (breach of fiduciary duty), V (aiding and abetting breach of fiduciary duty), VI (breach of implied covenants of good faith and fair dealing) and VI (negligence) all arise from breach of duty allegations accruing long after the purchase of the securities at issue. *See* Complaint, ¶¶ 6, 77-97. SLUSA, on the other hand, precludes state law claims involving covered securities that allege "(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. 78bb(f) (i).

Because the claims at issue do not involve allegations of misrepresentations or omissions of a material fact or of a manipulative or deceptive device or contrivance in connection with the purchase or sale of a security, by it terms SLUSA is inapplicable. S*ee, e.g., LaSala v. UBS, AG*, Civ. No. 06-1736, 2007 U.S. Dist. LEXIS 60330, at *75-77 (S.D.N.Y. Aug. 15, 2007) (SLUSA not applicable where no alleged misrepresentations inducing investors to purchase or retain common stock); *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., Civ. No. 01-3013 2001 U.S. Dist. LEXIS 15943 (S.D.N.Y. Oct. 9, 2001) (SLUSA not applicable where alleged misconduct related to transaction fees charged by Merrill Lynch for securities trades); *see also Straigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094 1210 (N.D. cal. 2005).[12] Indeed, Plaintiffs' breach of fiduciary duty allegations arise from "moral obligations" that members of UBS management have recognized as a distinct obligation independent of their legal representations. For example, the NY AG Complaint references a December 15, 2007 email

---

[12]    The claims being asserted herein are dramatically different from those being asserted in the cases upon which defendants rely, such *as Gordon Partners v. Blumenthal*, No. 02 civ. 7377 (LAK, AJP), 2007 WL 431864 (S.D.N.Y Feb 9, 2007). In that case, holder claims were being asserted in the context of a 10b-5 action which incorporated by reference a consolidated class action complaint with which the case had been consolidated. Not surprisingly, Magistrate Judge Peck held that plaintiffs' common law fraud claims being asserted therein were precluded by SLUSA.

from David Shulman, who ran UBS's auction-rate desk, to UBS executives questioning whether

UBS should continue to submit bids to support auctions, acknowledging that investors expected

UBS to make sure the auctions ran smoothly and UBS's "moral obligation":

> "Retail clients have -- I am confident been told that these are 'demand' notes . . .
> and will be redeemed at par on demand," Mr. Shulman wrote. While there is no
> formal obligation to cash out clients at par, he added, "***the moral obligation runs
> very deep***."

*See* Aug. 9, 2008 Wall Street Journal article "UBS to Pay $19 Billion As Auction Mess Hits

Wall Street" (emphasis added)(annexed as Ex. 3 to JL Decl.); *see also* NY AG Complaint at ¶50.

### E.    <u>Section 349 of The New York General Business Law Is Actionable</u>

Section 349(a) of the New York General Business Law provides:

> (a)    Deceptive acts or practices in the conduct of any business, trade or
> commerce, or in the furnishing of any service in this state, are hereby declared
> unlawful.

In order to show that Plaintiff is entitled to relief for a violation of GBL § 349, Plaintiff

must allege that: (1) the defendant has engaged "in an act or practice that is deceptive or

misleading in a material way;" and (2) "that Plaintiff has been injured by reason thereof."

*Jernow v. Wendy's Int'l, Inc.,* Civ. No. 07-3971, 2007 U.S. Dist. LEXIS 85104 (S.D.N.Y.2007)

(citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26-

27, 647 N.E.2d 741 (1995) (citations omitted)); *Goshen v. Mut. Life Ins. Co. of New York*, 98

N.Y.2d 314, 323-24, 774 N.E.2d 1190 (2002).   Section 349 does not require proof of intent.[13]

*Oswego*, 85 N.Y.2d at 24.   "Deceptive acts and practices" are "those likely to mislead a

reasonable consumer acting reasonably under the circumstances." *Jernow*, 2007 U.S. Dist.

LEXIS 85104, at *7 (citing *Oswego, supra*).

---

[13]    As a non-fraud provision, § 349 claim is not subject to Fed. R. Civ. P. 9(b) but rather the liberal pleading requirements of Fed. R. Civ. P. 8(a).  *See Pelman v. McDonalds Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Defendants argue that Plaintiffs' GBL § 349 claim should be dismissed because the conduct at issue is not considered "consumer-oriented" as the statute requires. (Def. Mem. at 16-17).[14]  However, the determination of whether an act or practice was consumer-oriented depends upon whether the practices were directed to "consumers at large" and whether they were made in public statements as opposed to representations made only to specific individuals.  *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 182 (1999) (insurance company's public statements in marketing their "vanishing premium" life insurance product was "consumer-oriented" under GBL § 349, since it involved an "*extensive marketing scheme that had a broader impact on consumers at large.*") (emphasis added); *see also, Oswego*, 85 N.Y.2d at 26-27 (consumer-oriented conduct found where defendant bank falsely marketed interest-bearing accounts since alleged deceptive practices found in "standard documents" and were not "unique to these two parties, nor were they private in nature or 'single shot transactions'").[15]

Here, all the alleged deceptive statements were indisputably "public" statements contained in uniform documents – not individual statements in customer specific documents relating to "single-shot transactions." (¶¶ 30-31, 34-35).

Defendants also argue that Plaintiffs have not sufficiently alleged a material misstatement or that they relied upon UBS's materially deceptive conduct to their detriment.  (Def. Mem. at 17).  This argument fails since, as set forth above, it is clearly alleged that UBS misrepresented to Plaintiffs that UBS would act as Plaintiffs' "financial advisors" (¶¶ 30-31, 67) and that ARS have the same liquidity as cash while omitting to state that ARS are inherently illiquid if the

---

[14]      *See Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146, 630 N.Y.S.2d 769, 773 (2d Dep't 1995) (false and misleading advertising is a typical consumer oriented deceptive practice).

[15]      As the court noted in *Oswego*, 85 N.Y.2d at 24, GBL § 349 was enacted initially to give the Attorney General enforcement power to curtail deceptive acts and practices – willful or otherwise – directed at the consuming public.

main auction players do not participate in the auctions.   (¶¶ 34-35).   Further, there is no requirement that in pursuing a claim under § 349 a plaintiff must show he relied upon defendant's materially deceptive conduct to his detriment.  *Pelman v. McDonald's Corp.,* 452 F. Supp. 2d 320, 324 (S.D.N.Y. 2006) (reliance not a necessary element of GBL § 349 claim; only requirement is to show "that the practice complained of was objectively misleading or deceptive and that he had suffered injury 'as a result' of the practice").   In all events, it is clearly alleged that Plaintiffs relied upon UBS's misrepresentations.  (¶¶ 30, 34, 65, 67, 74).

### F.   Breach of Fiduciary Duty Claim Is Actionable

Under New York law, the elements of a cause of action for breach of fiduciary duty are: (1) breach of a duty owed to plaintiff by a fiduciary – including duties of loyalty, good faith and full disclosure; (2) defendant's substantial assistance or knowing participation in the underlying breach; and (3) damages. *Diduck v. Kaszuchi & Sons Contractors Inc.*, 974 F.2d 270, 281-82 (2d Cir. 1992).  The measure of damages includes the lost opportunity for profit on accounts diverted as a result of a fiduciary advancing his own interests ahead of those of his clients.[16]  *Jones v. Dana*, Civ. No. 06-0159, 2006 U.S. Dist. LEXIS 25293 (S.D.N.Y. May 3, 2006).

It is well-settled that whether a fiduciary relationship has been sufficiently alleged is a "fact intensive" question, and not a matter that should be determined on a motion to dismiss. *Rabin v. MONY Life Ins. Co.*, Civ. No. 06-775, 2007 U.S. Dist. LEXIS 18437 (S.D.N.Y. Mar. 8, 2007); *Desia v. GE Life & Annuity Assur. Co.*, Civ. No. 05-1395, 2007 U.S. Dist. LEXIS 22179 (D. Conn. Mar. 26, 2007); *Moser v. Devine Real Estate (Florida)*, 38 A.D.3d 1077, 832 N.Y.S.2d 118 (3d Dep't 2007).   Further, the "exact limits of what constitutes a fiduciary

---

[16]      The pleading requirement with respect to damages is minimal. "[A] plaintiff alleging breach of fiduciary duty…is not required to meet the higher standard of loss or proximate causation." *Diduck*, 974 F.2d at 284.  Further, identifiable loss need not be alleged to plead a breach of fiduciary duty claim. *Jaufman v. Levine*, Civ. No. 06-1295, 2007 U.S. Dist. LEXIS 72883 at *41 (N.D.N.Y. Sept. 28, 2007) (citing *Zackiva Commc'ns Corp. v. Horowitz*, 826 F. Supp. 86 (S.D.N.Y. 1993)).

relationship are 'impossible of statement,' since it is determined by the ongoing conduct between parties." *Diduck,* 874 F.2d at 218.

The Second Circuit has held that the core elements of a fiduciary relationship are: reliance, de facto control and dominance. *See United States v. Skelly, supra.* In *Skelly,* the Court stated a fiduciary relationship arises where a party conveys its money or property to the custody and control of another, reasonably relying on a relationship of "great trust and confidence" and relying upon the understanding that those funds would be used primarily for the benefit of the beneficiary and not primarily for the benefit of the fiduciary himself.

These core elements of a fiduciary relationship – reliance, de facto control and dominance – are all alleged here with respect to the ARS investments. Plaintiffs conveyed their cash to Defendants' control in reliance on their stated expertise and commitment to principally advance their clients financial interests (¶¶ 30-31, 65, 67) and Defendants dominated the relationship by participating or failing to participate in the ARS auctions, thereby determining whether the client's investment is liquid or completely frozen and ultimately unilaterally marking down the value of their clients' ARS securities. (¶¶ 40-44).

Defendants argue that no fiduciary duty claim can be stated because a nondiscretionary account cannot give rise to fiduciary duties. (Def. Mem. at 18-19). However, this argument is not supported by Second Circuit authority which holds otherwise. For example, in *De Kwiatkowski v. Bear, Stearns & Co.,* 306 F.3d 1293 (2d Cir. 2002), the court merely held that there is no fiduciary relationship between a "broker" and his "customer" in the context of the brokers' usual functions of buying and selling securities in non-discretionary accounts – noting that such trades are ***directed by the client*** and the broker's role is limited to the execution of

those trades. *De Kwiatkowski,* 306 F.3d at 1308.[17]  However, *De Kwiatkowski* specifically held

that a fiduciary relationship could well arise ***even in the context of a non-discretionary account***

where the "broker's" conduct deviates from the routine function of buying and selling securities.

*Id.,* at 1308-9. (Emphasis added). Similarly, in *United States v. Skelly,* the Second Circuit ruled*:*

> ***we have recognized that particular factual circumstances may serve to create a fiduciary duty between a broker and his customer even in the absence of a discretionary account.*** *See, e.g., De Kwiatkowski v. Bear, Stearns & Co.,* 306 F.3d 1293, 1306-08 (2d Cir. 2002).) Id  at 98.  (Emphasis added).[18]

In this action, the Defendants' various ARSs clearly do ***not*** fall within the ambit of

typical client-directed trades, as was the case in *De Kwiatkowski* – indeed, as alleged, the

Plaintiffs were sold ARS without understanding how these complex instruments functioned.[19]

## G.    Negligent Misrepresentation Claim Is Actionable

Under New York Law, a claim for negligent misrepresentation lies where:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

---

[17]    In *De Kwiatkowski*, this limited role of the "broker" was particularly significant given the fact that plaintiff in that case was a highly sophisticated currency trader. *De Kwiatkowski*, 306 F.3d at 1297.

[18]    The Second Circuit has also recognized that even with respect to typical "broker" functions there may be facts and circumstances that give rise to a "special relationship of trust and confidence" for those functions entrusted to the "broker." *United States v. Santoro,* 302 F.3d 76, 80 (2d Cir. 2002) ("Even where a broker lacks discretionary investment authority, "a relationship of trust and confidence [exists] between a broker and a customer with respect to those matters that have been entrusted to the broker.")*; Desia,* 2007 U.S. Dist. LEXIS 22179, at *21 ("an ongoing relationship may exist between a broker and client upon a proper set of facts.")

[19]    The cases cited by UBS (Def. Mem. at 18-19) for the proposition that there is no fiduciary duty here are clearly distinguishable since the plaintiffs in those cases were sophisticated individuals or institutional investors and there were no affirmative representations by the defendants that they would act with expertise as "Financial Advisors."  *See Muller-Paisner v. TIAA,* 446 F. Supp. 2d 221 (S.D.N.Y. 2006) (sophisticated investor); *Europacific Asset Mgmt. Corp. v. Tradescape Corp.*, No. 03-4556, 2005 U.S. Dist. LEXIS 3227 (S.D.N.Y. Mar. 2, 2005) (equally sophisticated institutions involved in transaction); *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996) (same); *Bissell*, 937 F. Supp. at 247 (as creditor, no fiduciary relationship); *De Kwiatkowski*, 306 F.3d at 1297, 1306 (sophisticated investor).

*Henneberry v. Sumito Corp.*, Civ. No. 04-2128, 2007 U.S. Dist. LEXIS 50633 (S.D.N.Y. July 12, 2007) (quoting *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)); *Pension Comm. of Univ. of Montreal Pension Plan,* 446 F. Supp. 2d at 198. Allegations of common law negligent misrepresentation need only meet the liberal pleading standards of Rule 8(a). *In re Vivendi Universal, S.A. Sec. Litig.*, Civ. No. 02-5571, 2004 U.S. Dist. LEXIS 7015, at *8 (S.D.N.Y. Apr. 22, 2004).

The Complaint sufficiently alleges that Defendants owed Plaintiffs a duty to give correct information -- including that UBS had expertise in the ARS field whereas Plaintiffs had none. (¶¶ 4, 34, 39). "Liability for negligent misrepresentation [will be] imposed only on those persons who possess unique or specialized expertise, or who are in the special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Henneberry,* 2007 U.S. Dist. LEXIS 50633, at *40-41 (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 675 N.E.2d 450 (1996)); *Lehman Bros. Commercial Corp.,* 179 F. Supp. 2d at 155; *see also, Pension Comm. of Univ. of Montreal,* 446 F. Supp. 2d at 163 (reliance element satisfied based on defendant's marketing materials).

Here, Defendants affirmed both that they had the expertise to assist their clients in achieving their financial goals (¶ 30) and that they could be relied upon and entrusted with Plaintiffs' most guarded confidences. (¶ 31).[20] In addition, it is alleged that UBS had expertise in with ARS whereas Plaintiffs did not. (¶ 34). The Complaint also clearly alleges that Defendants' false statements were intended for Plaintiffs to rely upon and were known to be incorrect and the information supplied to Plaintiffs concerning ARS "were known by the

---

[20] In all events, whether there is a special relationship "generally raises a question of fact." *Henneberry*, 2007 U.S. Dist. LEXIS 50633, at *46 (quoting *Kimmell*, 89 N.Y.2d at 263); *see also, Lehman Bros. Commercial Corp.*, 179 F. Supp. 2d at 154 (sustaining negligent misrepresentation claim where there was a question of fact concerning the existence of a "special relationship").

Defendant to be desired by the Plaintiff for a serious purpose" – to learn about ARS investments.[21] (¶¶ 3, 34). Finally, the Complaint alleges that Plaintiffs "intended to rely" and did, in fact, "reasonably rely" upon Defendants' misrepresentations to their detriment. (¶¶ 3, 30, 34, 70-74).

Defendants argue (Def. Mem. at 17-18) that Plaintiffs' negligent misrepresentation claim fails because it is barred under the economic loss rule and because UBS did not owe to Plaintiffs a fiduciary duty. First, as set forth above, the relationship between UBS and Plaintiffs is in fact a fiduciary one. *See* Sec. III. F, *supra*. Second, the economic loss rule, which holds that where the underlying dispute is fundamentally a contract dispute there can be no competing negligence claim, does *not* apply, where, as here, there are duties arising from a defendant's own actions and representations (¶¶ 3, 29-31, 34-35), as discussed above, as well as NASD industry standards (¶¶ 53-57) independent of a contract. Thus, it is well-settled in claims against professionals that where there are independent fiduciary duties of reasonable care, tort claims may be prosecuted alongside breach of contract claims. *See Sommer v Fed. Signal Corp.,* 79 N.Y.2d 540, 593 N.E.2d 1365 (1992);[22] *see also, Hydro Investors,* 227 F.3d at 17 (holding that economic loss rule does not apply to violations of a professional duty and "[t]o hold otherwise would in effect bar recovery in many types of malpractice actions").[23]

---

[21]     *See Henneberry*, 2007 U.S. Dist. LEXIS 50633, at *38-39.

[22]     *Sommer* represents "[t]he leading decision by the New York Court of Appeals on this matter." *Green Hills (USA), L.L.C. v. Aaron Streit, Inc.*, 361 F. Supp. 2d 81, 89 (E.D.N.Y. 2005).

[23]     The cases upon which Defendants rely for the proposition that Plaintiffs' negligence claim is barred by the economic loss rule (Def. Mem. at 17-18) are distinguishable since in those cases defendants did not make affirmative representations regarding the special relationship they had with Plaintiffs as their "Financial Advisor". *See, e.g., GMA Accessories, Inc. v. ePartners Inc.*, No. 07 Civ. 8414 , 2008 WL 781188 (S.D.N.Y. Mar. 19, 2008); *Manhattan Motor Cars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 725 F. Supp. 656 (N.D.N.Y. 1989); *Stewart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992); *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168 (2d Cir. 2004). Further, the Second Circuit has also recognized that courts cannot foreclose negligence claims – as was done in *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52 (2d Cir. 1984) –

**H.    Aiding and Abetting Breach of Fiduciary Duty Is Actionable**

Under New York law, a claim against a third party for aiding and abetting an underlying breach of fiduciary duty (*i.e.,* a claim against the UBS AG) must allege: (i) a breach of fiduciary obligations by the underlying primary party; (ii) knowledge of this breach by the aider and abettor; (iii) substantial assistance or participation in the breach; and, (iv) damage sustained as a result of the breach.  *Design Strategy, Inc. v. Davis,* 469 F.3d 284 (2d Cir. 2006); *Eastman Kodak Co. v. Camarata*, Civ. No. 05-6384L, 2006 U.S. Dist. LEXIS 88206 (W.D.N.Y. Dec. 6, 2006).  "Substantial assistance" or "knowing participation" is sufficiently pled by citing affirmative acts by the aider and abettor.  *Pension Comm. of Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 179.

Courts have sustained claims for aiding and abetting breaches of fiduciary duties where the unrelated third-party aiders have received or made substantial payments from or to the primary violators as part of an alleged scheme.  *Eastman Kodak*, 2006 U.S. Dist. LEXIS 88206, at *42-43; *see also*, *Fezzani v. Bear Stearns Secs. Corp.*, 384 F. Supp. 618, 647 (S.D.N.Y. 2004).

Here, UBS AG's knowledge and participation is well-pled.  UBS AG and UBS FS are part of the same entity – indeed, UBS FS is controlled by UBS AG. (¶¶ 20-21).  The alleged misrepresentations and omissions were issued and disseminated through UBS AG's public websites, which websites and statements copyrighted by UBS AG for the years 2002-2008.  (¶¶ 30-31; JL Decl., Ex. 2).[24]  UBS AG also received substantial financial payments as part of the

---

simply because they claim an economic loss.  *See Hydro Investors*, 227 F.3d at 17 (negligence claims against particular parties – *e.g.*, accountants, brokers, attorneys – almost always are for economic losses).  Second, unlike here and *Hydro Investors*, in *County of Suffolk* there was no independent duty between rate-payers and the utility company defendants besides those duties created by the parties' contractual relationship.  *County of Suffolk*, 728 F.2d at 63.

[24]    In fact, in order to access the misrepresentations set forth in the Complaint at ¶¶ 30-31, one must first go to www.UBS.com (UBS's global homepage, provided in English, German, French and Italian) and click through "Wealth Management in the US" and "Your Relationship With UBS" until you finally reach "The UBS Client

scheme alleged herein, further evidencing their knowing assistance and substantial participation in the scheme. (¶ 33).

In addition, as set forth above, the investigation by the New York State Attorney General (¶ 48) ultimately led to the NY AG Complaint that clearly sets forth just how involved UBS AG was in aiding and abetting the breach of fiduciary duty and their awareness of the breach. As UBS FS's ARS inventory began to rise, UBS's **Global** Head of Municipal Securities "encouraged" financial advisors to sell off UBS's ARS inventory and discussed the problem at the highest levels. *See* JL Decl., Ex. 1, ¶¶ 58, 60, 62, 70.

By December 19, 2007 UBS FS's problems with ARS were "elevated to the **highest levels**" at UBS AG. (*Id.*, at ¶ 74) (emphasis supplied), when "The Group Chief Risk Officer spoke with UBS AG's Governing Executive Board ("GEB") about the auction rate securities market conditions." The Trading Desk Manager responded by pointing out that, "In the event of a failed auction, the securities in question would be rendered illiquid." (*Id.*, at ¶¶ 74-75) (emphasis supplied); *see also*, *id.*, at ¶ 88 (listing issues to be discussed with the GEB, including "exposures," "fail and exit," "each scenario – economics," "risks" and "implications").

As set forth above, UBS AG also knew that they were going to breach their fiduciary duty as evidenced by a January 13, 2008 email from the Global Head of Municipal Securities discussing "breaking the moral obligation to support these markets in an orderly fashion" and different options, including allowing certain ARS to fail. (*Id.*, at ¶ 84).

Finally, on February 12, 2008, one day before allowing its ARS auctions to fail, the GEB held an "Extraordinary Audio Conference" at which the "sense of the meeting [was] in favor of

---

Experience." (*See* JL Decl. Ex. 2). There is also a disclaimer stating that "Products and services in these web pages may not be available for residents of certain nations[,]" further indication that the homepage is part of UBS AG, not limited to UBS FS.

[allowing the ARS auctions to] fail[.]" (*Id.*, at ¶ 92).

Thus, not only did UBS AG know about the increase in UBS FS's ARS inventory that necessitated the sale of its inventory to its own unsuspecting customers, it also encouraged such sales despite knowing that UBS FS would breach its fiduciary duties by failing to support the market for ARS.[25]

## I.    Breach of Contract Claim Is Actionable

Under New York law, to state a claim for breach of contract, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).[26]

Here, the claim is based on a breach of an implied covenant of good faith. (¶¶ 87-91). New York law recognizes as implicit in every contract "a covenant of good faith and fair dealing in the course of contract performance." *Excelsior Fund*, 2007 U.S. Dist. LEXIS 22966, at *17; *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (citing *Dalton v. Educ. Testing Servs.*, 87 N.Y.2d 384, 388-89, 663 N.E.2d 289 (1995)); Restatement (Second) of Contracts § 205 & cmt. d (1981).

---

[25]    The cases cited by Defendants in support of their argument that the complaint fails to sufficiently plead actual knowledge and substantial assistance (Def. Mem. at 19-20), are utterly inapposite. Unlike in the cases cited by UBS, here, as set forth above, UBS AG is not only affiliated, but also actually controls UBS FS. UBS AG also issued statements regarding their expertise under their umbrella and was a major financial beneficiary – to the tune of millions of dollars – from the alleged scheme. (¶¶ 30-31, 33). It is also beyond dispute that UBS AG was directly informed about the problems in the ARS market and the negative impact on both it and UBS FS, encouraged the reduction of ARS inventory by stepping up the pace of sales of ARS to clients, and knew that cessation of support for the auctions would benefit Defendants while at the same time harming Plaintiffs.

[26]    The pleading of a contract claim is subject to Fed. R. Civ. P. 8(a)'s liberal pleading standard. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "A Rule 8 pleading is extremely permissive, such that a plaintiff need not allege all the elements of the claim. *Id.*, at 78 (citing *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 342 (S.D.N.Y. 2003)). Instead, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a).

The implied covenant is not a separate cause of action, but is instead one way of establishing a breach of contract. *Payday*, 478 F. Supp. 2d at 503; *MDC Corp., Inc. v. John H. Harland Co.*, 228 F. Supp. 2d 387, 395 (S.D.N.Y. 2002); *Apfel v. Prudential-Bache Sec., Inc.*, 183 A.D.2d 439, 583 N.Y.S.2d 386, 387 (1st Dep't 1992). The implied covenant incorporates "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69, 385 N.E.2d 566 (1978) (citation and quotation marks omitted).

Courts have denied efforts to dismiss breach of contract claims which were based on the breach of an implied covenant of good faith where it is alleged that though the defendant executed the contract to the "letter of the agreement," it used its discretion in a manner that no reasonable person would believe to be justified. *Payday*, 478 F. Supp. 2d at 504 (breach of implied covenant found where defendant inflated its own profits under the contract by deceptive bidding and market practices); *see also, Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004) (breach of implied covenant of good faith where underwriter under-priced issuer's stock to inflate its own profits under contract).

Here, Defendants' breach of the implied covenant of good faith is alleged as the basis for the breach of contract because no client would ever in good faith believe that it is justified for UBS to promote and sell to their clients ARS in order to themselves derive massive profits only to ultimately refuse to support the auctions that made the clients' investments viable. (¶¶ 39-41).

Defendants argue that Plaintiffs' claim for breach of the implied covenant of good faith must be dismissed because the implied obligations Plaintiffs seek to impose "would be inconsistent with other terms of the contractual relationship." (Def. Mem. at 21).[27] This is not

---

[27]     Defendants rely upon *Dalton v. Educ. Testing Servs.*, 87 N.Y.2d 384, and *Europacific Asset Mgmt. Corp.*, 2005 U.S. Dist. LEXIS 3227. However, unlike here, in neither *Dalton* nor *Europacific*, were there any clear

the case here, where the contracts do not authorize UBS to completely withdraw support for ARS auctions at client expense while still reaping huge profits. *Lerner v. Fleet Bank*, *N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 489 N.E.2d 1294 (1985)); *accord*, *Pension Comm. of Univ. of Montreal*, 446 F. Supp. 2d at 198.

As the Supreme Court recognized in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002), a "plaintiff need only give 'fair notice of the basis' for his [negligence] claims." *Jaufman*, 2007 U.S. Dist. LEXIS 72883, at *39 (applying Fed. R. Civ. P. 8(a) pleading standard to negligence claim). Here, reading the allegations in a light most favorable to Plaintiffs and accepting all allegations as true, it is clear that the Complaint alleges multiple layers of "duties," any one of which is sufficient to state a negligence claim: (1) a fiduciary duty arising from Defendants' express representations which is a factual issue not resolvable on a motion to dismiss;[28] (2) a duty to implement matters entrusted to them – *i.e.*, the ARS auctions – in good faith and with reasonable care and not in a manner whereby UBS acted contrary to its representations in order to achieve millions of dollars in profits by failing to support ARS auctions thereby leaving UBS customers with illiquid securities; *see, e.g., Santoro*, 302 F.3d at 80; *Press*, 988 F. Supp. at 386-87 (S.D.N.Y. 1997);[29] and (3) a duty arising from their obligation under NASD suitability rules to put clients only in suitable investments. (¶¶ 53-57). *See, e.g.*,

---

representations and assurance of a "personal relationship." Moreover, the court in *Dalton* found that the defendant did indeed breach its implied covenant of good faith by not reviewing relevant information even though that was not an express term of the contract. *Dalton.*, 87 N.Y.2d at 392-93.

[28]    *See, e.g., Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 155 (S.D.N.Y. 2000) (question of fact concerning whether plaintiff owed any fiduciary duty to defendant); *Salomon Bros., Inc. v. Huitong*, Civ. No. 94-8559, 1996 U.S. Dist. LEXIS 17358, at *7 (S.D.N.Y. Nov. 21, 1996) (if plaintiff had some relationship to defendant giving rise to independent fiduciary duties, including a duty of care, defendant would be able to state a negligence claim); *Scott v. Dime Sav. Bank*, 886 F. Supp. 1073, 1080 (S.D.N.Y. 1995) (facts giving rise to a fiduciary duty also support a negligence claim).

[29]    "It is clear from the case law that a stockbroker can be held liable to his client for negligence." *Cheng*, 697 F. Supp. at 1227 (D. D.C. 1988); *see also, Fustok v. Conticommodity Servs., Inc.*, 618 F. Supp. 1082, 1085 (S.D.N.Y. 1985) (negligence claim could be asserted by an investor against commodities brokers).

*Scott,* 886 F. Supp. at 1080-1081 (sustaining negligence claim despite fact that "main relationship" was contractual where it is alleged that relationship went well beyond that of creditor and debtor); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng,* 697 F. Supp. 1224, 1227 (D. D.C. 1988) (violation by broker of NASD "suitability rule," a factor that jury could weigh in considering negligence claim).[30]

Defendants argue that Plaintiffs' negligence claim is barred by the economic loss rule and because UBS had no duty to support the auctions. (Def. Mem. at 21-22). However as set forth above, both of these arguments fail. *See,* respectively, Sec. III. G and Sec. III. F, *supra.*[31]

## I.  **CONCLUSION**

For all of the foregoing reasons, Defendants' Motions to Dismiss the Amended Class Action Complaint should be denied in its entirety.[32]

Dated:    New York, New York
          August 13, 2008                          Respectfully submitted,

                                          By: /s/ Joel P. Laitman
                                          Samuel P. Sporn (SS-4444)
                                          Joel P. Laitman (JL-8177)
                                          Christopher Lometti (CL-9124)
                                          Jay P. Saltzman (JS-7335)
                                          Frank R. Schirripa (FS-1960)

---

[30]    Brokers' violations of exchange rules can be remedied by state common law actions for breach of contract and negligence. *See Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 465 F. Supp. 1233, 1236 (S.D.N.Y. 1979). *See also, Bullmore,* 485 F. Supp. 2d at 471 (court sustained fraud and breach of fiduciary duty claims where agreement provided that defendant was to value collateralized mortgage obligations ("CMOs") in good faith and the relationship it created imposed on defendant a duty to act with care and loyalty independent of the terms of the contract).

[31]    The cases upon which Defendants rely for the proposition that Plaintiffs' negligence claim is barred by the economic loss rule are inapposite since there  no affirmative representations by defendants of a special Financial Advisor "relationship" of trust and confidence as here. (¶¶ 29-31, 39-44).

[32]    In the event that the Court dismisses any of the claims in whole or in part, Plaintiffs respectfully request an opportunity to replead since this is the first pleading to be reviewed by the Court in this matter. *See* Fed. R. Civ. P. 15(a) (providing that leave to amend shall be granted freely); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also, Glenoit Mills, Inc. v. Miss Bobbie Originals, Inc.,* Civ. No. 93-5494, 1994 U.S. Dist. LEXIS 6618, at *18 (S.D.N.Y. May 18, 1994) (granting leave to replead where the "instant motion represents the first judicial review of the allegations[.]").

Daniel B. Rehns (DR-5506)
**SCHOENGOLDSPORN LAITMAN**
**& LOMETTI, P.C.**
19 Fulton Street, Suite 406
New York, New York 10038
Telephone: (212) 964-0046

*Attorney for Plaintiffs and Interim Class
Counsel for IAA and State Law Claims*

Of Counsel:

**FINKELSTEIN THOMPSON, LLP**
Burton H. Finkelstein, Esq.
Donald J. Enright, Esq.
Michael G. McLellen, Esq.
Elizabeth K. Tripodi, Esq.
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*Attorneys for Plaintiffs Rita Tubis
and Helena Tubis*

26

## CERTIFICATE OF SERVICE

I, Frank R. Schirripa, Esq., one of the counsel for Plaintiffs in the above-referenced action, do hereby certify that on August 13, 2008, a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint was filed with Court via ECF System and served on all parties via the ECF System.

___ /s/ Frank R. Schirripa_____<br>
Frank R. Schirripa