Keith W. Miller
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000

James D. Wareham
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

William F. Sullivan
Howard M. Privette
John S. Durrant
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Los Angeles, California 90071
(213) 683-6000

Attorneys for Defendants UBS AG and
UBS Financial Services, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AUCTION RATE SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>　　Case No. 08-CV-02753 (LMM) (KNF) | Case No: 08 Civ. 2967 (LMM)<br><br>**ECF Case**<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................................1

II. UBS FS'S AGREEMENT WITH REGULATORS DEFEATS PLAINTIFFS' CLAIMS .........2

III. THE INVESTMENT ADVISORS ACT CLAIM (CLAIM 1) FAILS......................................3

    A. Plaintiffs Concede That Their Agreements With UBS FS Were Ordinary Broker-Dealer Agreements, And Not Investment Advisory Agreements .......................3

    B. Plaintiffs' Allegations Confirm That They Entered Into Ordinary Broker-Dealer Agreements ...................................................................................................................4

IV. THE MARTIN ACT PRECLUDES ALL OF PLAINTIFFS' STATE LAW CLAIMS .............4

V. SLUSA PREEMPTS ALL OF PLAINTIFFS' STATE LAW CLAIMS....................................6

    A. Plaintiffs Concede The Bases for SLUSA Preclusion ......................................................6

    B. Plaintiffs Cannot Avoid SLUSA By Including Plaintiffs Who Did Not Purchase Covered Securities .........................................................................................................6

    C. Plaintiffs Claims Arise From Misrepresentations And/Or Omissions...........................7

VI. ALL OF PLAINTIFFS' STATE LAW CLAIMS (COUNTS 2-7) FAIL..................................8

VII. CONCLUSION................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

Abrams v. Oppenheimer Gov't Sec., Inc.,
   737 F.2d 582 (7th Cir. 1984) .................................................................................................. 7

Berger v. E*Trade Group, Inc.,
   No. 600721/99, 2000 WL 360092 (N.Y. Sup. Ct. Mar. 28, 2000) .......................................... 9

Bissell v. Merrill Lynch & Co.,
   937 F. Supp. 237 (S.D.N.Y. 1996), aff'd, 157 F.3d 138 (2d Cir. 1998) ................................. 9

Caboara v. Babylon Cove Dev., LCC,
   --- N.Y.S. 2d ---, 2008 WL 2747188 (2d Dept. July 15, 2008) ..................................... 1, 5, 6

Castellano v. Young & Rubicam, Inc.,
   257 F.3d 171 (2d Cir. 2001) ..................................................................................................... 5

CPC Int'l Inc. v. McKesson Corp.,
   70 N.Y.2d 268, 514 N.E.2d 116, 519 N.Y.S.2d 804 (1987) .................................................... 5

Dalton v. Educ. Testing Serv.,
   87 N.Y.2d 384 (1995) ............................................................................................................ 10

De Kwiatkowski v. Bear, Stearns & Co.,
   306 F.3d 1293 (2d Cir. 2002), accord De Kwiatkowski v. Bear, Stearns & Co., 306
   F.3d 1293, 1302 (2d Cir. 2002) ................................................................................................ 9

Desia, ex rel. The Barbara Bess Trust v. GE Life And Annuity Assur. Co.,
   No. 3:05-cv-1395 (JCH), 2007 WL 951682 (D. Conn. Mar. 26, 2007) ................................. 9

Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,
   191 F.3d 198 (2d Cir. 1999) ..................................................................................................... 3

Dooner v. Keefe, Bruyette & Woods, Inc.,
   157 F. Supp. 2d 265 (S.D.N.Y. 2001) .................................................................................. 10

Financial Planning Ass'n v. S.E.C.,
   482 F.3d 481 (D.C. Cir. 2007) ................................................................................................ 4

Fisher v. Kanas,
   No. 07-2285-cv, 2008 WL 2645479 (2d Cir. July 7, 2008) ..................................................... 8

Gaidon v. Mut. Litig. Ins. Co. of New York,
   98 N.Y.2d 314 (2002) .............................................................................................................. 9

Global Network Comm'ns, Inc. v. City of New York,
   458 F.3d 150 (2d Cir. 2006) ..................................................................................................... 2

Granite Partners, L.P. v. Bear, Stearns & Co.,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998) ....................................................................................... 5

Gray v. Seaboard Sec., Inc.,
   14 A.D.3d at 852 (2005) ......................................................................................................... 9

Horratas v. Citigroup Fin. Mkt. Inc.,
   532 F. Supp. 2d 891 (W.D. Mich. 2007) ................................................................................. 7

**TABLE OF AUTHORITIES**
**(continued)**

|  | Page |
|---|---|
| In re Catanella, 583 F. Supp. 1388 (E.D. Pa. 1984) | 4 |
| In re Merrill Lynch Tyco Research Sec. Litig., No. 03 CV 4080(MP), 2004 WL 305809 (S.D.N.Y. Feb. 18, 2004) | 2 |
| Jones v. United States, 308 F.2d 307 (D.C. Cir. 1962) | 8 |
| Kimes v. United States, 207 F.2d 60 (2d Cir. 1953) | 8 |
| Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991) | 2 |
| Kutten v. Bank of America, N.A., 530 F.3d 669 (8th Cir. 2008) | 8 |
| Levitin v. PaineWebber, Inc., 159 F.3d 698 (2d Cir. 1998) | 9 |
| Marcus v. Frome, 329 F. Supp. 2d 464 (S.D.N.Y. 2004) | 5 |
| Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006) | 6, 7, 8 |
| Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109 (2d Cir. 1990) | 3 |
| Monroe v. Standard Oil Co., 452 U.S. 549 (1981) | 8 |
| Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 0767(LBS), 2003 WL 22052894 (S.D.N.Y. June 30, 2003) | 5 |
| Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20 (1995) | 9 |
| Potter v. Janus Inv. Fund, 483 F. Supp. 2d 692 (S.D. Ill. 2007) | 8 |
| PPI Enters. (U.S.), Inc. v. Del Monte Foods Co., No. 99 Civ. 3794 (BSJ), 2000 WL 1425093 (S.D.N.Y. Sept. 26, 2000) | 9 |
| Press v. Chem. Inv. Servs. Corp., 166 F.3d 529 (2d Cir. 1999) | 9 |
| Pro Bono Invs., Inc. v. Gerry, No. 03 Civ. 4347 (JGK), 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) | 5 |
| S & K Sales Co. v. Nike, Inc., 816 F.2d 843 (2d Cir. 1987) | 10 |
| S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.), 534 F. Supp. 2d 405 (S.D.N.Y. 2007) | 5 |

## TABLE OF AUTHORITIES
### (continued)

**Page**

S.E.C. v. Nat'l Executive Planners, Ltd.,
   503 F. Supp. 1066 (M.D.N.C. 1980) .................................................................................. 4

S.E.C. v. Rauscher Pierce Refsnes, Inc.,
   17 F. Supp. 2d 985 (D. Ariz. 1998) ..................................................................................... 4

S.E.C. v. Zandford,
   535 U.S. 813 ........................................................................................................................ 8

Schoenfeld v. Ochsenhaut,
   452 N.Y.S.2d 173 (N.Y. Civ. Ct. 1982)............................................................................... 8

Segal v. Fifth Third Bank, N.A.,
   No. 1:07-cv-348, 2008 WL 819290 (S.D. Ohio Mar. 25, 2008) ......................................... 8

Sofonia v. Principal Life Ins. Co.,
   865 F.3d 873 (8th Cir. 2006) ............................................................................................... 7

Stewart v. J.P. Morgan Chase & Co.,
   No. 02 Civ.1936MHD, 2004 WL 1823902 ........................................................................ 9

Transamerica Mortgage Advisors, Inc. v. Lewis,
   444 U.S. 11 (1979)............................................................................................................... 4

U.S. Mortgage Inc. v. Saxton,
   494 F.3d 833 (9th Cir. 2007) ............................................................................................... 7

Wang v. Gordon,
   715 F.2d 1187 (7th Cir. 1983) ............................................................................................. 4

Whitehall Tenant Corp. v. Estate of Olnick,
   623 N.Y.S.2d 585 (1995).................................................................................................... 6

### STATUTES

15 U.S.C. § 80b-2(11)................................................................................................................ 4

New York Gen. Bus. Law § 349................................................................................................ 9

Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227, 15 U.S.C.A.
   § 78a, *et seq.* (1998).............................................................................................. 1, 6, 7, 8

### OTHER AUTHORITIES

SEC, CERTAIN BROKER-DEALERS DEEMED NOT TO BE INVESTMENT ADVISERS, Release
   Nos. 34-51523, IA-2376 70, Fed. Reg. 20,424 (Apr. 19, 2005) .......................................... 4

**I.     INTRODUCTION**

Plaintiffs' Opposition demonstrates not only that the claims advanced in the Complaint cannot survive Defendants' Motion to Dismiss, but also that no amendment could produce actionable claims. Defendants respectfully submit that the Motion should be granted without leave to amend.

Plaintiffs' Investment Advisors Act ("IAA") claim (Count 1) fails because Plaintiffs entered into standard brokerage agreements with UBS FS, paid only for brokerage services (not advisory services), and received only brokerage services. Plaintiffs cannot dispute these facts, and now attempt to rewrite history by arguing that the brokerage agreements they signed were unconscionable. The Complaint contains *no* allegations supporting a claim of unconscionability, and, even if it did, an unconscionable brokerage agreement does not transform into an advisory contract. In addition, Plaintiffs erroneously assert that compensation for auction administration services paid by ARS issuers (and not by putative class members) to a separate UBS investment banking entity (which is not a party to this case) should be considered "special compensation" to UBS FS for investment advisory services. This argument demonstrates the lack of merit of Plaintiffs' position, because for the IAA to apply, the "special consideration" must be paid to the supposed investment adviser specifically for giving investment advice to investors, not to a wholly different entity for a completely different purpose.

The Martin Act preempts all of Plaintiffs' state law claims (Counts 2-7). Plaintiffs ignore the numerous cases cited in the Motion establishing that there is no private right of action for claims involving misrepresentations or omissions in securities transactions but not requiring pleading or proof of scienter. Instead, Plaintiffs claim that a single recent opinion, Caboara v. Babylon Cove Dev., LCC, --- N.Y.S. 2d ---, 2008 WL 2747188 (2d Dept. July 15, 2008), "repudiated" all of these prior decisions. Caboara does nothing of the sort. Caboara addresses claims that are entirely different from those in the instant case, such as claims for intentional fraud, which requires pleading and proof of fraudulent intent, and a breach of contract that did not involve a misrepresentation or omission. No such claims are alleged in this case.

While the IAA and Martin Act alone dispose of the Complaint, the Complaint fails for additional reasons. SLUSA precludes the state law claims (Counts 2-7), because the alleged conduct of Defendants coincided with the sale of "covered securities" under the terms of the Act. Plaintiffs

mistakenly suggest that the applicability of SLUSA depends on whether a particular plaintiff purchased covered securities. This is not the law, which focuses instead on the alleged conduct of the defendant. Because Plaintiffs' claims arise from alleged misrepresentations and omissions, SLUSA therefore precludes all state law claims. The state law claims also suffer individually from numerous additional defects. Accordingly, they must fail as a matter of law.

## II.  UBS FS'S AGREEMENT WITH REGULATORS DEFEATS PLAINTIFFS' CLAIMS

The disruption of the ARS sector is but one symptom of the ongoing liquidity and credit crisis afflicting the global financial system. With the failure of ARS auctions earlier this year, ARS investments lost their liquidity. Since then, UBS FS has been at the forefront of trying to help its customers cope with this issue by developing systemic solutions in conjunction with regulators and government agencies. Recently, the Securities and Exchange Commission ("SEC") and the various state attorneys general (including the New York Attorney General ("NYAG")) announced an agreement with UBS FS to buy back at par the ARS securities held by its customers. (Opp. at 1.)[1]

It is interesting that Plaintiffs mention this agreement, because the agreement will moot this very lawsuit. In the Opposition, Plaintiffs allege that they "have suffered damage from being unable to access their own funds or being forced to sell their ARS at a loss." (Id. at 1.) The SEC has announced that the agreement being formalized will, among other things, (1) allow ARS investors to recover their initial investments; (2) allow investors who believe they have a claim for consequential losses to pursue those claims through an arbitration process administered by the Financial Industry Regulatory Authority; and, (3) permit those ARS holders who previously sold for less than par to recover the difference. Regardless of the timing and effect of this plan, and because the Complaint advances claims that are universally defective, it is appropriate for the Complaint to be dismissed at this time.

---

[1] Plaintiffs improperly imply that this agreement with the government should be considered an admission of wrongdoing – it is not. Plaintiffs also seek to have the Court take judicial notice of the complaint filed by the NYAG, the unproven allegations contained in that document, and a hearsay press clipping. (Opp. at 4; Laitman Decl., Exs. 1 (NYAG Complaint), 3 (*Wall Street Journal* Article).) These requests are plainly inappropriate. See, e.g., Global Network Comm'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (a court may only take judicial notice of the fact that a document was filed with another court; the court may not take judicial notice of the contents of court filings); Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (same); In re Merrill Lynch Tyco Research Sec. Litig., 2004 WL 305809, at *4 n.3 (S.D.N.Y. Feb. 18, 2004) ("While news articles may be judicially noticed for the fact of their publication, they may not be judicially noticed for the truth of the matter asserted – that is, as 'adjudicative facts.'"). Consideration of these materials would be improper in the context of this Motion and they should be disregarded.

### III. THE INVESTMENT ADVISORS ACT CLAIM (CLAIM 1) FAILS

#### A. Plaintiffs Concede That Their Agreements With UBS FS Were Ordinary Broker-Dealer Agreements, And Not Investment Advisory Agreements.

The IAA does not govern an ordinary brokerage relationship between a broker-dealer and a customer. (MTD at 5-6.) Here, Plaintiffs signed account agreements that plainly set forth the duties of UBS FS as a broker-dealer, not an investment adviser. (See, e.g., Sullivan Decl., Ex. A at 26; Ex. B at 15; Ex. C at 18; Ex. E at 26.) Plaintiffs readily concede that these "*brokerage agreements* contained provisions that state as brokerage accounts UBS [FS] will act only as a 'broker-dealer' and thus UBS [FS] cannot be liable as an Investment Adviser." (Opp. at 8 (emphasis added).)

Faced with these fatal facts, Plaintiffs claim for the first time in their Opposition that the terms of their brokerage agreements are "unconscionable because they clearly favor UBS [FS] by providing clients with absolutely no remedies (other than arbitration) for UBS's [allegedly] false statements regarding the actual nature of the ARS investments." (Opp. at 8-9.) Nevertheless, Plaintiffs plead no facts from which the Court could conclude that *any* class member lacked a meaningful choice regarding his or her assent to the brokerage agreement, let alone that *every single* class member lacked a meaningful choice. Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) (a contract can be found unconscionable only if there is an absence of meaningful choice). Moreover, brokerage agreements such as these are routinely enforced by the courts. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 113-14 (2d Cir. 1990).

While Plaintiffs claim that the brokerage agreement left them with "no remedies," the agreements contain an arbitration clause which specifies the forum for resolving disputes (which ultimately is the proper venue for the claims in this case). (See, e.g., Sullivan Decl., Ex. B at 5.) Additionally, the broker-dealer agreements are not unconscionable simply because UBS FS generically labeled all of its brokers "Financial Advisors." (Opp. at 8.) Classification as an "investment adviser" under the IAA depends on the scope of contractual duties, and not on a generic label for the brokers who executed those contractual duties. See 15 U.S.C. § 80b-2(11); S.E.C. v. Nat'l Executive Planners, Ltd., 503 F. Supp. 1066, 1074 (M.D.N.C. 1980). Indeed, courts and the SEC consistently recognize that brokers are not made "investment advisers" under the IAA simply because they call themselves

"financial advisors."  See, e.g., Nat'l Executive Planners, Ltd., 503 F. Supp. at 1074; SEC, CERTAIN BROKER-DEALERS DEEMED NOT TO BE INVESTMENT ADVISERS, RELEASE NOS. 34-51523, IA-2376, at 59, 70 Fed. Reg. 20,424 (Apr. 19, 2005) ("The terms 'financial advisor' and 'financial consultant,' for example, are descriptive of such services provided by broker-dealers.").[2]

### B. Plaintiffs' Allegations Confirm That They Entered Into Ordinary Broker-Dealer Agreements.

The IAA classifies ordinary brokers (*i.e.*, not investment advisers) as those who do not receive "special compensation" for *advisory services* provided to clients.  See 15 U.S.C. § 80b-2(11); Fin. Planning Ass'n v. S.E.C., 482 F.3d 481, 490 n.7 (D.C. Cir. 2007); In re Catanella, 583 F. Supp. 1388, 1419 (E.D. Pa. 1984).  Here, Plaintiffs argue that fees "UBS" obtained from ARS issuers for managing ARS auctions is "special compensation" under the IAA.  (Compl. ¶ 60; Opp. at 7-8.)  Plaintiffs' unsupported claim defies logic.  Plaintiffs' allegation has absolutely nothing to do with compensation paid to UBS FS by Plaintiffs for providing Plaintiffs with investment advice.  (See id.)  Indeed, Plaintiffs offer no allegations that UBS FS provided Plaintiffs such advice with respect to their investment in ARS.  See Nat'l Exec. Planners, Ltd., 503 F. Supp. at 1074.  To the contrary, Plaintiffs allege that they were wronged because UBS FS *failed* to provide them with investment advice regarding ARS.  (See Compl. ¶ 3.)  In short, Plaintiffs' allegations demonstrate that UBS FS did not act as Plaintiffs' investment adviser.[3]

### IV. THE MARTIN ACT PRECLUDES ALL OF PLAINTIFFS' STATE LAW CLAIMS

Court after court has held that:  (1) the Martin Act provides the New York Attorney General with *sole* authority to bring claims based on misrepresentation in connection with the purchase or sale of securities that do not require pleading and proof of fraudulent intent; and, consequently, (2) there is

---

[2] It is immaterial that Defendants might be registered as, and act as, investment advisers for other customers who sign investment advisory agreements.  The issue is whether these Plaintiffs contracted and/or paid for advisory services.  See, e.g., S.E.C. v. Rauscher Pierce Refsnes, Inc., 17 F. Supp. 2d 985, 1002 (D. Ariz. 1998) ("registration as an investment adviser under the Act does not alone bring all of a broker-dealer's actions within the scope of the Act."); Wang v. Gordon, 715 F.2d 1187, 1192 (7th Cir. 1983).  Since they did not, the IAA claim fails.

[3] Plaintiffs also argue that the IAA allows for the "disgorgement of monies realized by UBS" and the voiding of their ARS transactions.  (Opp. at 9.)  The Supreme Court has clearly held, however, that there only "exists a limited private remedy under the [IAA] to void an investment advisers contract, but . . . the Act confers *no other private causes of action, legal or equitable*."  Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 24 (1979) (emphasis added).  Thus, the IAA allows for neither the disgorgement of monies realized by UBS FS nor the voiding of Plaintiffs' ARS transactions.

no private right of action for such claims.[4]

Plaintiffs decline to distinguish any of this authority. Plaintiffs' entire argument is based on Caboara, 2008 WL 2747188. (Opp at 10 n.10.) Unfortunately for Plaintiffs, Caboara once again *affirms* that the Martin Act preempts causes of action that involve alleged misrepresentations or omissions in connection with the sale of securities, but that do not require proof of scienter. 2008 WL 2747188, at *2-3 (finding that the Martin Act does not preempt common law fraud and breach of contract claims.) The Martin Act does not preempt common law fraud, of course, because common law fraud necessarily requires proof of scienter. The Martin Act also does not preempt a breach of contract under circumstances like those in Caboara, which involved a simple breach concerning the permitted use of property and did not involve misrepresentations or omissions. Id. In other words, Caboara is entirely consistent with the long line of cases cited by Defendants.

In this case, *Plaintiffs bring no claim for either common law fraud or breach of contract* like that in Caboara. Rather, count after count in the Complaint alleges misrepresentations and omissions regarding securities in the context of causes of action that do not require the pleading or proof of scienter.[5] (MTD at 13-16 (showing that claims give rise to misrepresentations and omissions, even when Plaintiffs claim otherwise).) Accordingly, Plaintiffs' reliance on Caboara is unavailing.

Without their mischaracterization of Caboara, Plaintiffs' arguments fall flat. They fail to address the point made in the moving papers that their state law claims arise from misrepresentations and omissions (see MTD at 13-16), and do not dispute that none of their state law claims require proof

---

[4] (See MTD at 12-13 (citing Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190-91 (2d Cir. 2001); Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 291 (S.D.N.Y. 1998); S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.), 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007); Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC, 2003 WL 22052894, at *3; Pro Bono Invs., Inc. v. Gerry, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005); Marcus v. Frome, 329 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2004); CPC Int'l Inc. v. McKesson Corp., 70 N.Y.2d 268, 275-77, 514 N.E.2d 116, 118-19, 519 N.Y.S.2d 804, 806-07 (1987).)

[5] The breach of the covenant claim, which Plaintiffs attempt to rename as "breach of contract" in their Opposition (Opp. at 22), also depends on claims of misrepresentations and omissions. Courts consistently hold that calling a claim a "breach of contract" does not make the claim a breach of contract. See e.g., Whitehall Tenant Corp. v. Estate of Olnick, 623 N.Y.S.2d 585 (1995) ("private plaintiffs will not be permitted through artful pleading to press any claim based on the sort of wrong given over to the Attorney General under the Martin Act"). Accordingly, Plaintiffs' cannot circumvent the Martin Act by re-labeling their claim in the Opposition. In any event, whether the claim is called a breach of contract or a breach of the covenant, Plaintiffs cannot allege that any contract states that the Defendants must support ARS auctions. Indeed, there is no contract that even discusses such participation, let alone requires it. As discussed below, Plaintiffs' theory that there was a requirement to support the auctions derives from allegations of misrepresentations or omissions regarding such support.

of scienter. (See Opp. at 9-10.) Accordingly, the Martin Act precludes all of Plaintiffs' purported state law claims in this case.

## V. SLUSA PREEMPTS ALL OF PLAINTIFFS' STATE LAW CLAIMS

### A. Plaintiffs Concede The Bases for SLUSA Preclusion.

Plaintiffs do not dispute that: (1) this Complaint is a "covered class action;" (2) Counts 2-7 of the Complaint are based on state law; and, (3) at least some named plaintiffs purchased ARS, which qualify as "covered securities" under SLUSA. (Opp. at 11; see also Comp. ¶¶ 12, 18-19.) Plaintiffs argue, however, that because some of the named Plaintiffs did not purchase securities that are "covered securities" under SLUSA, the claims of those other Plaintiffs avoid SLUSA preclusion. (Opp. at 11; Comp. ¶¶ 14-16.) This is not the law.

### B. Plaintiffs Cannot Avoid SLUSA By Including Plaintiffs Who Did Not Purchase Covered Securities.

The decisive point on this issue concerns whether the allegedly wrongful conduct which underlies the Complaint involves a misrepresentation or omission occurring *in connection with* the purchase or sale of a covered security. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 85-86 (2006). In Dabit, for instance, the Supreme Court took an expansive view of this requirement and held that "*[i]t did not matter that the plaintiffs themselves did not purchase or sell a covered security*; rather 'it [was] enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or someone else.'" U.S. Mortgage, Inc. v. Saxton, 494 F.3d 833, 844-45 (9th Cir. 2007) (emphasis added) (holding that claims arising from loans that were not covered securities were precluded by SLUSA, because actionable statements by the borrower were also made "in connection with" defendants' "covered securities"); Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 879 (8th Cir. 2006) (holding that SLUSA precluded claims brought by purchasers and non-purchasers of covered securities, and noting that "it is not the identity of the plaintiffs, but the alleged conduct of defendants that determines whether the complaint alleges fraud in connection with the purchase or sale of securities. Accordingly, *[plaintiff] cannot avoid SLUSA's application by including some nonpurchasers or nonsellers of covered securities*." (quotations omitted and emphasis added).); see also Abrams v. Oppenheimer Gov't Sec., Inc., 737 F.2d 582, 593 (7th Cir. 1984); Horratas v. Citigroup

-6-
REPLY IN SUPPORT OF MOTION TO DISMISS

Fin. Mkt. Inc., 532 F. Supp. 2d 891, 902-03 (W.D. Mich. 2007).

In this case, Plaintiffs bring a purported class action complaint, alleging that Defendants engaged in "a systematic advisory campaign" to induce Plaintiffs' investment in ARS. (Compl. ¶¶ 3, 34.) All of Plaintiffs' supposed claims arise from alleged statements and/or policies that pertain generally to *all* ARS sold through UBS FS, both "covered" and "non-covered." Thus, whether a particular plaintiff chose to invest in an ARS that is a covered security or an ARS that is not a covered security, Plaintiffs' claims arise from alleged misstatements and omissions by Defendants that "coincided" with the sale of covered ARS securities. See Dabit, 547 U.S. at 85; U.S. Mortgage, 494 F.3d at 844-45. To illustrate the point, the alleged misrepresentations or omissions regarding the liquidity of ARS that underlie the claims of Plaintiffs Mittman, Kokke, and Elliot also are alleged to "coincide" with the sale of covered securities to Plaintiffs Kassover, H. Tubis, R. Tubis, and others. (Comp. ¶¶ 12, 18-19.) All of Plaintiffs' claims under New York law (Counts 2-7 of the Complaint), therefore, come within the purview of SLUSA, and must be dismissed. See Dabit, 547 U.S. at 88-89.[6]

### C. Plaintiffs Claims Arise From Misrepresentations And/Or Omissions.

Plaintiffs contend that Counts 4-6 do not arise from alleged misrepresentations or omissions. (Opp. at 12-13.) In doing so, Plaintiffs simply ignore the litany of allegations contained in the Complaint and cited in the Motion to Dismiss that explicitly involve supposed misrepresentations and omissions. (MTD at 15-16 (citing Compl. ¶¶ 3, 34, 35, 55); see also MTD at 13-14.) Plaintiffs try to argue that these claims arise instead from a "duty" to support ARS auctions. (Opp. at 12-13.) This argument is unavailing. SLUSA covers claims for breach of fiduciary duty and breach of the covenant of fair dealing. Courts resolutely reject attempts to avoid SLUSA by dressing up claims involving misrepresentations and omissions as supposed breaches of duty. See Dabit, 547 U.S. at 88-89; Kutten v. Bank of America, N.A., 530 F.3d 669, 670-71 (8th Cir. 2008) (for the purposes of SLUSA pre-emption, a plaintiff cannot cloak a misrepresentation or omission as breach of fiduciary duty); Potter v. Janus Inv. Fund, 483 F. Supp. 2d 692, 702 (S.D. Ill. 2007) ("The fact that Plaintiffs have

---

[6] The proposed use of subclasses is unavailing because SLUSA precludes the claims. As in U.S. Mortgage and Sofonia, SLUSA precludes claims against plaintiffs who did not purchase covered securities, because the alleged wrongful conduct *coincided* with covered securities.

chosen to disguise what amount to claims of securities fraud as claims for negligence and breach of fiduciary duty under state law is not enough to evade preclusion of those claims under SLUSA."); Segal v. Fifth Third Bank, N.A., 2008 WL 819290, at * 5 (S.D. Ohio Mar. 25, 2008) (same).[7] In any event, as set forth in the Motion, Plaintiffs cannot establish that Defendants had any duty to support ARS auctions perpetually.  (See, e.g., MTD at 13, n.12; Exs. A-H to MTD.)[8]

## VI. ALL OF PLAINTIFFS' STATE LAW CLAIMS (COUNTS 2-7) FAIL

Although Plaintiffs state law claims (Counts 2-7) fail because SLUSA precludes and the Martin Act preempts each Count, the state law claims also suffer from further deficiencies, as set forth in the moving papers.  Plaintiffs fail to rehabilitate their state law claims, as set forth below:

- **Section 349 of New York Gen. Bus. Law (Count 2)**:  Securities cases are "outside the scope" of Section 349.  (MTD at 16-17 (citing Berger v. E*Trade Group, Inc., 2000 WL 360092, at *4 (N.Y. Sup. Ct. Mar. 28, 2000); Gray v. Seaboard Sec., Inc., 14 A.D.3d 852, 853, 788 N.Y.S.2d 471 (N.Y. App. Div. 2005).)  Plaintiffs ignore this point and cite only cases that do not involve securities.  (Opp. at 14 (citing Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 23-24 (1995) (conduct by commercial bank in opening savings accounts); Gaidon v. Mut. Litig. Ins. Co. of New York, 98 N.Y.2d 314, 323-24 (2002) (life insurance policies)).)

- **Negligent Misrepresentation (Count 3)**:  Negligent misrepresentation cannot be based on allegations of economic harm rather than physical damage to person or property.  (MTD at 17-18.)

---

[7] Plaintiffs also argue that, because the breach of duty allegations arise "long after the purchase of the securities at issue," they are not claims made in connection with the purchase or sale of a covered security under SLUSA.  Even if the claims arose solely from holding ARS (and not from buying or selling ARS), the Supreme Court holds that such claims are precluded by SLUSA.  See Dabit, 547 U.S. at 88-89 ("holders" of securities fell within the definition of "in connection with the purchase or sale" for the purpose of SLUSA pre-emption; precluding breach of fiduciary duty and breach of the covenant of fair dealing claims); see also Fisher v. Kanas, 2008 WL 2645479, at *2 (2d Cir. July 7, 2008) (same).

[8] Rather than point to a statute, or case, or contract establishing an obligation to support auctions, Plaintiffs point to an out-of-context statement allegedly made by David Shulman ("Shulman"), who worked for UBS Securities LLC (not a defendant in this case), regarding a "moral obligation" to support auctions.  (Opp. at 12-13.)  The alleged statement is not actionable, and it appears nowhere in the Complaint.  In addition, courts reject Plaintiffs' claim that "fiduciary duty allegations [can] arise from 'moral obligations.'"  (Id. at 12.)  See Monroe v. Standard Oil Co., 452 U.S. 549, 562 (1981) (a person or entity's "moral obligation" does not impose or otherwise create an actionable legal duty); Jones v. United States, 308 F.2d 307, 310 (D.C. Cir. 1962) (same); Kimes v. United States, 207 F.2d 60, 63 (2d Cir. 1953) (same); Schoenfeld v. Ochsenhaut, 452 N.Y.S.2d 173, 175 (N.Y. Civ. Ct. 1982).

Plaintiffs merely argue that that none of Defendants' authorities involved claims against people who called themselves "financial advisors." (Opp. at 19 n.23). This is not a meaningful distinction.

- **Breach of Fiduciary Duty (Count 4)**: Numerous cases hold that the non-existence of a fiduciary duty results in dismissal at the pleading stage. See e.g., Levitin v. PaineWebber, Inc., 159 F.3d 698, 707 (2d Cir. 1998); Bissell v. Merrill Lynch & Co., Inc., 937 F. Supp. 237, 247 (S.D.N.Y. 1996), aff'd, 157 F.3d 138 (2d Cir. 1998).[9] Furthermore, brokers do not owe broad fiduciary duties to their clients as Plaintiffs urge. "In the absence of discretionary trading authority delegated by the customer to the broker . . . a broker does not owe a general fiduciary duty to his client." Bissell, 937 F. Supp. at 246, aff'd, 157 F.3d 138 (2d Cir. 1998); De Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1302 (2d Cir. 2002). Broker's fiduciary duties are limited to the "narrow task of consummating the transaction requested." Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 536 (2d Cir. 1999); Stewart v. J.P. Morgan Chase & Co., 2004 WL 1823902, at *12 (S.D.N.Y. Aug. 16, 2004)

- **Aiding and Abetting Breach of Fiduciary Duty (Count 5)**: Plaintiffs fail to identify any factual allegations supporting an aiding and abetting claim – their only claim against UBS AG. Not only do brokers not owe fiduciary duties to Plaintiffs, their aiding and abetting claim fails because the Complaint lacks particularized allegations that UBS AG (i) had actual knowledge of the purported underlying breach, and (ii) substantially assisted the breach. See, e.g., S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 848 (2d Cir. 1987). Plaintiffs go outside the Complaint and misrepresent the contents of a UBS FS website, which does not include any promise to support ARS auctions, and cite out-of-context statements alleged in the NYAG's complaint. (Laitman Decl., Exs. 1-2.) Even in the Complaint these statements would not constitute sufficient particularized pleading of substantial assistance in the breach of fiduciary duty.

---

[9] The cases cited by Plaintiffs each involve situations, unlike this case, where the lack of a fiduciary duty is not apparent from the Complaint. See e.g., Desia, ex rel. The Barbara Bess Trust v. GE Life And Annuity Assur. Co., 2007 WL 951682, *6-7 (D. Conn. Mar. 26, 2007) (holding that it was a question of fact as to whether a contractual relationship continued to exist, and not whether a fiduciary duty was established).

- **Breach of Covenant (Count 6)**: There is no written or oral contract establishing UBS FS's obligation to guarantee the liquidity and value of ARS – indeed the contractual language is to the contrary and specifically contemplates auction failures, which would never happen if Defendants were obligated to support ARS auctions. (Sullivan Decl., Exs. A-H, O at 36.); Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995). In opposition, Plaintiffs side-step the issue, citing only uncontroversial, general authority concerning breach of the covenant. (Opp. at 23-24.)

- **Negligence (Count 7)**: The economic loss rule bars Plaintiffs' negligence claim. See Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 285 (S.D.N.Y. 2001) (dismissing negligence claim where plaintiff alleged only lost profits). The claim also fails because UBS FS had no duty to support the auctions. Plaintiffs again try to create liability from NASD suitability requirements, an argument rejected in authority cited by Defendants (see Opp. at 22 n.17) but – once again – ignored by Plaintiffs.

## VII.   CONCLUSION

For these reasons, and as set forth in the moving papers, the Complaint should be dismissed with prejudice.

Dated: Los Angeles, California          PAUL, HASTINGS, JANOFSKY & WALKER LLP
       August 25, 2008

                                        By:              /s/
                                             WILLIAM F. SULLIVAN

## CERTIFICATE OF SERVICE

  I, William F. Sullivan, do hereby certify that on August 25, 2008, a true and correct copy of the foregoing Reply In Support of Defendants' Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

/s/
WILLIAM F. SULLIVAN
