UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
                             :
RONALD D. KASSOVER, *et al.* on   :
behalf of themselves and all    :
others similarly situated,     :
                             :
            Plaintiffs,   :
                             :   08 CV 02753 (LMM)
   -against-             :   <u>MEMORANDUM AND ORDER</u>
                             :
UBS AG and UBS FINANCIAL SERVICES, :
INC.,                         :
                             :
            Defendants.  :
                             :
- - - - - - - - - - - - - - - - - -X

McKENNA, D.J.

    Plaintiffs Ronald D. Kassover, Chris Jones, Stephen M.
Mittman, Ronald E. Klokke, Jan Schneider, Marjorie Elliott,
Mark Theissman, Rita Tubis and Helena Tubis (collectively
"Plaintiffs") on behalf of themselves and others similarly
situated brought the present action against UBS Financial
Services, Inc. ("UBS FS") and UBS AG (collectively
"Defendants" or "UBS") for federal securities law and state
statutory and common law violations stemming from
Defendants' conduct in the marketing and sale of auction
rate securities ("ARS") and in their failure to continue to
provide liquidity in the ARS market.  Plaintiffs assert
claims against UBS FS for violations of the Investment
Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.,* and the

New York General Business Law § 349 and common law claims for negligent misrepresentation, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and negligence.  Plaintiffs assert claims against UBS AG for aiding and abetting UBS FS' alleged breach of fiduciary duty.

Defendants here move to dismiss all Plaintiffs' claims pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity.

## I.    FACTUAL BACKGROUND

The following recitation of facts reflects Plaintiffs' allegations, as pleaded in the Amended Class Action Complaint.  The allegations are taken as true for purposes of this motion, but do not constitute this Court's factual determinations.

ARS are long-term debt securities that offered investors the liquidity of short-term investments through regularly scheduled auctions where ARS could be sold, if demand for the securities was sufficient.  (Complaint ¶¶ 2, 3.)  ARS were considered conservative investments – usually preferred stock or bonds issued by municipalities, public

funds or otherwise creditworthy institutions.  (Complaint ¶ 32.)  The liquidity of these investments proved to be illusory because a successful auction, one where investors could sell their ARS, depended upon sufficient demand in the ARS market.  (Complaint ¶ 2.)  Though not disclosed to Plaintiffs, successful auctions were entirely dependent upon certain financial institutions' support of the ARS market, including that of UBS FS. (Id.)  UBS was one of the largest underwriters of ARS and garnered significant fees for managing the auctions for ARS that they sold. (Complaint ¶ 33.)

UBS FS financial advisors[1] engaged in a campaign designed to induce Plaintiffs to purchase ARS for which UBS was a primary auction participant by falsely marketing them as higher-yield cash equivalents.  (Complaint ¶¶ 3, 34, 55.)  Plaintiffs' financial advisors failed to inform them about potential illiquidity that would result from failed auctions and encouraged Plaintiffs to invest without advising them to review prospectuses or registration statements filed with the SEC.  (Complaint ¶¶ 3, 34.)  UBS FS financial advisors also did not inform Plaintiffs of the

---

[1] For consistency, this court refers to UBS FS' brokers as "financial advisers," as do the parties.  The terminology does not indicate any legal determination.

substantial revenue UBS garnered from auction-related fees or the resulting conflict of interest.  (Id.)

Beginning in February of 2008, UBS FS determined that it was no longer in its financial interest to continue to support ARS auctions and ceased its participation. (Complaint ¶ 5.)  As a result, an increasing number of ARS auctions failed, which prevented clients from liquidating their ARS holdings.  (Complaint ¶¶ 5, 40, 41.)  The ARS market collapsed, and Plaintiffs' only option was to sell their ARS in the secondary market at substantial discounts. (Complaint ¶ 41.)

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor."  In re Parmalat Sec. Litig., 501 F.Supp.2d 560, 560 (S.D.N.Y. 2007).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI

4

Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d
Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct.
1955, 1965 (2007)).

Plaintiffs claims are also subject to the heightened
pleading standard of Rule 9(b).  "By its terms, Rule 9(b)
applies to 'all averments of fraud.'"  Rombach v. Chang,
355 F.3d 164, 171 (2d Cir. 2004) (quoting Fed. R. Civ. P.
9(b)).  The alleged conduct, and not the terms in which a
plaintiff's allegations are denominated, governs whether
Rule 9(b) applies.  See id.  Because the conduct complained
of in this action is based on alleged deceptive and
fraudulent practices, Rule 9(b) applies.  See id.  Under
Federal Rule of Civil Procedure 9(b), allegations of fraud
must be stated with particularity.  Fed. R. Civ. P. 9(b).

Generally, "the court is not permitted to consider
factual matters submitted outside of the complaint unless
the parties are given notice that the motion to dismiss is
being converted to a motion for summary judgment under Rule
56 and are afforded an opportunity to submit additional
affidavits."  Campo v. 1st Nationwide Bank, 857 F.Supp. 264,
269 (E.D.N.Y. 1994).  However, "[i]n certain circumstances,
the court may permissibly consider documents other than the
complaint in ruling on a motion under Rule 12(b)(6).
Documents that are attached to the complaint or

incorporated in it by reference are deemed part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d. 770 (1999)).  See also ATSI Commc'ns, 493 F.3d at 98 (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (In evaluating a 12(b)(6) motion, a court "may  consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.")).


**B.  Advisers Act Claim**

Plaintiffs allege that UBS FS violated § 80b-6(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-1 *et seq.,* which provides:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly . . . to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

15 U.S.C. § 80b-6(2).  Plaintiffs' Advisers Act claim is based on three allegations.  First, Plaintiffs allege that UBS FS breached duties owed Plaintiffs by misrepresenting that ARS was a cash equivalent.  (Complaint ¶ 62.)  Second, they allege that UBS FS failed to disclose "conflicts of interest inherent in the ARS investment and that the liquidity of the ARS investment depended upon UBS Financial acting for the benefit of their clients as opposed to those of UBS Financial itself."  (Id.)  Finally, Plaintiffs allege that UBS FS "failed to continue to support Plaintiffs' ARS by failing to appear, provide bids and otherwise participate in regularly scheduled ARS auctions wiping out the liquidity of Plaintiffs' ARS holdings." (Id.)  Plaintiffs seek "a declaratory judgment that the ARS transactions with Plaintiffs and the Class are void" – in effect that Plaintiffs be refunded all monies they invested in ARS – and "disgorgement of monies realized by UBS as a result of the ARS transactions."  (Complaint ¶ 64.  See also Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem.") p. 9.)

Defendant moves to dismiss Plaintiffs' Advisers Act claim on the basis that UBS FS, acting as a broker and without engaging in an investment advisory contract with Plaintiffs, is not covered by the Advisers Act.

(Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Class Action Complaint p. 5.)  Defendants also argue that Plaintiffs seek remedies unavailable under the Advisers Act.[2]  (Id.)  Defendants are correct on both counts.

First, Plaintiffs have not pled facts sufficient to suggest UBS FS acted as an "investment adviser," such that the Advisers Act would apply.  Section 202(a)(11) of the Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities."  15 U.S.C. § 80b-2(a)(11).  Courts have required plaintiffs to allege that the parties entered into an investment advisory contract in order for the Advisers Act to apply.  See e.g., Bogart v. Shearson Lehman

---

[2] In the context of defending against a charge that the brokerage agreement is unconscionable, Defendants argue that "[w]hile Plaintiffs claim that the brokerage agreement left them with 'no remedies,' the agreements contain an arbitration clause which specifies the forum for resolving disputes (which ultimately is the proper venue for the claims in this case)."  This court does not reach the question of whether the agreement is unconscionable; nor does it reach the issue of whether arbitration is the proper forum for the parties' dispute.  At this time, it appears that neither party is attempting to compel arbitration; therefore, the court reserves consideration of the issue.

<u>Bros., Inc.</u>, 1993 WL 33643, at *3 (S.D.N.Y. 1993)
(dismissing Advisers Act claim that alleged the parties had
entered into a brokerage agreement, and not an investment
advisory contract); <u>Norman v. Salomon Smith Barney, Inc.</u>,
350 F. Supp. 2d 382, 388 (S.D.N.Y. 2004) ("the remedies
under the IAA are only available where an investor brings
suit on the investment adviser's allegedly improper conduct
(or vice versa) pursuant to a contract for services").

    In this instance, Plaintiffs allege that UBS FS
"entered into contracts with Plaintiffs and other members
of the Class to provide financial advice." (Complaint ¶
59.) Plaintiffs go on to allege that UBS FS advised them
"either directly or through publications or writings, as to
the value of 'securities' or as to the advisability of
investing in, purchasing or selling 'securities'. . . ."
(<u>Id.</u>) But the contracts Plaintiffs entered into and the
only ones referred to in the Amended Complaint (and
therefore properly considered in a motion to dismiss) are
"brokerage" agreements. (See e.g., Complaint ¶ 13; Pl.'s
Mem. p. 8.) These applications for "Resource Management"
accounts are denoted in the agreements as non-discretionary
"brokerage" accounts "except when executed in connection
with opening an advisory account." (Ex. B, Sullivan Decl.
1.) So, Plaintiffs have not pointed to any facts

supporting their allegation that they entered into contracts for UBS FS to provide them with investment advice.

That Plaintiffs allege that UBS FS' financial advisers recommended Plaintiffs invest in ARS is insufficient to infer an investment advisory agreement in the context of a non-discretionary brokerage account.  See Bogart, 1993 WL 33643, at *3 (holding that plaintiff's allegations, *inter alia*, that he opened an options trading account with his broker and that the broker advised him on the suitability of various trades was insufficient to infer an investment advisory agreement).  "Plaintiffs must establish by more than conclusory allegations that defendant was an investment adviser."  Hall v. Paine, Webber, Jackson & Curtis, Inc., 1984 WL 812, *2 (S.D.N.Y. 1984).  Therefore, Plaintiffs have failed to sufficiently plead that UBS FS acted as an investment adviser in recommending ARS.

Even if Plaintiffs had sufficiently pled that UBS FS entered into an investment advisory agreement that brought them within the Advisers Act's definition of an "investment adviser," Plaintiffs fail to adequately plead that UBS FS does not fall within the broker-dealer exemption from this definition.  Absent certain circumstances, Congress specifically exempted broker-dealers from the Advisers Act

definition of "investment advisers."  See 15 U.S.C. § 80b-2(a)(11)(C).  Section 202(a)(11)(C) of the Advisers Act exempts from the Act's coverage "any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefore."  So, unless Plaintiffs allege that some special compensation was paid to UBS FS' financial advisors for the provision of investment advice and that any such advice was not solely incidental to the maintenance of Plaintiffs' brokerage accounts, UBS FS would still not come within the Advisers Act.  See Hall, 1984 WL 812, at *2.

As to whether the investment advice UBS FS provided to Plaintiffs was "solely incidental" to the maintenance of their brokerage accounts, Plaintiffs allege only that "the provision of an auction market by UBS and the fees obtained as a result thereof are not incidental to the conduct of their usual brokerage business."  (Complaint ¶ 60.)  This allegation reflects Plaintiffs' misunderstanding of the proper inquiry as to the broker-dealer exemption. Consistent with the plain language of the exemption and with the statute's purpose of regulating only those who are "paid for advising others about securities," Abrahamson v. Fleschner, 568 F.2d 862, 873 (2d Cir. 1977), Plaintiffs

11

must allege that *investment advice* they received from UBS FS' financial advisors was not solely incidental to the maintenance of Plaintiffs' brokerage accounts. See 15 U.S.C. § 80b-2(a)(11)(C); Hall, 1984 WL 812, at *2 (dismissing complaint where plaintiff "made no allegation that . . . any advice she received was not incidental to the management of her securities brokerage account with Paine Webber").  Instead, Plaintiffs allege that maintenance of the ARS auction market and resulting fees were not incidental to UBS FS' brokerage business.  (Pl.'s Mem. p. 7; Complaint ¶ 60.)  This allegation does not implicate the exemption and is therefore insufficient to rebut Defendant's argument that, even if UBS FS acted as an "investment adviser," it could still avail itself of the broker-dealer exemption.

In addition, to be exempt from the Advisers Act, UBS FS must not have received any "special compensation" for the provision of investment advisory services. See 15 U.S.C. § 80b-2(a)(11)(C); Bogart, 1993 WL 33643, at *3. Plaintiffs' pleadings are insufficient to suggest that UBS FS received any special compensation for rendering investment advisory services to Plaintiffs.  In their Amended Complaint, Plaintiffs recite only that "the provision of an auction market by UBS and the fees obtained

as a result thereof are not incidental to the conduct of
their usual brokerage business and *Defendant UBS Financial
receives special compensation therefore*."  (Complaint ¶
60.) (emphasis added).  Plaintiffs reiterate this in
defending against the motion to dismiss by arguing that
"the Complaint alleges UBS did not merely obtain brokerage
commissions from the ARS purchases, but also substantial
annual compensation based on a percentage of the total ARS
issue – 'special compensation' UBS continued to collect
despite its misconduct and completion of the ARS sales to
Plaintiffs.  (Pl.'s Mem. p. 7.)

    While Plaintiffs correctly note that they need not
have paid UBS FS the "special compensation", the "special
compensation" must have been paid to UBS FS for providing
investment advisory services to Plaintiffs.  See Bogart,
1984 WL 812, at *2.  That UBS FS received monies for
maintaining the ARS auctions and for underwriting ARS
issues is inapposite.  See id.  Plaintiffs fail to allege
that any special compensation was paid to UBS for
investment advice they received, thereby failing to counter
Defendants' argument that UBS FS is exempted from the Act's
coverage under the broker-dealer exemption.

    In sum, as Plaintiffs (1) fail to allege that an
investment advisory contract existed between themselves and

UBS FS, (2) fail to allege that UBS FS was paid any special compensation for providing Plaintiffs with investment advice, and (3) fail to allege that the investment advice provided to Plaintiffs was not solely incidental to the maintenance of their brokerage accounts, Plaintiffs have not adequately pled that UBS FS acted as an "investment adviser" whose actions would be governed by the Advisers Act.

It should also be noted that Plaintiffs seek remedies that are not provided for under the Act.  Plaintiffs seek disgorgement of "monies realized by UBS as a result of the ARS transactions" and "the voiding of Plaintiffs' ARS transactions."  (Pl.'s Mem. p. 9.)

In Transamerica Mortgage Advisers, Inc. v. Lewis, 444 U.S. 11, 19, 24 & n. 14 (1979), the Supreme Court "recognized a private right of action for rescission of investment advisory contracts and for restitution of consideration paid under such contracts if they are void under Section 215" of the Advisers Act.  Bogart, 1993 WL 33643, at *3.  The only remedy available under the Advisers Act is rescission of the investment advisory contract and restitution of consideration paid for investment advisory services.  See Feins v. AMEX, 81 F.3d 1215, 1221 (2d Cir. 1996) (In Transamerica, "the [Supreme] Court ruled that

there is no private cause of action for damages (other than restitution) in connection with a contract that violates, and is therefore void under, the Investment Advisers Act of 1940"); Clark v. Nevis Capital Mgmt., LLC, 2005 WL 488641, at *13 (S.D.N.Y. 2005) ("There is, however, a limited private right of action to have an investment advisory contract voided under section 215 of the Advisers Act if the formation or performance of the contract violates the Advisers Act.").  Furthermore, "with the rescission of an investment advisory contract, the rescinding party may seek consideration given under the contract, less any value conferred by the other party.  Restitution does not include compensation for any losses from an investment alleged to have been made as a result of an investment adviser's conduct." Clark, 2005 WL 488641, at *13.

In sum, as Plaintiffs fail to allege that UBS FS was an "investment adviser" covered by the Advisers Act, Defendants' motion to dismiss Plaintiffs' Advisers Act claim is GRANTED.  Plaintiffs are granted leave to amend the Advisers Act claim within thirty days of the date of this MEMORANDUM and ORDER, if the defects set forth in the foregoing analysis can be remedied through repleading.

**C.  State Law Claims**

In Plaintiffs' claims 2 through 7, they allege various violations of New York statutory and common law.  (See Complaint ¶¶ 65—97.)  In Count 2, Plaintiffs Mittman, Klokke and Elliott[3] allege that UBS FS' financial advisors induced Plaintiffs to purchase ARS and falsely represented to Plaintiffs that UBS financial advisors were bound by duties as investment advisers "who would primarily advance the financial interests of their clients."  (Complaint ¶ 67.)  Count 2 further alleges that "Defendants breached such duties by failing to continue to support Plaintiffs' ARS by failing to appear, provide bids and otherwise participate in regularly scheduled ARS auctions, thereby freezing the ARS holdings of the Class in order to advance the financial interests of defendants at their clients' expense."  (Id.)  Plaintiffs allege that these actions constitute "deceptive business practices" in violation of New York's consumer protection law General Business Law § 349 ("GBL § 349"), which provides that "deceptive acts or practices in the conduct of business, trade, or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).

---

[3] Only Plaintiffs Mittman, Klokke and Elliott allege Counts 2 (violation of GBL § 349) and 3 (negligent misrepresentation) on their behalf and on behalf of similarly-situated holders of ARS that were not filed or registered under the Investment Company Act of 1940.

In Count 3, for negligent misrepresentation, Plaintiffs
Mittman, Klokke and Elliott allege that UBS FS' financial
advisors misrepresented to Plaintiffs or omitted to inform
them that investment in ARS involved liquidity risks and
therefore ARS are not properly designated as cash
equivalents.  (Complaint ¶ 73.)

In Count 4, Plaintiffs allege UBS FS "through their
agents and representatives, held themselves out as
financial advisors to Plaintiffs and other Class Members,
and as such owed fiduciary duties to Plaintiffs and the
other Class members."  (Complaint ¶ 78.)  Plaintiffs allege
that UBS FS breached its fiduciary duties to Plaintiffs by
failing to support ARS auctions by providing bids or
otherwise participating in regularly scheduled auctions and
that UBS FS instead acted to advance its own financial
interests, rather than those of Plaintiffs.  (Id.)

In Count 5, Plaintiffs allege that UBS AG aided and
abetted UBS FS' breach of fiduciary duties when UBS AG, for
its own financial benefit, initially directed UBS FS to
participate in the ARS auctions and then later allowed UBS
FS to cease its support of the ARS auctions.  (Complaint ¶
83.)

In Count 6, Plaintiffs allege that UBS FS breached the
implied covenant of good faith and fair dealing that arose

"in connection with the retention of UBS Financial Services as a financial or investment adviser or broker-dealer." (Complaint ¶¶ 88, 89.)  UBS FS allegedly breached the covenant of good faith and fair dealing by failing to continue to support Plaintiffs' ARS by ending its participation in ARS auctions.  (Complaint ¶ 89.) Plaintiffs allege that UBS FS acted in its own financial interests and at Plaintiffs' expense.  (Id.)

In Count 7, Plaintiffs allege that UBS FS was negligent and breached its duty of care to Plaintiffs by failing to participate in the ARS auctions.  (Complaint ¶ 94.) Plaintiffs allege that UBS FS' duty of care included the duty "not to take steps to undermine the liquidity of Plaintiffs ARS holdings and to continue to participate in regularly scheduled ARS auctions."  (Complaint ¶ 93.)  This duty allegedly arose because "Defendants' [sic] held themselves out to be investment and financial advisers . . . ."  (Id.)

In Counts 4 through 7, Plaintiffs explicitly "exclude any and all allegations that Defendants made material misrepresentations and omission [sic] in connection with the purchase and sale of ARS securities set forth in ¶¶ 3, 34-35."  (Complaint ¶¶ 77, 81, 87, 92.)  Despite this attempt to position these claims outside the scope of New

York's blue sky law the Martin Act, N.Y. Gen. Bus. L. §
352-c (2003), all of Plaintiffs state law claims are
dismissed as preempted by that statute.

"The Martin Act prohibits various fraudulent and
deceitful practices in the distribution, exchange, sale,
and purchase of securities but does not require proof of
intent to defraud or scienter." Granite Partners, L.P. v.
Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 291 (2d Cir.
1998). The Court of Appeals has established that no
private right of action exists under the Martin Act. See
e.g., Vermeer Owners, Inc. v. Guterman, 78 N.Y.2d 1114,
1114 (1991) ("We agree with the courts below that
plaintiffs may not maintain a private cause of action under
the Martin Act."); Green v. Santa Fe Industries, Inc., 70
N.Y.2d 244, 256 (1987) ("there is no implied private action
for fraudulent acts under section 352-c of the General
Business Law."); Loengard v. Santa Fe Industries, Inc., 70
N.Y.2d 262, 266 (1987) ("no private cause of action is
implied for violations of the antifraud provisions of the
Martin Act"); CPC Int'l Inv. C. McKesson Corp., 70 N.Y.2d
268, 176—77 (1987) ("The majority of this court holds that
an implied private action is not consistent with the
legislative scheme underlying the Martin Act . . . ."etc).
Instead, New York courts have held that exclusive

jurisdiction rests with the Attorney General to prosecute state law securities claims sounding in fraud.  See e.g., Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190 (2d Cir. 2001) (citing cases).

Accordingly, courts have routinely dismissed private state law securities claims sounding in fraud or deception that do not require pleading or proof of intent, reasoning that allowing them to proceed would be, in effect, allowing private causes of action under the Martin Act.  See Dover Limited v. Watley, Inc., 423 F. Supp. 2d 303, 330 (S.D.N.Y. 2006); Nanopierce Technologies Inc. v. Southridge Capital Management LLC, 2003 WL 22052894, at *6 (S.D.N.Y. 2003) ("three of the appellate divisions interpreting [CPC] held that the Martin Act preempts any common law claims within its purview.").  In other words, courts held, by logical extension, that preemption of "covered" common law claims is necessary because "allowing private litigants to press common law claims 'covered' by the Martin Act would upset the Attorney General's exclusive enforcement power in exactly the same way that it would upset the exclusive enforcement power to allow private claims pleaded under the Martin Act itself."  Nanopierce, 2003 WL 22052894, at *6.

To the extent that Plaintiffs allege that UBS engaged in fraudulent and deceptive practices in the sale of ARS under

claims that do not require proof of scienter, their claims are preempted by the Act.  See Granite Partners, 17 F. Supp. 2d at 291 (citing CPC Int'l, 70 N.Y.2d at 276)("claims for breach of fiduciary duty and negligent and innocent misrepresentation, for example, which do not require a plaintiff to plead and prove intentional deceit, are covered by the Martin Act and cannot be asserted by private litigants"); Horn v. 440 East 57th Co., 151 A.D.2d 112, 120 (1st Dept. 1989) (dismissing as preempted by the Martin Act claims for breach of fiduciary duty and negligent misrepresentation where "[f]airly construed, both these causes of action omit the element of a deceitful intent on defendant's part and substitute therefor the existence of a fiduciary relationship of trust and confidence.").

    "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  Proof of intent is not required. See id.  Accordingly, Count 2 for violation of New York General Business Law § 349 in which Plaintiffs allege that UBS FS "falsely represented . . . that they were bound by

duties as Investment Advisers and Financial Advisers who would primarily advance the financial interests of their clients" and instead ceased to support the ARS market by failing to participate in auctions must be dismissed.[4]  See Granite Partners, 17 F. Supp. 2d at 291.

Similarly, Count 3 for negligent misrepresentation is dismissed as preempted by the Martin Act.  See Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 331 (S.D.N.Y. 2006) (holding that negligent misrepresentation claims based on securities transactions are preempted by the Martin Act); Berk v. Moore, Clayton & Co., Inc., 2006 WL 3616961, at *6 (S.D.N.Y. 2006) (same).  On the same basis, Count 4 for breach of fiduciary duty is also dismissed. See Granite Partners, 17 F. Supp. 2d at 291 (holding that breach of fiduciary duty claims in the securities context are preempted by the Martin Act); S. Cherry St. LLC v. Hennessee Group LLC (In re Bayou Hedge Fund Litig.), 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) (same).

In Counts 5 through 7, Plaintiffs allege aiding and abetting breach of fiduciary duty (against UBS AG), breach of the implied covenants of good faith and fair dealing,

---

[4] Furthermore, it is well-established that Section 349 does not apply to securities transactions.  See e.g., Spirit Partners, 2000 WL 685022, at *7 (S.D.N.Y. 2000)(citing cases); In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 240 (S.D.N.Y. 2005); In re Motel 6 Sec. Litig., 1995 WL 431326, at *6 (S.D.N.Y. July 5, 1995).

and negligence, respectively.  In each claim, "Plaintiffs repeat and reiterate the allegations as set forth above except to exclude any and all allegations that Defendants made material misrepresentations and omissions in connection with the purchase and sale of ARS securities . . . ."  (Complaint ¶¶ 77, 81, 87, 92.)  Notably, these claims attempt to obscure what otherwise seems clear to this court -- Plaintiffs' allegations support Martin Act claims. Plaintiffs admit as much in their briefs, writing "claims 2 through 7 are individual state law claims whose facts merely could support Martin Act claims by the Attorney General."  (Pl.'s Mem. p. 10.)

Consistent with preserving the Attorney General's exclusive jurisdiction over Martin Act claims, it has been held that "[p]rivate plaintiffs will not be permitted through artful pleading to press any claim based on the sort of wrong given over to the Attorney-General under the Martin Act."  Kramer v. W10Z/515 Real Estate Ltd. Partnership, 44 A.D.3d 457, 459 (1st Dept. 2007) (quoting Whitehall Tenants Corp. v. Estate of Olnick, 213 A.D.2d 200, 200 (1st Dep't 1995)).  See also Pro Bono Investments, Inc. v. Gerry, 2005 WL 2429787, at *16 (S.D.N.Y. 2005) (dismissing counterclaims for breach of fiduciary duty, conversion, unjust enrichment, negligence, gross

negligence, negligent misrepresentation, and for a constructive trust as "common law claims the subject matter of which is covered by the Martin Act . . . ."); Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 190 (2d Cir. 2001) (dismissing breach of fiduciary duty claim because "[New York] courts have determined that sustaining a cause of action for breach of fiduciary duty in the context of securities fraud would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney-General's exclusive enforcement powers thereunder.") (internal quotations and citation omitted).

Here too, Plaintiffs will not be allowed through mere avoidance of the words "misrepresentation," "omission," and "deception" to assert claims based on factual circumstances that support Martin Act claims. See Whitehall, 213 A.D.2d at 200.

Plaintiffs argue that a recent Appellate Division Case, Caboara v. Babylon Cove Dev., LLC, 54 A.D.3d 79 (2nd Dept. 2008), overturns the above-cited precedent, holding that "the Martin Act does not preempt state law claims merely because the allegations would also support a Martin Act violation." (Pl.'s Mem. p. 10.)

In Caboara, plaintiffs, who purchased units in a condominium project, alleged breach of contract and common

law fraud against the project sponsor and members.
Caboara, 54 A.D.3d at 81.  The Caboara court acknowledged
that "the Martin Act prohibits a broad range of fraudulent
and deceitful conduct in the advertisement, distribution,
exchange, transfer, sale and purchase of securities . . .
." Id.  The court further acknowledged that "[t]he
Attorney General is vested with the exclusive authority to
enforce the Martin Act, and is granted various
investigatory, regulatory, and remedial powers aimed at
detecting, preventing, and stopping fraudulent securities
practices." Id.  The court noted that "[t]he Court of
Appeals has determined that there is neither an express nor
an implied private right of action under the Martin Act."
Id.  It then opined that the Court of Appeals has never
held that the Martin Act "abrogated or supplanted an
otherwise viable private cause of action whenever the
allegations would support a Martin Act violation" and cited
the fact that in CPC and Vermeer, the Court of Appeals
permitted consideration of common law fraud claims on their
merits, while dismissing other causes of action as
preempted under the Martin Act.  Id. at 82.  From this, the
Caboara court concluded that "under precedent from the
Court of Appeals, the plaintiffs' common-law fraud and
breach of contract causes of action are not preempted

because they rest upon allegations that would support a Martin Act violation." Id.

Plaintiffs' reliance on Caboara is unavailing for two reasons. First, Caboara appears to overlook a long-standing distinction between courts' treatment of common law fraud claims and that of other state law claims based on deceptive practices. "Courts concerned with preserving the Attorney General's exclusive domain therefore preclude claims which essentially mimic the Martin Act, but permit common law fraud claims, which require an additional element." Nanopierce, 2003 WL 22052894, at *4. See also Bayou, 534 F. Supp. 2d at 421 ("The vast majority of state and federal courts have found that causes of action related to a plaintiff's securities fraud claim that do no include scienter as an essential element are typically preempted by the Martin Act, in contrast to a claim requiring intent, such as a claim for common law fraud.") (internal quotations and citation omitted). In fact, the two cases on which the Caboara court relied made this same distinction, allowing only common law fraud claims to proceed, while dismissing other securities fraud claims as preempted because they were within the Act's purview. See generally CPC, 70 N.Y.2d 268; Vermeer, 78 N.Y.2d 1114. But Caboara, which purports to rely on CPC and Vermeer, holds

not only that the Martin Act does not preempt common law
fraud claims, but also that the Act does not preempt breach
of contract claims.  See Caboara, 54 A.D.3d at 82.  The
court does not share its reasoning for concluding that
breach of contract claims should be treated like common law
fraud claims and not be preempted by the Act.  See id.
Without access to its analysis, and considering that the
"vast majority of state and federal courts" have held that
the Martin Act preempts state law securities fraud claims
that do not require proof of scienter, Bayou, 534 F. Supp.
2d at 421, this court finds Plaintiffs' reliance on Caboara
unavailing.

Second, to the extent that Caboara is persuasive, and
again, this court is not convinced that it is, its holding
need not be extended beyond its facts.  At issue in Caboara
were common law fraud and breach of contract claims.  See
Caboara, 54 A.D.3d, at 82.  But Plaintiffs here do not
advance either claim.  Therefore, Plaintiffs' state law
claims in Counts 2 through 7 of the Amended Complaint are
dismissed.

**III. ORDER**

For the foregoing reasons, Defendants' Motion to
Dismiss is GRANTED.  Plaintiffs are granted leave to

replead the Advisers Act claim within thirty days of the
date of this MEMORANDUM and ORDER.

SO ORDERED.

Dated: December *19*, 2008

Lawrence M. McKenna

U.S.D.J.

28